IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

Case No. 6:25-cv-02047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

    Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

    Defendant.

## AMENDED COMPLAINT

Plaintiffs, Ritz Investments Limited ("Ritz") and Season Limited ("Season," and together with Ritz, the "Investors"), bring this action for breach of contract, breach of fiduciary duty, fraudulent concealment or misrepresentation, unjust enrichment, accounting or equitable relief, and under Florida's Deceptive and Unfair Trade Practices Act, against defendant, Abacus Global Management, Inc. ("Abacus"), and allege:

## NATURE OF THE ACTION

1. This is an action against defendant Abacus for its failure to pay the Investors pursuant to the terms of the Luxembourg Life Fund – Long Term Growth Fund (the "LLF-LTGF" or the "Investment"), and for defendant's concealment of material information regarding redemption of the Investment.

2. Between February 2016 and February 2019, the Investors (between them) purchased approximately 46,130 shares of the LLF-LTGF, through Union Bancaire Privée S.A.

("UBP") and LGT Bank (Switzerland) Ltd. ("LGT Bank"), from Carlisle Management Company S.C.A. ("Carlisle").

3. Carlisle is Luxembourg-registered company under number B144257 with offices at 9, rue Sainte Zithe, L-2763 Luxembourg and is an alternative fund investment manager and was the management company of the LLF-LTGF until Carlisle was acquired by Abacus.

4. In 2024, Abacus purchased Carlisle—Abacus is Carlisle's sole shareholder—and it exercises complete control over Carlisle's operations.

5. In a press release about the acquisition, Abacus stated that: "Carlisle adds approximately $2.0 billion to our ABL Wealth division, and [Carlisle's] investors are now able to fully access Abacus Life's uncorrelated, high-returning asset class of insurance products."[1]

6. Abacus' website states that "Abacus Global Management is a trade name of Carlisle Management Company."[2] Carlisle's Luxembourg Commercial Registry confirms that its business name is "Abacus Global Management."

7. Since Abacus' acquisition of Carlisle, Carlisle continues to manage the LLF-LTGF as Abacus' agent and under Abacus' name

8. Since Abacus' acquisition of Carlisle, Abacus has been the entity that publishes the monthly newsletters issued to LLF-LTGF investors informing them of the fund's performance.

---

[1] *Abacus Life Completes Acquisition of Carlisle Management Company S.C.A.*, Dec. 2, 2024, https://ir.abacusgm.com/news-releases/news-release-details/abacus-life-completes-acquisition-carlisle-management-company.

[2] *Abacus Asset Group*, https://abacusgm.com/abacus-asset-group/ (last visited Oct. 1, 2025). Carlisle's former website, https://luxlf.com/, re-directs to the same Abacus website.

9. Carlisle's former officers, including Jose C. Garcia (Carlisle's CEO) and Tim H. Mol (Carlisle's COO) are now Abacus employees and are part of Abacus' Executive Leadership Team.

10. Abacus recently announced that Jose Garcia and Olivier Garin (formerly Senior Sales Director for Carlisle, now Abacus) will be representing Abacus at the September 10, 2025 presentation of the 12th "Italian Institutional Investors" Report.[3] Specifically, "Mr. Garcia will be there to engage with industry leaders, share insights on the longevity market, and discuss the latest trends and forecasts shaping the future of institutional investing" on behalf of Abacus.

11. Abacus held an event on October 28, 2025 titled "Abacus Asset Group Investor Summit," where Garcia presented as an Abacus employee.[4] Advertisements for the event did not mention Carlisle.

12. Since September 21, 2020, the Investors have been attempting to redeem their Investment from the defendant, to no avail.

13. On April 8, 2025, the Investors, sent Abacus a written inquiry seeking information on Abacus' plan to redeem their Investment. No meaningful redemption plan was received in response.

14. The Investors bring this action against Abacus for damages incurred from its conduct.

---

[3] Abacus Asset Group LinkedIn, July 23, 2025, https://www.linkedin.com/posts/abacusassetgroup_longevity-milanevent-abacusglobalmanagement-activity-7353752156480430080-Vef6?utm_source=share&utm_medium=member_desktop&rcm=ACoAAEvliUUBI3DbTcnTNASYtafSUFDNbonlxg.

[4] "Two weeks left to register for the Abacus Asset Group Investor Summit!" https://x.com/AbacusGM/status/1978138147201359989, last visited October 23, 2025.

