## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| Ritz Investment Limited, Season Limited, <br><br> Plaintiffs, <br><br> v. <br><br> Abacus Global Management, Inc., <br><br> Defendant. | Case No.: 6:25-cv-02047-JSS-RMN <br><br> **DEFENDANT ABACUS GLOBAL MANAGEMENT, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** |

Defendant Abacus Global Management, Inc. ("Abacus") hereby moves to dismiss Plaintiffs' Amended Complaint ("AC") pursuant to the doctrine of *forum non conveniens* without prejudice or, in the alternative, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiffs sued the wrong defendant in the wrong forum. Indeed, Plaintiffs themselves are not even the proper parties to bring the claims. The Gibraltar-based Plaintiffs seek distributions from the Luxembourg Life Fund – Long Term Growth Fund ("LTGF"), organized under Luxembourg law and managed by a Luxembourg entity: Carlisle Management Company S.C.A. ("Carlisle"). The July 2022 Placement Memorandum ("PPM") that governs LTGF and the rights associated with LTGF's Units—which Plaintiffs do not even claim to own—is subject to a valid forum selection clause identifying Luxembourg as the proper forum.

Yet Plaintiffs did not file this suit in Luxembourg, and, after a false start, they are not suing Carlisle. Instead, Plaintiffs are suing Carlisle's new corporate parent, Abacus, claiming rights they do not have, relating to an investment Abacus never managed, subject to an agreement that requires such disputes to be resolved in the place LTGF is organized, operated, and regulated, over 4,500 miles from here.

Even if this forum were appropriate—it is not—Plaintiffs fail to state a claim for each of the causes of action alleged. *First*, neither Abacus nor Plaintiffs are parties to the PPM, Plaintiffs have failed to allege facts that Plaintiffs have rights under the

1

contract or that Abacus may be held liable for Carlisle's pre-acquisition conduct, and the PPM both fails to satisfy the statute of frauds and fails to convey to Plaintiffs the rights they claim it does. For these reasons, Plaintiffs' breach of contract and breach of fiduciary duty claims fail. *Second*, Plaintiffs' alternative claims for unjust enrichment and fraudulent concealment likewise fail because Plaintiffs allege no facts showing that *Abacus* was enriched by their investments or that *Abacus* made any misrepresentations to them. Moreover, Plaintiffs fail to allege any facts showing that Abacus ratified or assumed liability for Carlisle's conduct.

Plaintiffs originally filed this case naming both Abacus and Carlisle as defendants. ECF 1. Three days later, noting that both Plaintiffs and Carlisle are foreign entities, the Court *sua sponte* ordered Plaintiffs to show cause for why their pleading should not be dismissed for lack of subject matter jurisdiction. ECF 9. Plaintiffs filed an amended complaint, now only naming Abacus as a Defendant. ECF 14. But Plaintiffs' artful pleading changes nothing and this action should be dismissed on *forum non conveniens*. Alternatively, the Court could simply dismiss the claims under Rule 12(b)(6). Given that Plaintiffs were not Unitholders as defined under the PPM, they have no rights to enforce, and the non-contract claims that flow from the contract claim similarly fail.

## BACKGROUND

### I.    The Parties and Relevant Non-Parties

Plaintiffs Ritz Investment Limited ("Ritz") and Season Limited ("Season") (together, "Plaintiffs") are Gibraltar limited liability companies. AC ¶¶ 15-16. They

2

have not pled that they are Unitholders in LTGF, but rather identify as "Investors" in "shares" of LTGF purchased or acquired through third parties between 2016 and 2019. *Id.* ¶¶ 1-2, 38, 41.

Defendant Abacus is a Delaware corporation with its headquarters in Orlando, Florida. *Id.* ¶ 17. In 2024, Abacus acquired Carlisle pursuant to a Share Purchase Agreement ("SPA"). *Id.* ¶ 25; *see* Abacus Form 8-K (Dec. 2, 2024), https://www.sec.gov/ix?doc=/Archives/edgar/data/1814287/00018142872400006 8/abl-20241202.htm (Abacus SEC filing announcing completion of acquisition and attaching executed SPA as Ex. 2.1).

LTGF is one sub-fund under the Luxembourg Life Fund (the "Fund"), a specialized "alternative investment fund" ("AIF"), created, organized, and governed by the laws of Luxembourg, including associated rules and regulations, that is managed by an AIF manager (the "AIFM")—Carlisle. ECF 14-1 (PPM) at 12.[1] LTGF was in the business of buying and managing life insurance policies. *Id.* at 64. In exchange for managing LTGF, Carlisle collected fees. *Id.* at 77-78.

Carlisle "acts as the Fund's AIFM," and manages several other sub-funds, including LTGF, under the Fund umbrella. *Id.* at 20-21, 64. Carlisle is "organised as a corporate partnership … under the laws of the Grand Duchy of Luxembourg and has its registered office in Luxembourg City." *Id.* at 20. Carlisle's management of the

---

[1]   The general rules governing the Fund umbrella structure are set forth on pages 2-62 of Exhibit A to Plaintiffs' AC (ECF 14-1). The additional provisions specific to the Fund are set forth on pages 64-80 of the same exhibit. Page numbers used in citations refer to those assigned by the Court's ECF system.