## PARTIES

15. Plaintiff Ritz is a private limited company with a registered address at 57 /63 Line Wall Road, GX11 1AA, Gibraltar.

16. Plaintiff Season is a private limited company with a registered address at 57 /63 Line Wall Road, GX11 1AA, Gibraltar.

17. Defendant Abacus is a Delaware-registered corporation and a publicly traded company on the Nasdaq under the ticker symbol "ABL." Its headquarters are located in Orlando, Florida at 2101 Park Center Drive, Ste. 290, Orlando, FL 32835.

## JURISDICTION AND VENUE

18. This is an action for damages in excess of $75,000.00, exclusive of pre-judgment interest, attorney's fees and costs, and is within the subject matter of this Court pursuant to 28 U.S.C. § 1332 in that the parties are citizens from different States and foreign states.

19. The Court has personal jurisdiction over Abacus because its principal place of business and headquarters is within the Middle District of Florida.

20. Venue is proper here under 28 U.S.C. §§ 1391(b)(1), because the cause of action accrued in this district.

## FACTUAL ALLEGATIONS

### Purchase of the Investment

21. The LLF-LTGF is a specialized investment fund that focuses on the purchase of life settlements, in other words, the purchase of life insurance policies in the secondary and tertiary markets at a discount.

22. The LLF-LTGF buys life insurance policies that are beyond the contestability period (meaning the insurer cannot easily deny claims).

23. The life insurance policies are purchased from the secondary market (original policyholders selling their policies) and the tertiary market (resales of previously settled policies).

24. The LLF-LTGF uses a buy-and-hold strategy, holding most policies until maturity to realize the death benefit.

25. From the inception of the LLF-LTGF until 2024, when Carlisle was acquired by Abacus, Carlisle managed the LLF-LTGF.

26. Carlisle is Abacus' agent and wholly owned subsidiary: it has no individual identity in that its registered business name in the Luxembourg registry is "Abacus Global Management." Abacus' website indicates that Carlisle is now referred to as its "Abacus International" division.

27. Carlisle's website re-directs to Abacus' homepage.

28. Carlisle's investors have been subsumed into Abacus' platform.

29. Carlisle's employees are Abacus employees and portray themselves to the public as Abacus employees. Carlisle also communicates as Abacus to its investors, including by issuing newsletters from Florida regarding the LLF-LTGF.

30. Carlisle's assets and liabilities have been subsumed into Abacus' assets and liabilities.

31. Carlisle has no separate corporate interests and functions solely to achieve Abacus' purpose.

32. Further, Abacus has engaged in improper conduct through Carlisle, as described here, and Carlisle has served as a mere instrumentality of Abacus.

33. Abacus, a publicly traded company ("ABL" on the National Association of Securities Dealers Automated Quotations ("NADAQ")), presumably engaged in extensive due diligence regarding Carlisle and Carlisle's activities, practices and holdings, and acquired Carlisle with full knowledge of, and with the intent to ratify and profit from, Carlisle's actions.

34. Abacus, through what was formerly known as Carlisle, is now the fund manager for the LLF-LTGF.[5]

35. Abacus' website categorizes the LLF-LTGF as an "open-end mutual fund."[6]

36. Open-end mutual funds have several distinctive features over other types of investment funds:

   a. They continuously issue and redeem shares;

   b. The shares are bought and sold at the net asset value ("NAV"), which is calculated at the end of each trading day based on the total value of the fund's assets minus liabilities, divided by the number of outstanding shares; and

   c. They typically hold a diversified mix of assets.

37. Relying on these features, the Investors made several purchases of LLF-LTGF shares, as described below.

38. Season acquired LLF-LTGF shares from its parent entity's trust and through UBP as follows:

| Investor Name | Date of Purchase | Number of Shares |
|---|---|---|
| Season | Feb. 28, 2016 | 2,560.951 |
| Season | June 30, 2016 | 1,696.230 |
| Union Bancaire Privee | Oct. 31, 2016 | 13,825.522 |
| Union Bancaire Privee | July 31, 2018 | 16,481.689 |
| **TOTAL SHARES** | | **34,564.391** |

---

[5] *Long Term Growth Fund*, https://abacusgm.com/long-term-growth-fund/ (last visited Oct. 1, 2025).
[6] *Id*.