Fund and LTGF is governed by the PPM. *Id.* at 19-20, 63-64; *see* AC ¶ 44.

## II.    The Placement Memorandum

Plaintiffs invoke the PPM as the basis for their claims and attach it as an exhibit to their AC, thus the Court may consider the PPM on a *forum non conveniens* and Rule 12(b)(6) motion because the AC includes a claim for breach of the PPM and also incorporates it by reference into the non-contract claims. *See* AC ¶¶ 93-95, 97, 99-101, 104-05, 107, 109, 116, 114-15 at pg. 18; *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (12(b)(6)); *Jiangsu Hongyuan Pharm. Co. v. DI Glob. Logistics Inc.*, 159 F. Supp. 3d 1316, 1322 (S.D. Fla. 2016) (*forum non conveniens*).

Carlisle's management of the Fund and LTGF is governed by the PPM and the Management Regulations. ECF 14-1 at 19-20; *see* AC ¶ 44. The PPM establishes the rights and obligations among and between the Fund (and sub-funds), Carlisle, and Unitholders, and sets forth the terms governing investments in the Fund and sub-funds, including LTGF. A prospective investor becomes a Unitholder when it "appl[ies] for Units when submitting the subscription form" or "Subscription Document." ECF 14-1 at 44. When a prospective investor's purchase is accepted by Carlisle, the investor becomes a Unitholder and "agree[s] to be bound by the Management Regulations, this Placement Memorandum and the terms and conditions of the Subscription Document." *Id.*

While Carlisle is bound by the PPM, neither Abacus nor either of the Plaintiffs are mentioned or contemplated. Nor have Plaintiffs pled that they acquired Units in LTGF either directly from Carlisle or pursuant to a proper transfer under the PPM.

*See id.* at 36, 69-70. Indeed, it is not clear from the AC that Plaintiffs would have been Eligible Investors at all. *See id.* at 13, 33-34, 71-72.

### A.    The Fund's Disclosures and Unitholders' Rights Under the PPM

The PPM disclaims any promise that the "Fund's investment objectives will be achieved or that the Units will generate a positive return for the investors" and advises that investors "may be required to bear the financial risks of [their] investment for an indefinite period of time." *Id.* at 3; *see also id.* at 80. The PPM also contains certain provisions applicable to *Unitholders*, including:

**Information Rights.** The PPM requires Carlisle to provide Unitholders with "Periodic Reporting and Disclosures," including in the form of an "Annual Report," which must disclose, among other things, material changes to the Fund, the current risk profile of the investments, and any new arrangements for managing the liquidity of the Fund. *See* ECF 14-1 at 60-61.

**Redemption Rights.** A Unitholder may request to withdraw its investment from LTGF (each request being a "redemption"). Redemption rights are limited to Unitholders, and each such redemption may be permitted or denied subject to Carlisle's "absolute discretion." *Id.* at 73. In addition, Carlisle "has the right … to withhold a certain portion of … redemption proceeds" to account for the Fund's contingent liabilities. *Id.* at 75.

### B.    Forum Selection and Choice of Law Clauses

As relevant here, the PPM contains both a mandatory Luxembourg forum selection clause and a broad Luxembourg choice of law provision. The forum

selection clause provides:

> The Fund, the AIFM and the Unitholders will be subject to the exclusive jurisdiction of the courts of Luxembourg-City to settle any dispute or claim arising out of or in connection with a Unitholder's investment in the Fund or any related matter.

ECF 14-1 at 44. The choice of law clause provides: "This contractual relationship is governed by Luxembourg Law." *Id.*

### III.   Plaintiffs' "Investment" and Purported Failed Attempts to Redeem

Season alleges that between 2016 and 2018 it "acquired" 34,564.391 "shares" in LTGF from its "parent entity's trust" and through Union Bancaire Privée. AC ¶ 38. Ritz alleges that between 2018 and 2019, it "purchased" 13,870.773 "shares" in LTGF through LGT Bank. *Id.* ¶ 41. Between 2020 and 2022, Plaintiffs each allegedly submitted multiple redemption requests to their respective financial institutions and to the central administration agent of LTGF. *Id.* ¶¶ 46-58.

In March 2023, Carlisle announced it would "enter into a controlled liquidation process of [LTGF]" and provided information about plans for distribution. *See id.* ¶¶ 59-61. Pursuant to provisions in the PPM, Carlisle informed LTGF Unitholders that it could not distribute cash to investors until LTGF had "satisfied its current liabilities and set aside a satisfactory premium reserve, after which" Carlisle would distribute funds to all investors. *Id.* ¶ 61. Plaintiffs do not dispute that from 2023 through 2025, Carlisle (1) announced forthcoming distributions, and (2) made those distributions. *See* id. ¶¶ 62-66, 69-72, 77.

Indeed, Plaintiffs do not—and cannot—dispute that less than a month after submitting their inquiry (*id.* ¶ 68), Carlisle responded in detail that "Carlisle is

6

currently working on a significant policy sale aiming at distributing larger amounts to unitholders periodically" and that because Plaintiffs "made their investment through the Nominees and are not registered on the unitholders' register of [LTGF], Carlisle can only provide general information regarding the process and the status of the ongoing liquidation of [LTGF]." **Exh. A** at 3, 5. And, because the proceedings are ongoing, "[a]ll unitholders are treated equally in the distribution of liquidation proceeds, which are made on a *pro rata* basis." *Id.* at 4.