39. In total, Season invested $8,575,601.831 in the LLF-LTGF.

40. On July 31, 2027, Season sold 2,304.254 shares.

41. Ritz purchased LLF-LTGF shares through LGT Bank as follows:

| Investor Name | Date of Purchase | Number of Shares |
|---|---|---|
| LGT Bank (Switzerland) Ltd. | Apr. 30, 2018 | 7,252.683 |
| LGT Bank (Switzerland) Ltd. | Sept. 28, 2018 | 3,417.168 |
| LGT Bank (Switzerland) Ltd. | Feb. 28, 2019 | 3,200.922 |
| **TOTAL SHARES** | | **13,870.773** |

42. In total, Ritz invested $3,999,999.94 in the LLF-LTGF.

43. The Investors are the direct and third-party beneficiaries of these Investments by virtue of their purchase of shares in the LLF-LTGF.

44. The contract that details the terms of the Investment is the July 2022 Placement Memorandum. *See* **Exhibit A**.

45. Although the Placement Memorandum contained some restrictions on the redemption of shares, in September 2022, Carlisle informed the LLF-LTGF investors that it would cease applying clause 2.6.6 of the Placement Memorandum and allow investors to redeem their shares upon request for redemption with a NAV dated March 31, 2022.

### Request for Redemption of the Investment

46. On September 21, 2020, the Investors, through their corporate counsel, sought redemption of $2.5 million, equivalent to 6,978.7566 shares of Season's investment, request made to UBP.

47. On September 24, 2020, UBP confirmed that the Investor's order was officially in, the NAV date would be December, 31, 2020, and the settlement 30 days later.

48. On September 21, 2020, the Investors also sought redemption of Ritz's 13,870.733 shares and received an order confirmation from LGT Bank.

7

49. On October 12, 2020, the Investors sought redemption of $7 million, equivalent to around 19,540 shares of Season's investment.

50. On October 27, 2020, the Investors sought redemption in full of Season's position in the fund.

51. On that same day, UBP confirmed that the order was already in the system.

52. On the date that the Investors sought redemption of the Investment, the NAV was calculated at $359.18, meaning the Investors' investment to be redeemed was worth not less than $16,569,300.25.

53. On July 8, 2022, the Investors submitted two redemption request forms, one for Season and one for Ritz, requesting a full redemption of its Investment, as of 30 September 2022, to Succursale(s) Luxembourgeoise(s) de CACEIS Bank R.C, acting as central administration agent of the LLF-LTGF.

54. On October 3, 2022, the Investors renewed their redemption request through UBP and LGT Bank, respectively.

55. On October 4, 2022, LGT Bank issued an order confirmation for Ritz's redemption request.

56. Despite confirmation from Didier Morin, Chief Compliance Officer for Carlisle at the time, that the Investors' redemption requests were not rejected, the Investment was not fully redeemed.

57. On December 21, 2022, the Investors again submitted two redemption request forms requesting a full redemption of its Investment, as of 30 September 2022, to Succursale(s) Luxembourgeoise(s) de CACEIS Bank R.C.

58. UBP and LGT Bank confirmed that the redemption orders were placed.

59. On March 30, 2023, Carlisle informed the Investors that after the September 2022 announcement, investors representing 85% of the LLF-LTGF assets decided to redeem their shares, and that it would enter into a controlled liquidation process of the fund.

60. The March 30, 2023 communication indicated that the first distribution of funds would have a NAV dated as of March 31, 2023.

61. On July 17, 2023, Carlisle informed that the LLF-LTGF "is not in the position to process a distribution of cash to investors until such time that it has satisfied its current liabilities and set aside a satisfactory premium reserve, after which the AIFM intends to distribute the available cash flows to all investors." Other than this vague statement that it would not be distributing funds, Carlisle provided no other detail on its distribution plan and projected timeline.

62. On October 31, 2023, Carlisle informed that it would make a mandatory redemption of units, with a NAV dated September 30, 2023.

63. Ritz received $18,176 in the first distribution, equivalent to 69.28 shares with a NAV of $262.36.

64. Season received $43,067.94 in the first distribution, equivalent to 164.17 shares with a NAV of $262.34. On October 4, 2024, Carlisle informed that it would make a second distribution of liquidation proceeds, with a NAV dated June 28, 2024.

65. Ritz received $61,958 in the second distribution, equivalent to 274.81 shares with a NAV of $225.46.

66. Season received $146,815 in the second distribution, equivalent to 651.18 shares with a NAV of $225.46.

67. Since Abacus acquired Carlisle, Abacus has sent investors monthly newsletters with general information about the LLF-LTGF. These newsletters do not contain information about the distribution of liquidation proceeds.