Plaintiffs nevertheless challenge the sufficiency, adequacy, and timing of the distributions and the level of detail and explanation Carlisle provided in response to their questions. *See* AC ¶¶ 61, 72, 76-77, 79, 97, 104-05, 110.

## ARGUMENT

I.      **Under *Forum Non Conveniens*, this Suit Belongs in Luxembourg.**

   A.      **Legal Standard**

"[T]he appropriate way to enforce a forum-selection clause pointing to a … foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "The presence of a forum selection clause" alters the Court's typical *forum non conveniens* "analysis in important ways." *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1347-48 (11th Cir. 2021). "First, the plaintiff's choice of forum merits no weight. Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that

transfer to the forum for which the parties bargained is unwarranted." *Id.* at 1348.[2,3] "Second, a binding forum-selection clause requires the court to find that the *forum non conveniens* private factors entirely favor the selected forum." *Id.* "As a result, the Supreme Court has said that the existence of a valid and enforceable forum-selection clause is essentially dispositive in the *forum non conveniens* analysis." *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1086 (11th Cir. 2024).

## B.    The PPM's Forum Selection Clause is Valid and Enforceable.

"Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances." *Turner*, 9 F.4th at 1345. "A plaintiff can defeat this presumption by showing that (1) the clause was induced by fraud or overreaching; (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness; (3) the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of the clause would contravene public policy." *Id.* "For each category, the complaining party bears a heavy burden of demonstrating unreasonableness." *Davis v. Avvo, Inc.*, 2011 WL 4063282, at *2 (M.D. Fla. Sept. 13, 2011). "These factors will rarely invalidate a forum-selection clause, which is, after all, a contract between two parties." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1323 (11th Cir. 2024). None of these factors favor Plaintiffs.

---

[2]    All case quotations have been modified by omitting internal quotation marks, citations, alterations, and footnotes.

[3]    Since Plaintiffs are foreign entities, their choice of forum would be afforded "less deference" in a traditional analysis. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).

First, generic allegations of fraud are insufficient to establish that the forum selection clause itself was induced by fraud or overreaching. *See Don't Look Media Ltd. Liab. Co. v. Fly Victor Ltd.*, 999 F.3d 1284, 1298 (11th Cir. 2021) ("The fraud exception does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that a forum-selection clause in a contract is not enforceable if the inclusion of that clause in the contract was the product of fraud or coercion."); *see also Walker v. Hallmark Bank & Tr., Ltd.*, 707 F. Supp. 2d 1322, 1326 (S.D. Fla. 2010) (enforcing forum selection clause absent allegation that "the clause itself [was] … the product of fraud").

Second, even assuming Plaintiffs have rights under the PPM (and Abacus has corresponding obligations)—which, as Abacus argues below, neither do (*see infra* Section II.A.1-2)—there is no inconvenience or unfairness in requiring Plaintiffs to proceed in Luxembourg since Plaintiffs purportedly agreed to—and now invoke— the terms of the PPM. *See* AC ¶¶ 43-44, 82-93; ECF 14-1 at 44; *see also Atl. Marine*, 571 U.S. at 62 ("When parties agree to a forum-selection clause, they waive the right to challenge a preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). Moreover, Plaintiffs reside in Gibraltar, and that is much closer to Luxembourg than to Orlando. AC ¶¶ 15-16.

Third, courts have routinely recognized that litigants will not be deprived of a

remedy in Luxembourg.[4] *See, e.g.*, *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir. 1997) (affirming adequacy of liquidation proceedings in Luxembourg); *Nayak v. Star Clippers Ltd.*, 2014 WL 1413497 (S.D. Fla. Apr. 10, 2014) (finding Luxembourg adequate for a Jones Act lawsuit); *In re Herald, Primeo, & Thema Sec. Litig.*, 2011 WL 5928952, at *14 (S.D.N.Y. Nov. 29, 2011) (finding Luxembourg to be an "obviously adequate" forum), *aff'd sub nom. In re Herald*, 730 F.3d 112 (2d Cir. 2013); *Kingstown Cap. Mgmt., L.P. v. Vitek*, 2020 WL 5350492, at *10 (S.D.N.Y. Sept. 4, 2020) ("Luxembourg is an adequate forum for resolution of the plaintiffs' claims against the defendants."), *aff'd*, 2022 WL 3970920 (2d Cir. Sept. 1, 2022).

Fourth, no public policy would be offended by enforcing the Luxembourg forum selection clause. To the contrary, public policy dictates dismissing a suit that is, at bottom, between two foreign entities with no connection to Florida and that concerns both an alleged injury and actions that occurred outside of Florida. *See J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1275 (M.D. Fla. 2007) (granting motion to dismiss, finding no relation to forum where "the alleged wrongs arose out of conduct in Japan[,] the evidence relating to it is largely in Japan [and] [t]he plaintiffs have not alleged that defendants caused harm within this forum").