68. On April 8, 2025, the Investors sent correspondence to Abacus requesting "Abacus to clarify the status of their holdings with the company, inform them of Abacus's plan to redeem their investment, and—speaking generally—to resolve their growing concerns."

69. On April 11, 2025, Abacus (through Carlisle) informed the Investors that it was in the process of calculating the NAV of the fund as of March 31, 2025 for a third distribution of liquidation proceeds.

70. Ritz received $39,713 in the third distribution, equivalent to 195.04 shares with a NAV of $203.61.

71. Season received $94,103 in the third distribution, equivalent to 462.17 shares with a NAV of $203.61.

72. On May 6, 2025, the Investors received a response their April 8th correspondence. The response "only provide[d] general information regarding the process and the status of the ongoing liquidation of the LLF-LTGF," it reiterated that there have been two distributions of liquidation proceeds and a third being prepared, and attached the correspondence described above.

73. The May 6, 2025 response did not contain the plan to redeem the Investors Investment or provide any clarity on the timeline for liquidation.

74. Section 20 of the Placement Memorandum, titled "Duration and Liquidation of the Fund," requires liquidation revenues of the LLF-LTGF to be distributed among investors:

> The Depositary shall share any liquidation revenue for each Class within the Fund minus liquidation expenses and fees among the Unitholders of the relevant Class in

>the Fund in proportion to their holding of such Units in such Class, as instructed by the AIFM or by any liquidators that may have been appointed by the AIFM or the Depositary in agreement with the supervisory authorities.

Ex. A at 42.

75. Section 27.2 of the Placement Memorandum, titled "Periodic Reporting and Disclosures to Unitholders," requires the Abacus to issue "Investor Disclosures" and provide investors information related to: material changes in the fund's operations, special arrangements for the fund's assets, liquidity management, risk profile, and leverage. Ex. A at 59.

76. In a liquidation scenario, Abacus must provide regular updates on asset sales, redemption timelines, estimated NAV, distributions, gating, delays, and changes to redemption mechanics.

77. As of the filing of this complaint, Abacus has not provided any detailed information regarding the liquidation scenario, and have only notified the Investors regarding general information on asset sales and foreseen delays.

78. The Investors have not received from Abacus (or Carlisle) any specific information as to the status of their shares in the LLF-LTGF, the timeline to redeem their Investment, or any information to address their concerns of the fund.

79. The Investors are entitled to timely, transparent, and comprehensive updates regarding the Investment throughout the liquidation process, and have been met with Abacus' evasiveness and piecemeal information.

80. To vindicate their rights, the Investors have engaged undersigned counsel and are obligated to pay a reasonable fee.

81. All conditions precedent to filing this action have been met, satisfied, or waived.

## COUNT I
## BREACH OF CONTRACT

The Investors reallege the allegations contained in paragraphs 1 through 81.

82. The Investors purchased shares in the LLF-LTGF as follows:

| Investor Name | Date of Purchase | Number of Shares |
|---|---|---|
| Season | Feb. 28, 2016 | 2,560.951 |
| Season | June 30, 2016 | 1,696.230 |
| Union Bancaire Privee (on behalf of Season) | Oct. 31, 2016 | 13,825.522 |
| Union Bancaire Privee (on behalf of Season) | July 31, 2017 | -2,304.254 |
| Union Bancaire Privee (on behalf of Season) | July 31, 2018 | 16,481.689 |
| **TOTAL SEASON SHARES** | | **32,260.14** |
| LGT Bank (Switzerland) Ltd. (on behalf of Ritz) | Apr. 30, 2018 | 7,252.683 |
| LGT Bank (Switzerland) Ltd. (on behalf of Ritz) | Sept. 28, 2018 | 3,417.168 |
| LGT Bank (Switzerland) Ltd. (on behalf of Ritz) | Feb. 28, 2019 | 3,200.922 |
| **TOTAL RITZ SHARES** | | **13,870.773** |

83. The Placement Memorandum governs the LLF-LTGF shares.

84. In 2024 Abacus absorbed Carlisle's portfolio, including the LLF-LTGF.

85. Abacus is the LLF-LTGF management company and alternative investment fund manager.

86. In July 2022, the Investors communicated to Carlisle that they wanted to redeem their shares in the LLF-LTGF.

87. In September 2022, the LLF-LTGF entered into a liquidation process for all investors who wanted to redeem their shares in the LLF-LTGF.

88. Section 20 of the Placement Memorandum requires Abacus to distribute liquidation revenues of the LLF-LTGF among investors.