In the event the Court has concerns over whether Luxembourg would

---

[4] "[S]ome inconvenience or the unavailability of beneficial litigation procedures … does not render an alternative forum inadequate." *Borden, Inc. v. Meiji Milk Prods. Co., Ltd.*, 919 F.2d 822, 829 (2d Cir. 1990). Even the prospect of a lesser monetary recovery carries no weight. *Alcoa S.S. Co., Inc. v. M/V Nordic Regent*, 654 F.2d 147, 159 (2d Cir. 1978) (prospect that foreign court would limit plaintiff's $8,000,000 claim to $570,000 bore no weight).

entertain jurisdiction over this case, the Court may dismiss the suit and retain jurisdiction. *See Ford v. Brown*, 319 F.3d 1302, 1310-11 (11th Cir. 2003).

### C.   The Forum Selection Clause Applies to All Claims.

The forum selection clause is mandatory. *See Glob. Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004) (A "mandatory clause … dictates an exclusive forum for litigation under the contract."). The language contained in the forum selection unmistakably and clearly states disputes are to be litigated in Luxembourg. *See* ECF 14-1 at 44 (PPM providing for "***exclusive***" jurisdiction in Luxembourg-City courts (emphasis added)). In addition, the forum selection clause is expansive and applies to all of Plaintiffs' claims. *See id.* (covering "any dispute or claim arising out of or in connection with a Unitholder's investment in the Fund or any related matter"); *see also Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (en banc) (holding the phrase "arising under or in connection with" includes "all causes of action arising directly or indirectly from the business relationship evidenced by the contract"), *aff'd*, 487 U.S. 22 (1988).

Plaintiffs bring this action over a dispute concerning redemption of their investment. AC ¶¶ 1-2, 46-57, 82-100. Every claim—breach of contract, breach of fiduciary duty, fraudulent concealment, and unjust enrichment—arises from Plaintiffs' alleged investment in LTGF and their redemption requests. *See id.* ¶¶ 82-83, 86-91, 97, 99-101, 104-05, 107. These claims fall squarely within the forum selection clause's broad scope and accordingly should be dismissed from this Court. *See HNA LH OD, LLC v. Loc. House Int'l, Inc.*, 2021 WL 4459404, at *8 (S.D. Fla.

Sept. 29, 2021) (finding the "forum-selection clause cover[s] the non-contractual claims because adjudication of the claims would require consideration of the parties' rights under the agreement in question").

      **D.**      **The Relevant *Forum Non Conveniens* Factors Favor Dismissal.**

Because there is a binding "valid forum-selection clause," the Court "may consider arguments about public-interest factors only," which will "rarely defeat" a motion under *forum non conveniens*. *Atl. Marine*, 571 U.S. at 63-64. Plaintiffs cannot meet their burden to show that "public-interest factors overwhelmingly disfavor" dismissal. *Id.* at 67. Dismissal is thus required unless Plaintiffs demonstrate "extraordinary circumstances unrelated to the convenience of the parties" outweigh the parties' contractual choice of forum. *Id.* at 52.

"The public factors bearing on the question include[] the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). These factors favor Luxembourg.

First, Luxembourg law governs the dispute. *See* ECF 14-1 at 44. This factor strongly weighs in favor of dismissal. *See Warter v. Bos. Sec., S.A.*, 380 F. Supp. 2d 1299, 1315 (S.D. Fla. 2004) ("Even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds.").

Second, Luxembourg has a much stronger "local interest" in resolving this dispute than Florida. Carlisle, the Fund's AIFM, is organized under the laws of Luxembourg, and the AC alleges no connection between Plaintiffs and Florida. Indeed, Florida's only apparent connection to this dispute is that Abacus, which acquired Carlisle but not its liability, resides in Florida. *See Martinez v. Rumble, Inc.*, 2023 WL 9473891, at *4 (M.D. Fla. Dec. 22, 2023) (holding that case against a parent company headquartered in Florida was a "business transaction with minimal ties to Florida, not a localized controversy" because the operative contract was with a "Canadian company … managed by senior executives working in Toronto"); *see also In re Herald*, 2011 WL 5928952, at *16 (finding New York had a "relatively minimal interest" in the litigation because plaintiffs' claims "involve the foreign conduct of foreign" parties and "investments in foreign Funds").

Moreover, Luxembourg presumably has an interest in regulating entities incorporated in Luxembourg. *Id.* (determining that "Luxembourg … [has] an undeniably significant interest in policing conduct within [its] borders by … investment funds and financial institutions organized and regulated under [its] laws").

Third, as for "court congestion," the Middle District of Florida "is one of the busiest district courts in the country and its limited resources are precious." *Wilkins v. Stapleton*, 2017 WL 11219132, at *1 n.4 (M.D. Fla. Aug. 1, 2017). Accordingly, this factor weighs in favor of dismissal. *Id.*; *see also Martinez*, 2023 WL 9473891, at *4.

Finally, the AC has a jury trial demand and so retaining this case risks "the

13

unfairness of burdening citizens in an unrelated forum with jury duty." *Piper Aircraft Co.*, 454 U.S. at 241 n.6. And, of course, all relevant evidence is in Luxembourg, which also favors granting the motion. *See J.C. Renfroe*, 515 F. Supp. 2d at 1275.