89. Since requesting the redemption of their shares, Abacus has failed to redeem the Investor's Investment, in breach of Section 20 of the Placement Memorandum.

90. Section 27.2 of the Placement Memorandum requires Abacus to keep the Investors informed of material changes to the LLF-LTGF.

91. Abacus has directly breached Section 27.2 of the Placement Memorandum by failing to inform or respond to the Investor's requests for specific information as to the status of their shares in the LLF-LTGF and the timeline to redeem their Investment.

92. Abacus is required to comply with the Placement Memorandum.

93. The Investors have suffered damages as a result of defendant's material breach of the Placement Memorandum.

WHEREFORE, the Investors respectfully request that this Court enter judgement against Abacus awarding the Investors compensatory damages, plus pre-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such further relief as this Court deems just and proper.

## COUNT II
## BREACH OF FIDUCIARY DUTIES

The Investors reallege the allegations contained in paragraphs 1 through 81.

94. Abacus, as the LLF-LTGF fund manager through Carlisle, owes a fiduciary duty to the Investors.

95. A relationship of trust and confidence existed between the Investors and defendant, where the Investors reposed trust and confidence in the defendant, which it accepted.

96. Abacus was required to discharge its fiduciary duties:

    a. in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances;

    b.    honestly, with due skill, care, and diligence; and

    c.    in a manner reasonably to be in the best interests of the Investors.

97. Abacus has breached its fiduciary duties by:

    a.    Failing to honor the Investors redemption requests submitted in accordance with the liquidation protocols;

    b.    Failing to provide timely, specific, and accurate information regarding the status, valuation, and liquidation of the Investors' investment;

    c.    Failing to provide material information about the LLF-LTFG's performance and redemption process;

    d.    Responding to the Investors' inquiries with generic, non-responsive communications;

    e.    Continuing to accrue performance fees based on unrealized gains while denying the Investors access to their capital—creating a conflict of interest and unjust enrichment; and

    f.    Failing to act in good faith or with reasonable diligence in protecting the Plaintiff's interests.

98. As a direct and proximate result of defendant's breach, the Investors have suffered damages.

WHEREFORE, the Investors respectfully request that this Court enter judgment against Abacus for damages, plus pre-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such further relief as this Court deems just and proper.

## COUNT III
## UNJUST ENRICHMENT
## (IN THE ALTERNATIVE TO COUNT I)

The Investors reallege the allegations contained in paragraphs 1 through 81.

99. Season invested $8,575,601.83 in the LLF-LTGF for the purchase of shares.

100. Ritz invested $3,999,999.94 in the LLF-LTGF for the purchase of shares.

101. Abacus received the benefit of the Investors' transfer of $12,575,601.77 for the purchase of the LLF-LTGF shares.

102. The value of Investors' investment, minus defendant's paltry distributions, is in excess of $16 million. Abacus is retaining the entire value of that investment.

103. Abacus' continued retention of the benefit of the Investors' investment, which was transferred to Abacus, through Carlisle, violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, the Investors respectfully request that this Court enter judgment against Abacus for damages, plus pre-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such further relief as this Court deems just and proper.

## COUNT IV
## FRAUDULENT CONCEALMENT OR MISREPRESENTATION

The Investors reallege the allegations contained in paragraphs 1 through 81.

104. Abacus knowingly concealed or misrepresented the following:

   a. Misrepresenting the redeemability of the Investment as announced in September 2022 when it communicated that the LLF-LTGF would enter into a controlled liquidation process and investors would be allowed to redeem their shares;

   b. Misrepresenting that inquiries for information from investors would be adequately addressed;

   c. Concealing that demands for redemption of the shares would be met with significant, unreasonable delays;

   d. Concealing detailed information regarding the September 30, 2023, June 28, 2024 and 2025 liquidation proceeds distributions, including the allocation of those distributions to the investors of the Fund; and

   e. Concealing information in its May 6, 2025 response to the Investors' April 8, 2025 inquiry letter regarding the redeemability of the Investment and the status of the Investors' shares.