## II.   THE AC FAILS TO STATE A CLAIM AGAINST ABACUS

Even if the Court were to exercise its discretion and retain jurisdiction, each of Plaintiffs' causes of actions should be dismissed for failure to state a claim.

### A.   Plaintiffs Fail to State a Claim for Breach of Contract.

To state a claim for breach of contract, a plaintiff must plead "(1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F. 3d 913, 914 (11th Cir. 1999) (interpreting Florida law). But "[t]o assert a claim for breach of contract, the party against whom the claim is brought must have been a party to the contract." *Uhlig v. Darby Bank & Tr. Co.*, 556 F. App'x 883, 887 (11th Cir. 2014). And to allege a material breach, "the plaintiff must allege which provision of the contract has been breached." *ACG S. Ins. Agency, LLC v. Safeco Ins. Co.*, 2019 WL 8273657, at *6 (M.D. Fla. Dec. 16, 2019). When the language of the contract attached to the complaint conflicts with the conclusory allegations therein, the contract controls. *See Int'l Star Registry of Illinois v. Omnipoint Mktg., LLC*, 510 F. Supp. 2d 1015, 1022-23 (S.D. Fla. 2007).

### 1.   Abacus Is Not Bound by the PPM.

Plaintiffs' initial complaint named Carlisle as a defendant, implicitly recognizing that Carlisle and Abacus are distinct legal entities. *See generally* ECF 1. Facing *sua sponte* dismissal for failing to allege diversity jurisdiction (*see* ECF. 9),

Plaintiffs quickly amended the complaint to remove Carlisle. *See* ECF 15. Without Carlisle, Plaintiffs' only path for salvaging their breach of contract claim is to attempt to show that Abacus itself is somehow bound by the PPM. *See* AC ¶ 92. But Abacus is not a party to the PPM, which expressly designates "Carlisle Management Company S.C.A." as the "AIFM." ECF 14-1 at 19. Because "one may not breach a contract unless one is a party to the contract" (*Sears v. Carrier Corp.*, 2008 WL 11334967, at *5 (M.D. Fla. Aug. 5, 2008)), and Abacus is not a party to the PPM, Plaintiffs' breach of contract claim is dead on arrival.

Nor does Abacus's purchase of Carlisle in 2024 bind Abacus to Carlisle's contracts. Carlisle continues to exist as an independent legal entity organized under the laws of Luxembourg,[5] just with new ownership. *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117, 120 (Fla. 3d DCA 2011) ("[T]he fact that one corporation owns or is the parent of another does not, by itself, make the parent liable for the torts or breaches of the subsidiary."). The law is clear: Purchasing a company's shares does not make the purchaser a party to that company's contracts. *See Bizrocket.com, Inc. v. Interland, Inc.*, 274 F. App'x 776, 779 (11th Cir. 2008) (observing "no precedent, from Florida or elsewhere, for the proposition that the sole shareholder of a corporation becomes a party to the corporation's contracts with third parties by operation of law the moment it acquires ownership of the corporation's shares").

Plaintiffs fail to allege facts sufficient to plead any of the limited exceptions to

---

[5]    *See Carlisle Management Company S.C.A.*, Luxembourg Business Registers, https://www.lbr.lu/mjrcs-web-front/consult-company/B144257?tab=details (last accessed Jan. 12, 2026).

this principle. While Plaintiffs make the contradictory[6] assertion that Carlisle is Abacus's "agent," they fail to plead facts sufficient to show the "high and very significant level of control" required to make Abacus liable under an agency theory. *Reynolds*, 56 So. 3d at 120. Plaintiffs' recitation of elements (AC ¶¶ 26-32) fails to meet the pleading standards required to sustain this claim. *Surgery Ctr. of Viera, LLC v. Cigna Health & Life Ins. Co.*, 2023 WL 10947151, at *3 (M.D. Fla. July 12, 2023) ("[C]onclusory allegations of agency without any supporting facts are not enough to properly allege agency or the existence of an agreement between [Defendant] and the third parties that contracted with Plaintiff."). And Plaintiffs offer no facts to show that Carlisle was "organized or operated for an improper or fraudulent purpose" to justify piercing the corporate veil. *Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. 3d DCA 2000) ("[E]ven if a corporation is merely an alter ego of its dominant shareholder or shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity was lawfully maintained.").

### 2.    Plaintiffs Do Not Have Rights Under the PPM.

Plaintiffs do not allege—nor could they—that they are parties to the PPM or Unitholders. Rather, Plaintiffs allege that they are "[i]nvestors" who own "shares." *See* AC ¶¶ 1-2, 38-42. Only Unitholders have standing to bring claims under the PPM. *See* ECF 14-1 at 44 ("Unitholders will be subject to the exclusive jurisdiction of the courts of Luxembourg-City to settle any dispute or claim arising out of or in

---

[6]    *Compare* AC ¶ 7 ("Since Abacus' acquisition of Carlisle, Carlisle continues to manage the LLF-LTGF as Abacus' agent and under Abacus' name.") *with id.* ¶ 85 ("Abacus is the LLF-LTGF management company and alternative investment fund manager.").