105. In addition, Abacus knew of or learned of, and has now ratified and is profiting from Carlisle's knowing concealment or misrepresentation of the following:

   a. Misrepresenting the redeemability of the Investment as announced in September 2022 when it communicated that the LLF-LTGF would enter into a controlled liquidation process and investors would be allowed to redeem their shares;

   b. Misrepresenting that inquiries for information from investors would be adequately addressed;

   c. Concealing that demands for redemption of the shares would be met with significant, unreasonable delays;

   d. Concealing detailed information regarding the September 30, 2023, June 28, 2024 and 2025 liquidation proceeds distributions, including the allocation of those distributions to the investors of the Fund; and

   e. Concealing information in its May 6, 2025 response to the Investors' April 8, 2025 inquiry letter regarding the redeemability of the Investment and the status of the Investors' shares.

106. Abacus knew or should have known that the time frame and manner in which the Investors' inquiries and demands for redemption would be addressed should have been disclosed to the Investors.

107. The representations in the Placement Memorandum of the manner and substance of responding to the Investors' inquiries and requests to redeem their Investment played an important role in the Investors' decision to invest in the LLF-LTGF in the first place.

108. Abacus knew that its concealment of these material facts, up to and including the April 8 communication, would have caused the Investors to not have invested in the LLF-LTGF, or caused the Investors to have acted sooner to protect their Investment.

109. The Placement Memorandum establishes Abacus' obligations to both distribute liquidation proceeds and to do so in a transparent manner by keeping Investors informed of the process.

110. Abacus' fiduciary duties to the Investors also require it to disclose all material facts, including providing regular updates on the liquidation process with details regarding asset sales, redemption timelines, estimated NAV, and actual distributions.

111. The Investors detrimentally relied on Abacus' misrepresentations regarding liquidation proceedings and requests for information, and invested in the LLF-LTGF.

112. The Investors have suffered actual damages proximately caused by Abacus' misrepresentations and fraudulent concealments.

WHEREFORE, the Investors respectfully request that this Court enter judgment against Abacus for damages, plus pre-judgment interest, reasonable attorneys' fees and costs incurred in this action, and such further relief as this Court deems just and proper.

## COUNT V
## FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

The Investors reallege the allegations contained in paragraphs 1 through 81.

113. The Investors are a "consumer" as defined in Section 501.203(7) of the Florida Deceptive and Unfair Trade Practices Act.

114. Abacus does business in Florida and engages in "trade or commerce" as defined in the Act.

115. Abacus committed unfair or deceptive acts or practices in violation of the Act, Fla. Stat. § 501.201, et. seq., by engaging in the conduct described above.

116. Abacus has misled the Investors regarding the redeemability of the Investment, the past and future distribution of LLF-LTGF liquidation proceeds, and the transparency of its communications to investors.

117. Abacus' practices are likely to deceive consumers acting reasonably, and have in fact already deceived consumers into believing it would honor investor requests to redeem their

investments in the LLF-LTGF and accurately and transparently communicate and distribute the liquidation proceeds fairly.

118. The Investors have suffered actual damages proximately caused by Abacus' violation of the Act.

WHEREFORE, the Investors respectfully request that this Court enter judgment against Abacus for damages, plus pre-judgment interest, reasonable attorneys' fees in accord with Section 501.2105 of the Florida Deceptive and Unfair Trade Practices and costs incurred in this action, and such further relief as this Court deems just and proper.

## COUNT VI
## ACCOUNTING

The Investors reallege the allegations contained in paragraphs 1 through 81.

114. The Investors own shares in the LLF-LTGF fund.

115. Abacus, as the manager of the LLF-LTGF fund, has a fiduciary relationship with the investors of the fund, including Ritz and Abacus.

116. The liquidation process is complex due to the nature of the investments, the fact that 85% of investors sought to redeem their shares at the same time, and the illiquidity of the fund.

117. Despite the Investors' request for redemption and a timeline explaining the liquidation process, Abacus has not provided a complete and accurate accounting of past distributions or future redemption distribution plans.

118. Because of the volume of the funds at issue, it is not clear that a remedy at law is as full, adequate, and expeditious as it is in equity.

WHEREFORE, the Investors respectfully request that this Court enter judgment for an accounting by Abacus of all information related to their Investment and such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

The Investors demand trial by jury on all issues so triable.

Date: October 31, 2025

Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Ritz Investment Limited and Season Limited*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: /s/ *Robert Kuntz*
ANDRÉS RIVERO
Fla. Bar No. 613819
arivero@riveromestre.com
ROBERT KUNTZ
Fla. Bar No. 94668
rkuntz@riveromestre.com
SYLMARIE TRUJILLO
Fla. Bar No. 112768
strujillo@riveromestre.com
HUGO MONTERO
Fla. Bar No. 1039275
hmontero@riveromestre.com