connection with a Unitholder's investment in the Fund or any related matter."). Because Plaintiffs do not allege that they are either parties to the PPM or Unitholders, they lack standing to bring this breach of contract claim and the ancillary fiduciary duty claim.[7]

### 3.    Plaintiffs' Contract Claim Is Barred by the Statute of Frauds.

Florida's statute of frauds "requires that all actions to enforce agreements not to be performed within one year, be based on a written statement or memorandum, signed by the party to be charged." *Marcus v. Garland, Samuel & Loeb, P.C.*, 441 F. Supp. 2d 1227, 1232 (S.D. Fla. 2006) (citing Fla. Stat. § 725.01). Even if a contract could be performed within a year, courts will apply the statute of frauds if the parties clearly "intended that it should extend for … longer … than a year." *Yates v. Ball*, 132 Fla. 132, 139 (1937). The statute of frauds is "strictly construed." *Id.* at 138.

Plaintiffs' claims arise from their investment in the "Luxembourg Life Fund – *Long Term* Growth Fund." AC ¶ 1 (emphasis added). Plaintiffs allege that they purchased shares over a three-year period (February 2016–February 2019), and that they held these shares for more than a year until they allegedly sought redemption in September 2020. *Id.* ¶¶ 38, 41, 46. Plaintiffs' conduct—*and the name of LTGF*—makes it clear that any agreement regarding Plaintiffs' investment was intended to last more

---

[7]    Plaintiffs similarly fail to allege facts sufficient to show that they are either "Eligible Investors" or that Units were properly and validly acquired pursuant to the terms of the PPM. *See* ECF 14-1 at 13, 33-34, 69-70. Even if they had included such allegations, their rights as Eligible Investors or Unitholders would not grant them the right to relief they seek. No Unitholder can use litigation to jump the line because Luxembourg's Law of 12 July 2013 on alternative investment fund managers provides that "[n]o investor in an AIF shall obtain preferential treatment." Law of 12 July 2013 Ch. 3 Art. 11 § 1 (Lux.), https://www.cssf.lu/wp-content/uploads/L_120713_AIFM_eng.pdf.

than a year and is thus subject to the statute of frauds. *LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165 (Fla. 2d DCA 2007) (applying statute of frauds to a "*long-term* arrangement" (emphasis added)).

This is confirmed by the text of the document that Plaintiffs' seek to enforce. Within the PPM, each sub-fund memorandum (including LTGF's) includes a "Lock-up Period" prohibiting the redemption of certain Units for at least one year after their issuance. AC ¶ 83; ECF 14-1 at 14, 73, 86, 98. Because the PPM thus cannot be performed within one year, it falls under the ambit of the statute of frauds. *See, e.g.*, *Am. First Fed., Inc. v. Trugon Props., Inc.*, 419 So. 3d 78, 80 (Fla. 4th DCA 2025) (holding that statute of frauds applied to a forbearance agreement).

Because the contract alleged by Plaintiffs is subject to the statute of frauds, it must be "signed by the party against whom enforcement is sought." *Walsh v. Abate*, 336 So. 3d 50, 53 (Fla. 4th DCA 2022). The PPM contains no signatures and is thus unenforceable as a matter of law.

### 4. Plaintiffs Fail to Allege a Breach.

Even if the PPM were binding on the Parties to this litigation, Plaintiffs' conclusory allegations of breach are not supported by the plain text of the document. *See Int'l Star Registry, LLC*, 510 F. Supp. 2d at 1022-23. First, Plaintiffs claim that Abacus breached Section 20 of the PPM because, "[s]ince requesting the redemption of their shares, Abacus has failed to redeem the Investor's [*sic*] Investment." AC ¶ 89. But Section 20 does not establish some obligation on the part of Carlisle to redeem shares in response to a request by an investor.

Contrary to Plaintiffs' implication, Section 20 simply discusses the procedure for liquidation of the *Fund*, not LTGF. ECF 14-1 at 43. It permits Carlisle to liquidate the Fund at any time, and discusses the mechanisms by which liquidation revenue will be distributed to the Unitholders. *Id.* In fact, it expressly permits Carlisle to "stop redemption of Units" in the event liquidation occurs (*id.*), which is exactly what Plaintiffs allege Carlisle has done. *See* AC ¶ 59.

Plaintiffs likewise ignore the text of the PPM when they allege that Abacus breached Section 27.2 because it "fail[ed] to inform or respond to the Investor's requests for specific information as to the status of their shares in [LTGF] and the timeline to redeem their Investment." *Id.* ¶ 91. In actuality, Section 27.2 directs Carlisle to furnish information to Unitholders by means of an Annual Report to be issued within six months of the end of each financial year. ECF 14-1 at 60. It also lists seven additional categories of information to be provided outside of the Annual Report, "if the materiality so justifies." *Id.* at 60-61. It does not, however, require Carlisle (let alone Abacus) to respond to individual investor requests. *Id.*; AC ¶ 91.

Nor have Plaintiffs plausibly alleged any other breach of the PPM. Section 2.6.6 grants Carlisle "absolute discretion in permitting any redemption of units" (Dkt. 14-1 at 73)—such discretion that is not affected by any statement that Carlisle "would cease applying clause 2.6.6." AC ¶ 45. Any failure by Carlisle to honor Plaintiffs' redemption requests (*id.* ¶ 12), thus cannot be a breach of contract. And the PPM grants Carlisle "sole discretion" in choosing "the appropriate method of disclosure or communication for any relevant information." ECF 14-1 at 14. So, any

"fail[ure] to inform or respond to the Investor's requests for specific information" (AC ¶ 91), is likewise not a breach. As Plaintiffs admit, Carlisle provided Unitholders with updates more frequently than what the PPM requires. *Compare id.* ¶ 67 (monthly newsletters) *with* ECF 14-1 at 60 (requiring annual reports).

### B.      Plaintiffs' Fail to State a Claim for Breach of Fiduciary Duty.

Plaintiffs allege that "Abacus, as the LLF-LTGF fund manager through Carlisle, owes a fiduciary duty to the Investors." AC ¶ 94. "To establish a claim for breach of fiduciary duty under Florida law, a plaintiff must demonstrate: the existence of a fiduciary duty and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Scharrer v. Fundamental Admin. Servs., LLC*, 2013 WL 12169309, at *4 (M.D. Fla. Sept. 10, 2013). In Florida, a fiduciary relationship may be express or implied. *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009). Plaintiffs do not clear this bar.

Plaintiffs do not allege that the PPM expressly contemplates any fiduciary relationship. *See* AC ¶¶ 94-97. Even if the PPM did contemplate fiduciary duties to Unitholders, Plaintiffs' failure to establish their status as Unitholders dooms their breach of fiduciary duty claims. *See, e.g.*, *Carney v. IDI-DX, Inc.*, 2014 WL 12618107, at *3 (M.D. Fla. July 16, 2014) (failure to allege plaintiff was a shareholder warranted dismissal of breach of fiduciary duty claim against corporate directors).

Plaintiffs also fail to allege facts establishing an implied fiduciary relationship. Implied fiduciary relationships "are premised upon the specific factual situation surrounding the transaction and the relationship of the parties" and exist where

20

"confidence is reposed by one party and a trust accepted by the other." *Hogan*, 665 F. Supp. 2d at 1287. Plaintiffs merely recite this legal standard verbatim, but do not allege any supporting facts. *See* AC ¶ 95. This conclusory allegation is plainly insufficient. *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1337 (S.D. Fla. 2018) (pleading a fiduciary relationship requires "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party"). Plaintiffs fail to allege any facts—no dependency, no undertaking, no advice or counsel, no protection—sufficient to imply a fiduciary duty.

### C.        Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs unjust enrichment claim should be dismissed. First, Plaintiffs allege Abacus breached an express agreement (the PPM) and where there is an express agreement at issue, an unjust enrichment claim cannot lie. *See Wilson v. EverBank, N.A.*, 77 F. Supp. 3d 1202, 1220-21 (S.D. Fla. 2015) (dismissing unjust enrichment claim with prejudice where the parties did not dispute the existence of an express contract); *Apollo Mgmt. Grp. v. Croxall*, 2023 WL 11799718, at *6 (S.D. Fla. Mar. 29, 2023) ("[T]he existence of ... an express contract that governs [the dispute] ... precludes Plaintiff from alleging unjust enrichment."). And where, as here, an unjust enrichment claim incorporates allegations of a valid contract (*see* AC ¶ 44; *id.* at page 14 (realleging existence of contract)), unjust enrichment cannot be pleaded in the alternative. *Collaboration Betters The World, Inc. v. Hertz Corp.*, 2023 WL 3931822, at *3 (M.D. Fla. June 9, 2023) (dismissing unjust enrichment count "incorporat[ing] all factual allegations regarding the existence of a valid contract").

21

Second, even assuming no valid contract exists between Plaintiffs and Abacus, Plaintiffs fail to allege that Abacus was enriched by their share purchases. Plaintiffs allege that "Abacus received the benefit of the Investors' transfer of $12,575,601.77 for the purchase of the LLF-LTGF shares." AC ¶¶ 99-101. But Plaintiffs allege no facts showing that Abacus received these subscription proceeds. The PPM shows that Carlisle, not Abacus, receives management fees and performance fees based on the Net Asset Value of the Fund. ECF 14-1 at 76-78. Without such factual allegations, Plaintiffs cannot maintain a claim for unjust enrichment against Carlisle's parent entity. *Shelor v. Jaguar Land Rover N. Am. LLC*, 2025 WL 1580834, at *51 (M.D. Fla. Jan. 31, 2025) (holding that unjust enrichment claim against parent depends on allegations of a benefit "fully and directly traceable" to parent); *Extraordinary Title Servs., LLC v. Fla. Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009) (finding no direct benefit to the parent where plaintiff "contracted with" the subsidiary, "paid" the subsidiary, and the parent "provided no services to Plaintiff").

### D.    Plaintiffs Fail State to a Claim for Fraudulent Concealment or Misrepresentation.

Fraudulent concealment requires specific allegations that: "(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known that the material fact should be disclosed; (3) the defendant knew its concealment of the fact would induce the plaintiff to act; (4) the defendant had a duty to disclose the material fact; and (5) the plaintiff relied on the misrepresentation to his or her detriment." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla.

22

2017). A claim for fraudulent misrepresentation must plead: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Fuller v. Mortg. Elec. Registration Sys., Inc.*, 888 F. Supp. 2d 1257, 1276 (M.D. Fla. 2012)

Moreover, claims sounding in fraud must satisfy Rule 9(b)'s heightened pleading standard by "stat[ing] with particularity the circumstances constituting fraud." *See Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1137-38 (M.D. Fla. 2021). This means the AC must identify "the who, what, when, where, and how" of the alleged fraud. *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 (11th Cir. 2009).

Plaintiffs allege fraudulent concealment or misrepresentation but fail to plead fraud with the particularity Rule 9(b) requires. *See* AC ¶¶ 104-12. Plaintiffs offer only generic allegations that Abacus "concealed or misrepresented" non-material facts. *Id.* ¶ 104. But these vague and conclusory allegations do not satisfy Rule 9(b). *See, e.g.*, *Douse v. Boston Sci. Corp.*, 314 F. Supp. 3d 1251, 1263 (M.D. Fla. 2018) (finding too vague an allegation that the defendant concealed "that the [product] was not safe" because it failed to allege specific facts that were concealed); *Padilla v. Porsche Cars N. Am., Inc.*, 2020 WL 1472301, at *3 (S.D. Fla. 2020) (dismissing a fraudulent concealment claim where the complaint alleged failure to disclose material information but did not point to "precise statements, documents, or misrepresentations" or how they were misleading).

23

Plaintiffs also do not allege that Abacus knew any statements were false. Indeed, many of the alleged statements came from *Carlisle* years before its connection with Abacus. *See* AC ¶ 104 (citing events in 2022 and 2023). Without pleading Abacus's knowledge, Plaintiffs fail to plead fraudulent concealment.

Plaintiffs likewise fail to allege affirmative deceptive conduct. The AC alleges only that Abacus "concealed or misrepresented" non-material information. AC ¶ 104. There are no allegations that Abacus provided false documents, made misleading statements while concealing contrary information, took active steps to prevent discovery, or created false appearances. Mere silence is insufficient to support a claim for fraudulent concealment absent a duty to disclose. *Aguilo v. Cognizant Tech. Sols. U.S. Corp.*, 2023 WL 12174854, at *8 (M.D. Fla. Sept. 15, 2023) (finding "no authority … that permits a plaintiff to plead a claim for fraudulent concealment without alleging a duty to disclose"). The AC alleges no such duty.

### E.   Plaintiffs Fail to State a Claim Under FDUTPA.

Plaintiffs cannot bring a claim against Abacus under Florida's Deceptive and Unfair Trade Practices Act for two independent reasons. First, Section 22 of the PPM commits "any dispute or claim arising out of or in connection with a Unitholder's investment in the Fund or any related matter" to the courts of Luxembourg City (ECF 14-1 at 44), and such an all-encompassing choice of law provision "precludes a claim under the FDUTPA," whether those claims sound in contract or tort. *Barnes v. StubHub, Inc.*, 2019 WL 11505575, at *4 (S.D. Fla. Oct. 3, 2019) (collecting cases) (no FDUTPA claim where forum selection clause governed

"any claim, dispute or matter arising under or in connection with [the] Agreement").

Second, "nonresident plaintiffs cannot assert an FDUTPA claim on the basis of conduct unconnected to this state." *Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc.*, 2011 WL 3687855, at *3 (M.D. Fla. Aug. 22, 2011) (dismissing FDUTPA claim brought by non-resident plaintiffs in connection with program run out of New Jersey). The AC contains a single allegation of activity occurring in Florida: that "Carlisle communicates as Abacus to its investors, including by issuing newsletters from Florida regarding the [LTGF]." AC ¶ 29. But not only is this activity unrelated to the conduct at issue, it is not Abacus's conduct.

## F.   Plaintiffs Fail to State a Claim for Accounting.

The final count of the AC is not actionable. There is no right of "accounting" in the PPM. Besides, "an accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right" and it is only available where a party can demonstrate "an inadequate remedy at law." *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21, 1311 (11th Cir. 2014). Plaintiffs' requests for specific sums preclude an accounting. Plaintiffs' claim also fails because they have not sufficiently alleged a fiduciary relationship with Abacus. *Id.*

## CONCLUSION

The Court should grant Defendant's Motion to Dismiss on *forum non conveniens* grounds without prejudice or, in the alternative, for failure to state a claim under Rule 12(b)(6) with prejudice because no additional amendment could cure Plaintiffs' fatal deficiencies.

25

## LOCAL RULE 3.01(g) CERTIFICATION

Defendant certifies that on January 12, 2026, counsel for Defendant conferred with counsel for Plaintiffs, via telephone, regarding the relief sought herein and Plaintiffs oppose this Motion in its entirety.

Dated: January 12, 2026

Respectfully Submitted,

/s/ Alex Zuckerman

**Quinn Emanuel Urquhart & Sullivan, LLP**
Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Jason Sternberg (Fla. Bar. No. 72887)
jasonsternberg@quinnemanuel.com
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Nithya Pathalam (*pro hac vice*)
nithyapathalam@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C. 20005
(202) 538-8000

*Attorneys for Defendant Abacus Global Management, Inc.*

26