**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Case No. 6:25-cv-02047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

      Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

      Defendant.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO ABACUS GLOBAL MANAGEMENT,
INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION ............................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................. 2

    A.   Investors' Investment and the Controlled Liquidation ..................................... 2

    B.   Abacus's Acquisition of Carlisle and Assumption of Control........................ 2

    C.   Ongoing Withholding of Information and Resulting Harm............................. 3

ARGUMENT ..................................................................................................................... 4

    I.    The Forum Non Conveniens Doctrine Does Not Apply...................................... 4

        A.   The Forum Selection Clause is Not Enforceable............................................. 5

        B.   There is no Adequate Alternative Forum for the Investors' Claims Against Abacus .... 6

        C.   The Public and Private Factors Weigh Against Dismissal ............................. 7

    II.   The Complaint Adequately Alleges All Causes of Action Against Abacus..................... 10

        A. The Complaint Adequately Alleges a Claim for Breach of Contract ............................. 10

        B.   The Complaint Adequately Alleges a Claim for Breach of Fiduciary Duty................. 19

        C.   The Complaint Adequately Alleges a Claim for Unjust Enrichment .......................... 20

        D.   The Complaint Adequately Alleges a Claim for Fraudulent Concealment or Misrepresentation........................................................................................................ 21

        E.   The Complaint Adequately Alleges a Claim Under FDUTPA................................... 23

        F.   The Complaint Adequately Alleges a Claim for Accounting..................................... 24

CONCLUSION............................................................................................................... 25

## TABLE OF AUTHORITIES

### Cases

*Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc.*,

    2011 WL 3687855 (M.D. Fla. 2011) ................................................................. 23

*AmTote Int'l, Inc. v. HSWM Holding Co.*,

    2012 WL 13103145 (M.D. Fla. 2012) ............................................................... 12

*AQuate II LLC v. Myers*,

    100 F.4th 1316 (11th Cir. 2024) ......................................................................... 4

*Ashcroft v. Iqbal*,

    556 U.S. 662 (2009) ............................................................................................ 4

*Beck v. Lazard Freres & Co., LLC*,

    175 F.3d 913 (11th Cir. 1999) .......................................................................... 17

*Bell Atlantic Corp. v. Twombly*,

    550 U.S. 544 (2007) ............................................................................................ 4

*Bruhl v. PricewaterhouseCoopers Int'l*,

    2008 WL 899250 (S.D. Fla. 2008) ................................................................... 19

*C. & H. Contractors, Inc. v. McKee*,

    177 So. 2d 851 (Fla. 2d DCA 1965) ........................................................... 10, 11

*Centimark Corp. v. A to Z Coatings & Sons, Inc.*,

    288 Fed. Appx. 610 (11th Cir. 2008) ............................................................... 12

*Doe v. Evans*,

    814 So. 2d 370 (Fla. 2002) ............................................................................... 19

*Dusek v. JPMorgan Chase & Co.*,

    832 F.3d 1243 (11th Cir. 2016) .......................................................................... 4

*Erickson v. Pardus*,

 551 U.S. 89 (2007) ........................................................................................ 4

*Firestone Bldg. Products Co., LLC v. Ramos*,

 750 Fed. Appx. 777 (11th Cir. 2018) ............................................................ 9

*Foley v. Wells Fargo Bank, N.A.*,

 849 F. Supp. 2d 1345 (S.D. Fla. 2012) ......................................................... 8

*Herman v. Lopez*,

 401 So. 3d 382 (Fla. 4th DCA 2025) ..................................................... 12, 13

*Hogan v. Provident Life & Accident Ins. Co.*,

 665 F. Supp. 2d 1273 (M.D. Fla. 2009) ...................................................... 19

*Journey Two Enterprises, LLC v. N342AJ, LLC*,

 2020 WL 9748985 (M.D. Fla. 2020) ........................................................... 13

*Kee v. Nat'l Reserve Life Ins. Co.*,

 918 F.2d 1538 (11th Cir. 1990) ................................................................... 24

*King v. Cessna Aircraft Co.*,

 562 F.3d 1374 (11th Cir. 2009) ..................................................................... 7

*Leon v. Millon Air, Inc.*,

 251 F.3d 1305 (11th Cir. 2001) ..................................................................... 7

*Maderas Del Siglo XXI-Madesi S.R.L. v. Medley Hardwood, Inc.*,

 2014 WL 12605558 (S.D. Fla. 2014) ........................................................... 16

*Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*,

 743 So. 2d 627 (Fla. 1st DCA 1999) ........................................................... 24

*Millennium Communications & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.*,

    761 So. 2d 1256 (Fla. 3d DCA 2000) ............................................................................. 23

*Molinos Valle Del Cibao, C. por A. v. Lama*,

    633 F.3d 1330 (11th Cir. 2011) ..................................................................................... 10

*Omnipol, A.S. v. Multinational Def. Services, LLC*,

    32 F.4th 1298 (11th Cir. 2022) ...................................................................................... 21

*Otto Candies, LLC v. Citigroup, Inc.*,

    963 F.3d 1331 (11th Cir. 2020) ....................................................................................... 6

*Pimentel v. Strength20, LLC*,

    2024 WL 3952429 (M.D. Fla. 2024) .............................................................................. 14

*Piper Aircraft Co. v. Reyno*,

    454 U.S. 235 (1981).......................................................................................................... 7

*Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*,

    650 F. Supp. 2d 1213 (S.D. Fla. 2009) .......................................................................... 21

*SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*,

    382 F.3d 1097 (11th Cir. 2004) ....................................................................................... 6

*Tazoe v. Airbus S.A.S.*,

    631 F.3d 1321 (11th Cir. 2011) ................................................................................ 6, 7, 8

*Tracfone Wireless, Inc. v. Access Telecom, Inc.*,

    642 F. Supp. 2d 1354 (S.D. Fla. 2009) .......................................................................... 20

*Turner v. Costa Crociere S.p.A.*,

    9 F.4th 1341 (11th Cir. 2021) ..................................................................................... 5, 8

*U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*,

    290 F.3d 1301 (11th Cir. 2002) ..................................................................... 22

*Usme v. CMI Leisure Mgmt., Inc.*,

    106 F.4th 1079 (11th Cir. 2024) ................................................................. 5, 9

*Wilson v. Island Seas Investments, Ltd.*, 5

    90 F.3d 1264 (11th Cir. 2009) ........................................................................ 7

*Wright v. King*,

    2007 WL 80844 (M.D. Fla. 2007) .................................................................. 4

## Statutes

Fla. Stat. § 725.01 ....................................................................................... 16

## Other Authorities

Luxembourg Civ. C., Art. 41 ............................................................................ 5

Nouveau Code de procédure civile, Legilux (Lux.),

    https://legilux.public.lu/eli/etat/leg/code/procedure_civile/20231101 .............................. 5

## Rules

Fed. R. Civ. P. 8(d) ...................................................................................... 20

Fed. R. Civ. P. 9(b) ................................................................................... 21, 22

Fed. R. Civ. P. 12(b)(6)............................................................................ 11, 15, 18

## **INTRODUCTION**

This case is not about a passive acquirer being sued for someone else's conduct as Abacus' Motion to Dismiss frames it. D.E. 26 ("Mot."). It is, instead, about a Florida-based asset manager that acquired, rebranded, absorbed, and assumed control of an ongoing investment program, continued to manage a liquidation process, communicated (or didn't) directly with investors, distributed proceeds, collected fees, and then sought to disclaim responsibility when the investor plaintiffs demanded transparency and full redemption.

Ritz and Season (the "Investors") invested more than $12.5 million in the LLF-LTGF fund. D.E. 14 ¶¶ 39, 42 ("Comp."). When Carlisle announced in September 2022 that redemption restrictions would no longer apply and that the fund would enter a controlled liquidation, the Investors reasonably expected a prompt return of their capital. Instead, after Abacus acquired Carlisle in 2024, Abacus stepped into Carlisle's role, held itself out as the fund's manager, continued the liquidation process, issued investor communications under its own name, made miniscule partial distributions, and retained control over the Investors' capital—while repeatedly withholding material information concerning liquidation timelines, reserves, asset sales, and allocation mechanics.

Abacus now characterizes itself as the "wrong defendant," arguing that it neither owed duties to the Investors nor breached any obligations. Mot. at 1. But the complaint alleges that Abacus knowingly assumed control of the fund's operations, ratified Carlisle's pre-acquisition conduct, and continued the very course of conduct that injured (and continues to injure) the Investors, creating at the very least implied duties and obligations between these parties. Those allegations are more than sufficient at the pleading stage.

Abacus' motion to dismiss asks the Court to resolve disputed issues of fact, consider extrinsic evidence outside the four corners of the complaint, and construe contractual provisions

1

in isolation, while ignoring Abacus' alleged own post-acquisition conduct. Rule 12 does not permit that result. Because the complaint plausibly alleges claims against Abacus, the motion should be denied in its entirety.

## FACTUAL BACKGROUND

### A. *Investors' Investment and the Controlled Liquidation*

Ritz Investment Limited and Season Limited invested more than $12.5 million in the LLF-LTGF fund through established banking nominees, Union Bancaire Privée and LGT Bank. Comp. ¶¶ 2, 38–43. At the time of the investment, the fund invested in life-insurance policies and was managed by Carlisle Management Company pursuant to the Placement Memorandum ("PM"). *Id*. ¶¶ 24–25, 33.

In September 2022, Carlisle informed investors, including the Investors, that it would cease applying redemption restrictions and that the fund would enter a controlled liquidation process. *Id*. ¶ 45. Carlisle represented that investors would be permitted to redeem their interests and that liquidation would proceed in an orderly manner. *Id*. Relying on those representations, the Investors submitted redemption requests seeking return of their capital. *Id*. ¶¶ 46–51, 56. Although liquidation was initiated, Carlisle and later Abacus failed to provide meaningful information regarding the timing, mechanics, or progress of the process. *Id*. ¶¶ 59–62, 67–73. While Abacus later made partial distributions, the Investors were left without visibility into when or whether their remaining capital would be returned, or at what return rate. *Id*. ¶¶ 62–73.

### B. *Abacus's Acquisition of Carlisle and Assumption of Control*

In 2024, Abacus, a Florida-based asset manager headquartered in Orlando, acquired Carlisle, presumably after conducting due diligence. *See* Comp. ¶¶ 4, 5, 17, 33. Following the acquisition, Abacus did not repudiate Carlisle's prior conduct or distance itself from the LLF-LTGF fund. *See id*. ¶ 33. Instead, Abacus absorbed Carlisle's operations and employees,

rebranded Carlisle as part of its "Abacus International Division," and held itself out as the entity managing the fund. *Id*. ¶¶ 4–11, 26–31.

Following the acquisition, Abacus exercised complete control over the fund's operations. Abacus continued administering the liquidation process, issued monthly investor communications, responded to investor inquiries, and made liquidation distributions tied to the Investors' pre-acquisition investments. *Id*. ¶¶ 67–78. Abacus also continued to invoke provisions of the PM when convenient—while withholding information regarding liquidation timelines, reserves, asset sales, and allocation mechanics. *Id*. ¶¶ 61, 67–79. At no point did Abacus disclaim responsibility for the fund or assert that the Investors lacked standing to receive liquidation proceeds. To the contrary, Abacus treated the Investors as entitled to distributions, accepted the benefits of managing the fund, and retained control over the Investors' capital. Comp. ¶¶ 4–11, 67–73.

### C.  *Ongoing Withholding of Information and Resulting Harm*

Despite initiating liquidation and making partial distributions, Abacus repeatedly failed to provide the Investors with material information necessary to evaluate the liquidation process and protect their investment. The Investors were not informed of when liquidation would conclude, how proceeds were being allocated, what reserves were being held, or how remaining assets were being managed or sold. Comp. ¶¶ 59–79. This lack of transparency persisted even after the Investors made direct written inquiry regarding the status of their investment. *Id*. ¶¶ 68–73. Abacus communicated with investors by issuing vague, generalized updates, while omitting material facts necessary to make those communications complete and non-misleading. *Id*. ¶¶ 68–79.

3

As a result of Abacus's conduct, the Investors were deprived of both the timely return of their capital and the information necessary to assess the status and value of their investment. *Id*. ¶¶ 88–93, 107–112. These facts form the basis of the Investors' claims against Abacus—not as some passive bystander, but as the entity that assumed control, ratified prior conduct, and continued the course of conduct that caused, and continue to cause, the Investors harm.

## ARGUMENT

Defendants' motion to dismiss should be denied because the complaint alleges "enough facts to state a claim to relief that is plausible on its face," so as to "nudge[] [its] claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint does this and more.

Further, on a motion to dismiss, the Court "must accept all factual allegations in [the] complaint as true and take them in the light most favorable to plaintiff." *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). No factual issues may be resolved on this motion, only questions of law. *E.g.*, *Wright v. King*, 2007 WL 80844, at *2 (M.D. Fla. 2007). The allegations in this complaint make a case against Abacus.

## I.    The Forum Non Conveniens Doctrine Does Not Apply

As an initial matter, Abacus invites the Court to determine whether the forum-selection clause applies to the claims and parties in this case. The Eleventh Circuit has made clear that because "the presence of a valid and enforceable forum-selection clause alters the type of forum-non-conveniens analysis a court must apply, it follows that a court must first—before balancing the forum-non-conveniens factors—determine whether a forum-selection clause is applicable to

4

the claims at issue, mandatory, valid, and enforceable." *AQuate II LLC v. Myers*, 100 F.4th 1316, 1324 (11th Cir. 2024).

Here, that threshold inquiry is dispositive in the negative: the forum-selection clause does not apply to the claims raised in the complaint. The Investors' claims are asserted against the only defendant in this case, Abacus. *Neither* the Investors nor defendant are parties to the PM, so the forum-selection and choice-of-law provisions contained in it are inapplicable and cannot be enforced. *See Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1087 (11th Cir. 2024) (stating that a forum selection clause is a contractual provision that cannot ordinarily be invoked by or against one who was not a party to the agreement in which the clause appears). Accordingly, defendant cannot rely on the PM to dictate the forum for the investors' claims.

### A. The Forum Selection Clause is Not Enforceable

Even if the Court were to conclude that the forum-selection clause applies to the parties, enforcement of it would still be improper because it would deprive the investors of their day in court. *See Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1345 (11th Cir. 2021) (A plaintiff can defeat the presumptive enforceability of a forum-selection clause by showing that the plaintiff would be deprived of its day in court because of inconvenience or unfairness, because the chosen law would deprive the plaintiff of a remedy, or because enforcement of the clause would contravene public policy, among other factors). The PM's forum-selection clause designates courts in Luxembourg, yet defendant is neither incorporated in Luxembourg nor maintains its principal place of business there and is not subject to jurisdiction there. There is no basis to conclude that Luxembourg courts would exercise jurisdiction in connection with this dispute.

In fact, Luxembourg law itself underscores this jurisdictional deficiency. Under Article 41 of the Luxembourg Civil Code,[1] a civil or commercial company may be sued in Luxembourg only when it has its registered office there, or where it maintains a branch or agency with authority to deal with third parties and the dispute arises from the activities of that branch or agency. Abacus satisfies none of these conditions and its motion is devoid of any assurance that it would submit to the jurisdiction of the Luxembourg courts. Enforcing the forum-selection clause under these circumstances would therefore create a substantial risk that the Investors would be deprived of any forum in which to pursue their claims against *this defendant*. Defendant's bald assertion that courts have "routinely" recognized that litigants will not be deprived of a remedy in Luxembourg fails meaningfully to address whether any of ***this*** complaint's six claims (or similar relief) would be available in the forum, much less how the relief would be obtained in Luxembourg against a defendant who is not subject to jurisdiction there. Mot. at 9–10.

### B. There is no Adequate Alternative Forum for the Investors' Claims Against Abacus

In the alternative, even if the Court were to find that the forum-selection clause applies and is enforceable, dismissal would still be inappropriate. The relevant factors strongly favor litigating this dispute in Florida, specifically, in the United States District Court for the Middle District of Florida, which is both an adequate and convenient forum.

When the doctrine of forum non conveniens is invoked on motion to dismiss, dismissal is the exception rather than the rule. *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1339

---

[1] Nouveau Code de procédure civile, Legilux (Lux.), https://legilux.public.lu/eli/etat/leg/code/procedure_civile/20231101 (English translation created by computer-assisted translation software).

(11th Cir. 2020). Unless the balance is strongly in favor of the defendant, plaintiff's chosen forum should not be disturbed. *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.*, 382 F.3d 1097, 1101 (11th Cir. 2004). To obtain dismissal based on forum non conveniens, a defendant must establish that "(1) an adequate alterative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without under inconvenience or prejudice." *Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1330 (11th Cir. 2011).

As to availability, "[a]n alternative forum is available to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001). The availability requirement is met "when the defendant is amenable to process in the other jurisdiction." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981). As discussed above, defendant has failed to establish the first prong—Abacus is not subject to jurisdiction, and it has not certified it is amenable to process in Luxembourg. Because defendant cannot be compelled to appear in a Luxembourg court, Luxembourg cannot constitute an available forum as a matter of law. Defendant merely seeks to evade suit altogether.

### C. The Public and Private Factors Weigh Against Dismissal

Defendant also fails to establish the second prong: "whether the public and private factors weigh in favor of dismissal." *Tazoe*, 631 F.3d at 1331. "This comparative inquiry requires the district court to weigh the 'relative' advantages and disadvantages of each respective forum." *Id*. Private factors focus on "the interests of the participants in the litigation," while public factors involve the "relative interests of the two fora." *Id*. at 1331, 1333. Courts should examine the private factors first before analyzing the public factors. *Id*. And "the better rule is to consider both factors in all cases." *Leon*, 251 F.3d at 1311. Here, both factors weigh against dismissal.

Private factors include the relative ease of access to sources of proof, access to unwilling and willing witnesses, ability to compel testimony, the possibility of view of premises, and the enforceability of a judgment. *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1270 (11th Cir. 2009). These factors are not exhaustive, and the district court should be flexible in applying them. *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1381–82 (11th Cir. 2009). Here, most of the evidence and witnesses are located in Orlando, Florida. This matter stems from a dispute with Abacus, an Orlando-headquartered company. Comp. ¶ 17. It is in Orlando where evidence and sources of proof necessary to this case are maintained. The defendants' books and records, and their communications, including with third parties, are to be found in or testified to here in Orlando. In terms of access to witnesses, Investors will be able to produce records and testify in Orlando without difficulty. As for defendant's witnesses, in 2024 Abacus purchased Carlisle and since then it exercises complete control over Carlisle's operations. *Id*. ¶ 4. It is here that defendants' documents and representatives are found. *Id*. ¶ 17, 19, 114. It will be expedient and cost-effective to have witnesses appear in this Court, rather than moving this action to Luxembourg. Overall, relevant evidence will all come from documents and witnesses located in Orlando, as alleged in the complaint. Tellingly, Abacus fails to discuss the private interest factors at all in its motion. That waives any argument on this factor and concedes that it weighs heavily in plaintiff's favor. *Foley v. Wells Fargo Bank, N.A.*, 849 F. Supp. 2d 1345, 1349 (S.D. Fla. 2012) ("Because it is improper for Defendant to raise this new argument in its Reply brief, the argument will not be considered.").

The public interest factors considered include the administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law, and

the unfairness of burdening citizens in an unrelated forum with jury duty. *Tazoe*, 631 F.3d at 1333. While district courts are not required to consider all of the public factors and may choose to discuss only those that are relevant, these factors in total weigh in favor of the Investors' chosen forum. *Turner v. Costa Crociere S.p.A.*, 9 F.4th 1341, 1348 (11th Cir. 2021).

First, proceeding in this forum will not impose administrative difficulties. Florida courts are well-equipped to handle complex cases, and having the action here (where the defendant is headquartered) will streamline access to witnesses, documents, and other evidence, minimizing delays and procedural inefficiencies. Defendant argues that public policy favors dismissal because this dispute is "at bottom between two foreign entities with *no connection* to Florida." Mot. at 10 (emphasis added). That argument ignores the fact that defendant's principal place of business is in Orlando, Florida, giving this forum a clear and substantial connection to the dispute. *See Firestone Bldg. Products Co., LLC v. Ramos*, 750 Fed. Appx. 777, 781 (11th Cir. 2018) (finding that the district court correctly concluded that the United States had a strong local interest because the fraud scheme at issue was orchestrated from defendant office in Fort Lauderdale). Public policy should not be stretched to permit a local company to avoid suit where it is headquartered and engaged in the conduct under suit.

Additionally, local jurors have a direct interest in resolving a dispute involving a company headquartered in their community. *See id*. (Although the scheme involved some Brazilian actors and transactions, a local jury would not be unfairly burdened by deciding the case). The Middle District of Florida has a more compelling interest in resolving the issues raised in against Abacus than a Luxembourg court.

Ultimately, the PM's forum selection clause is inapplicable to this controversy, and even if applied would not compel dismissal. "[T]he central purpose of any forum non conveniens

9

inquiry is to ensure that the trial is convenient[.]" *Usme*, 106 F.4th at 1085 (citing *Piper Aircraft*, 454 U.S. at 256). Nowhere would trial be more convenient, and appropriate, than in Orlando, Florida, and Abacus has failed to meet its burden in demonstrating any other outcome.

## II.    The Complaint Adequately Alleges All Causes of Action Against Abacus

### A. The Complaint Adequately Alleges a Claim for Breach of Contract

Abacus challenges the complaint's well-pleaded breach of contract claim on four grounds: (1) that Abacus is not bound by the PM;[2] (2) that Investors do not have rights under the PM; (3) that the statute of frauds bars the claim; and (4) that the complaint does not allege a breach. For the reasons discussed below, each of defendant's arguments is without merit.

#### 1.    Abacus Ratified and Assumed Responsibility for Carlisle's Pre-Acquisition Conduct and is Liable Under Successor Liability Principles

Abacus argues that, even if misconduct occurred, it cannot be held responsible because the challenged conduct predates Abacus's acquisition of Carlisle and Abacus did not assume Carlisle's liabilities under the share purchase agreement. *See* Mot. at 14–16. That argument misstates both the allegations and the governing legal principle. Under Florida law, ratification does not require an express assumption of liabilities in an acquisition agreement. *See C. & H. Contractors, Inc. v. McKee*, 177 So. 2d 851, 853 (Fla. 2d DCA 1965). Rather, ratification may be established where a party, with knowledge of the material facts, accepts the benefits of prior conduct, continuing that conduct as its own. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1355 (11th Cir. 2011). The complaint alleges *exactly* that: acceptance of benefits proves ratification even if there is no proof of explicit ratification. *See id.*; Comp. ¶¶ 30, 33, 97(e).

---

[2] An unusual position to take in tandem with Abacus' insistence that it benefit from the forum selection clause.

10

The Investors allege that when Abacus acquired Carlisle in 2024, it did so with full knowledge of Carlisle's management of the LLF-LTGF, the pending redemption requests, and the ongoing liquidation process. *See* Comp. ¶¶ 3–5, 25, 30, 33. Abacus did not unwind or repudiate Carlisle's prior actions. Instead, Abacus absorbed Carlisle's operations, personnel, investor relationships, assets, and liabilities, publicly rebranded Carlisle's business under the "Abacus Global Management" name, and held Carlisle out as its international asset-management division. *See* Comp. ¶¶ 4–11, 26–31. Critically, Abacus then affirmatively continued the very conduct it now seeks to disclaim. After the acquisition, Abacus continued administering the LLF-LTGF liquidation under the same framework, issued monthly investor communications regarding the fund, responded to Investors' inquiries about redemption and liquidation, and made multiple liquidation distributions tied to Investors' pre-acquisition investments. *See id*. ¶¶ 59–73. At the same time, Abacus continued selectively to invoke the PM's provisions—relying on its liquidity, reserve, and disclosure limitations—while withholding the detailed information the Investors requested regarding timelines, asset sales, and allocation mechanics. *See id*. ¶¶ 67–79.

These allegations are not consistent with Abacus's claim that it merely purchased a corporate shell while disavowing responsibility for Carlisle's conduct. The complaint plausibly alleges knowing acceptance of the benefits of Carlisle's investment management activities, continuation of the same liquidation process, and an ongoing assertion of authority derived from the PM. Comp. ¶ 97. At the pleading stage, that suffices to allege ratification.

Abacus argues that it "acquired Carlisle but not its liability" (Mot. at 13). First, the complaint alleges that Abacus acquired Carlisle's assets and liabilities (Comp. ¶ 30); defendant's argument to the contrary is not for adjudication on a motion to dismiss. Second, the Investors do not allege assumption by virtue of purchase alone, but by Abacus' post-purchase conduct. *See*

11

*McKee*, 177 So. 2d at 853. Whether Abacus can ultimately prove that it neither knew of nor ratified Carlisle's pre-acquisition misconduct is a fact-dependent merits question that cannot be resolved on a Rule 12(b)(6) motion. The Investors have plausibly alleged that Abacus stepped into Carlisle's role as fund manager, adopted Carlisle's prior acts as its own, and continued to benefit from those acts while denying the Investors meaningful relief. That defeats dismissal.

Separately, Abacus is also bound by the PM under successor liability principles. To impose these, the complaint must allege *one* of the following: "(1) the successor impliedly assume[d] the obligations of the predecessor, (2) the transaction [wa]s a de facto merger, (3) the successor corporation is a mere continuation of the predecessor, or (4) the transaction is a fraudulent effort to avoid the liabilities of the predecessor." *Centimark Corp. v. A to Z Coatings & Sons, Inc.*, 288 Fed. Appx. 610, 614 (11th Cir. 2008). The Investors allege two bases.

First, the Investors allege that Abacus impliedly and expressly assumed Carlisle's obligations. Comp. ¶¶ 30, 33–34. "Even when an assignee does not expressly assume an obligation of the assignor, the assignee assumes that obligation if it has actual knowledge of the obligation." *See Herman v. Lopez*, 401 So. 3d 382, 388 (Fla. 4th DCA 2025). Here, Abacus had actual knowledge of Carlisle's obligations. Abacus was well-aware of the agreements driving the life insurance funds when it purchased and subsumed Carlisle. *See* Comp. ¶ 33. Abacus would have conducted extensive due diligence into Carlisle's business operations prior to the acquisition, which it did with full knowledge of Carlisle's operations. *Id.* ¶¶ 8, 25, 30, 33; *see AmTote Int'l, Inc. v. HSWM Holding Co.*, 2012 WL 13103145, at *4–7 (M.D. Fla. 2012) (denying a 12(b)(6) motion because plaintiff alleged sufficient facts to support a claim that defendant impliedly assumed obligations under an agreement where it continued operations

12

under the agreement). Similar to the *AmTote* defendant, Abacus continued operating under the PM by collecting management fees and refusing redemption requests. Comp. ¶¶ 67–69, 85, 97.

Second, "[c]ontinuation of business arises where the successor corporation is merely a continuation or reincarnation of the predecessor corporation under a different name." *Herman*, 401 So. 3d at 389. "The key element of a continuation is *a common identity of the officers, directors and stockholders in the selling and purchasing corporation*." *Id.* (emphasis added). "The change is in form, but not in substance." *Id.* at 389–90.[3] The complaint alleges that Carlisle's officers and directors became Abacus' officers and directors. Comp. ¶ 6. Jose Garcia remains the CEO of Carlisle while simultaneously representing himself as an Abacus employee. *Id.* ¶¶ 9, 10. Carlisle's assets and liabilities have also been subsumed into Abacus's assets and liabilities. *Id.* ¶¶ 28, 30. Post-acquisition communications to LLF-LTGF investors also appear under Abacus' name. Comp. ¶¶ 29, 67. Abacus also sends out marketing information on behalf of Carlisle's LLF-LTGF fund with defendant's name front-and-center, and also uses Abacus as a "trade name" for Carlisle all while classifying it as its "Abacus International Division." *Id.* at ¶¶ 6, 26, 29, 67. These entities are so intertwined and one-in-the-same, that Carlisle's former website redirects to Abacus' website. *Id.* ¶ 6.

By assuming control over the LLF-LTGF and marketing it as an Abacus fund while collecting management fees, Abacus has shown that it is a mere continuation of Carlisle, and therefore subject to successor liability principles. *Journey Two Enterprises, LLC v. N342AJ, LLC*, 2020 WL 9748985, at *1 (M.D. Fla. 2020) (denying a motion to dismiss where both companies had common ownership, an overlap in officers and employees, managing power over the same products, the same physical location, and intertwined websites).

---

[3] *Herman* was not decided on a motion to dismiss, but on a directed verdict.

13

**2. Investors Have Standing to Enforce Abacus's Obligations Under the PM**

Abacus's threshold merits argument, that the Investors lack standing because they are not "Unitholders" under the PM, rests on an improperly formalistic reading that is inconsistent with the allegations and with Abacus's own post-acquisition conduct. *See* Mot. at 2–3, 16–17 (arguing the Investors have "no rights" or standing because they are not Unitholders). At the pleading stage, that argument fails. First, the Investors do not allege that they are strangers to the investment structure or incidental market participants, they allege that they are the economic owners of LLF-LTGF units acquired through established banking nominees, Union Bancaire Privée and LGT Bank, and that those investments were accepted, administered, and open to liquidation by the fund manager (which is now the defendant). *See* Comp. ¶¶ 2, 38–43. The Investors further allege that they submitted multiple redemption requests, received confirmations, and ultimately received liquidation distributions calculated by reference to their shareholdings. *See* Comp. ¶¶ 46–66, 69–72. These allegations sufficiently allege the Investors' status as intended third-party beneficiaries, and directly contradict Abacus's assertion that the Investors have no enforceable interests whatsoever under the governing investment framework. *Compare* Mot. at 2–3 *with Pimentel v. Strength20, LLC*, 2024 WL 3952429, at *4 (M.D. Fla. 2024) ("Third-party beneficiary status allows a non-contracting party to enforce a contract against a contracting party.").

Second, nothing in Abacus's motion establishes as a matter of law that beneficial owners cannot invest through nominees or enforce the fund manager's core obligations concerning liquidation and disclosure. Abacus repeatedly asserts that Unitholder status is dispositive (*see* Mot. at 2–5), but points to no provision in the PM or law that extinguishes the substantive rights of beneficial owners whose investments are held through nominees. The complaint adequately

14

alleges that the Investors' investments were administered on a pro rata basis alongside other investors, that liquidation proceeds were allocated based on the Investors' holdings, and that the Investors were treated by the defendant as part of the investor class entitled to distributions during liquidation. *See* Comp. ¶¶ 59–66, 74–79. At minimum, the question of whether the PM's obligations run exclusively to record holders, or also to beneficial owners investing through nominees, is a factual one that cannot be resolved on a Rule 12(b)(6) motion.

Third, Abacus's own post-acquisition conduct confirms that the Investors were treated as entitled to substantive rights under the PM. After acquiring Carlisle, Abacus continued the liquidation process, issued monthly newsletters regarding the LLF-LTGF, responded to the Investors' written inquiries (including the April 8, 2025 inquiry), and made liquidation distributions tied to the Investors' holdings. *See* Comp. ¶¶ 4–11, 67–73. Abacus did not disclaim the Investors' entitlement to distributions or assert that they lacked standing to receive liquidation proceeds. That course of performance is irreconcilable with Abacus's litigation position that the Investors have no enforceable interests at all.

Fourth and finally, Abacus's argument improperly seeks to convert a disputed issue of contractual scope and beneficiary status into a pleading defect. The Investors allege that Abacus, as the fund manager and successor to Carlisle, assumed control over the LLF-LTGF, administered the Investors' investments, distributed liquidation proceeds, and undertook disclosure obligations owed to investors during liquidation. *See* Comp. ¶¶ 4–11, 26–35, 74–79. Those allegations are more than sufficient at the pleading stage to establish standing to pursue claims for breach of contract, breach of fiduciary duty, fraudulent concealment, and equitable relief. Whether Abacus can ultimately prevail on its narrow reading of the PM is a merits issue not for resolution on a Rule 12(b)(6) motion.

15

### 3.   The Contract Claim is Not Barred by the Statute of Frauds

Abacus invokes Florida's statute of frauds to argue that the PM is unenforceable. *See* Mot. at 17–18. That argument is a non-starter. The statute of frauds applies only to a narrow category of agreements and does not bar enforcement where, as here, the agreement has been partially performed and could be performed within one year. *See* Fla. Stat. § 725.01.

Partial performance or complete performance defeats Abacus's statute-of-frauds defense. *Maderas Del Siglo XXI-Madesi S.R.L. v. Medley Hardwood, Inc.*, 2014 WL 12605558, at *2 (S.D. Fla. 2014). The Investors allege that they made substantial investments in the LLF-LTGF, which Carlisle—and later Abacus—accepted and administered. Comp. ¶¶ 2, 38–43. The Investors further allege that they submitted formal redemption requests, which were not rejected, and that Abacus in fact proceeded to redeem the Investors' investment in part through multiple liquidation distributions. *Id.* ¶¶ 46–58, 62–66, 69–72. These allegations establish the Investors' performance, Abacus' acceptance and performance, and ongoing conduct under the PM. Such partial performance places the agreement outside the statute of frauds.

Moreover, Florida's statute of frauds applies only where an agreement is ***incapable*** of performance within one year. Fla. Stat. § 725.01. Abacus's argument also fails because the PM ***could*** be performed within one year. In September 2022, Carlisle represented that redemption restrictions would no longer be applied and that investors would be permitted to redeem their shares, triggering a liquidation process that reasonably appeared intended to proceed promptly (certainly within a year). *See* Comp. ¶ 45. That representation led the Investors to believe that liquidation and redemption would be an immediate process, not a multi-year (or indefinite) undertaking. *Id.* ¶¶ 45, 59–61. Indeed, distributions began in 2023. *Id.* ¶¶ 62–66, 69–72. Thus, performance within a year was not only possible, it was contemplated. Abacus cannot avoid this

16

result by pointing to the PM's Lock-Up Period (Mot. at 18), then ignoring the complaint's allegations that those restrictions were lifted in September 2022. *Id.* ¶ 45.

Abacus' out-of-context attempt to invoke the PM disregards the complaint's allegations, which highlight that defendant failed to perform not only by failing timely to redeem the shares, but also by refusing to provide transparency and timely execution during liquidation. *See* Comp. ¶¶ 59–61, 67–79. That alleged lack of visibility does not convert the PM into an agreement incapable of performance within one year, nor does it resurrect a statute-of-frauds defense that partial performance has already foreclosed. At this stage, Abacus's statute-of-frauds argument fails as a matter of law and cannot support dismissal.

### 4.   The Complaint Adequately Alleges all Elements of a Breach of Contract Claim

"The elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages." *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999). Abacus argues that the Investors fail to allege a breach because Sections 20, 27.2, and 2.6.6 of the PM allegedly impose no enforceable obligations. *See* Mot. at 18–20. That argument rests on a selective and impermissibly rigid reading of the PM that ignores its operative language, the complaint's allegations, and Florida law.

The Investors do not allege that defendants were required to liquidate the fund upon request. Rather, they allege that once a controlled liquidation process was initiated and proceeds were distributed, defendant failed to administer liquidation and distributions in accordance with Section 20's requirements. Comp. ¶¶ 59–66, 74–79, 88–91. Section 20 governs how liquidation proceeds "shall" be distributed once liquidation occurs. *See id.* ¶ 74. The Investors allege that liquidation was triggered, partial distributions were made, and defendant then delayed

meaningful distributions while withholding material information necessary to assess the process. *Id.* ¶¶ 59–66, 67–79. Those allegations plausibly state a breach.

Abacus next argues that Section 27.2 requires only annual reporting and no response to investor inquiries. *See* Mot. at 19. But the complaint alleges that there was a failure to disclose material information as required by Section 27.2, which not only contemplates an annual report, but also contemplates "notifi[cation] to Unitholders separately (by way of an Investor Disclosure," which the complaint alleges occurred periodically outside any annual report and which contained vague information regarding the liquidation process. *See* Comp. ¶¶ 67–73, 76–79, Ex. A at 59. Whether defendants' vague communications satisfied that obligation is a factual issue not resolvable on a motion to dismiss.

Abacus's reliance on Section 2.6.6's grant of discretion fares no better. Mot. at 19. The Investors allege that, as of September 2022, Section 2.6.6 no longer applied and the Investors were informed that redemption restrictions would no longer be enforced. *See* Comp. ¶ 45. Having represented that redemptions would proceed and having initiated liquidation, Abacus cannot rely on a discretionary provision it *suspended* to defeat the Investors' claim. More broadly, the complaint does not allege breach based on a single denied redemption, but on a sustained course of conduct in which Abacus accepted redemption requests, initiated liquidation, made partial distributions, and then stalled the process while retaining the Investors' funds and withholding material information. *See* Comp. ¶¶ 46–66, 67–79, 88–93. Abacus's argument ultimately asks the Court to resolve disputed issues of contract interpretation and performance on a Rule 12(b)(6) motion. The complaint's allegations are enough to proceed.

18

### B.  The Complaint Adequately Alleges a Claim for Breach of Fiduciary Duty

Defendant argues that the complaint failed to state a claim for breach of fiduciary duty because defendant owes no fiduciary duty to the Investors, and the complaint purportedly fails to allege either an express or implied duty. Mot. at 20. Both arguments demonstrate defendant's blinding lack of self-awareness regarding its responsibilities to the Investors and its duties as the LLF-LTGF fund manager. Neither theory passes muster.

First, under the PM, Abacus, as the ultimate LLF-LGF fund manager through Carlisle, is responsible "for portfolio management and risk management functions" and "manages the assets of the Fund and its Sub-Funds in compliance with the Management Regulations in its own name, but for the sole benefit of the Unitholders." Comp. ¶¶ 34, 44, 94, Exhibit A at 19. Despite what defendant argues, it—like any party so disposed—was "under a duty to act for or to give advice for the benefit of [the Investors] upon matters within the scope of [the] relation." *Doe v. Evans*, 814 So. 2d 370, 374 (Fla. 2002). The complaint alleges that Abacus expressly "acted for and gave advice" to the Investors. *Id*. ¶¶ 8, 13, 67–69, 72. Further, as previously explained, defendant's argument that the Investors are not Unitholders as defined in the PM is without merit. The Investors are the parties that invested in the LLF-LTGF and the ultimate beneficiaries; whatever distinction without a difference defendant attempts to make is unavailing.

Second, the complaint also alleges facts to establish an implied fiduciary duty relationship between the parties. "Implied fiduciary relationships 'are premised upon the specific factual situation surrounding the transaction and the relationship of the parties' and exist where 'confidence is reposed by one party and a trust accepted by the other.'" *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009). Here, the Investors placed their trust in defendant by making an investment of over $12.5 million in the LLF-LTGF, with

19

the belief that it would make strategic manage its portfolio and return a gain, and defendant accepted that trust by retaining the investment. Comp. ¶¶ 2, 22–24, 34, 38–43. The Investors depended on defendant to "advise, counsel and protect"[4] them and their investment, something it has not done despite the Investors' repeated requests for information and full redemption of its investment. *Id*. ¶¶ 77–79. The complaint adequately alleges both an express and implied fiduciary relationship.

### C.  The Complaint Adequately Alleges a Claim for Unjust Enrichment

The Investors' unjust enrichment claim is properly pled as an alternative theory of recovery. Rule 8(d) allows pleading in the alternative, even if the theories are inconsistent. It would be premature to dismiss Count III simply because of the existence of the PM, especially in light of defendants' own inconsistent theory that the Investors are not entitled to relief and have no rights under the PM.[5] *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F. Supp. 2d 1354, 1366 (S.D. Fla. 2009) ("Although Plaintiff has alleged a breach of contract claim which I have concluded can proceed, it would be premature to dismiss Plaintiff's count for unjust enrichment in this case.").

Further, the complaint sufficiently alleges Abacus' enrichment by detailing how Abacus acquired Carlisle and now benefits from the management fees generated by the Investors' investments. Comp. ¶¶ 4, 33, 97, 99–101, 105. The complaint specifically alleges that Abacus has refused to return Investors' $12.5 million investment while continuing to collect fees on

---

[4] *Bruhl v. PricewaterhouseCoopers Int'l*, 2008 WL 899250, at *2 (S.D. Fla. 2008).

[5] In the same paragraph Abacus argues that "even assuming no valid contract exists" . . . the PM shows that Carlisle, not Abacus receives . . . fees[.]" Mot. at 22. Setting aside Abacus' conflicting argument and the sufficiency of the allegations as briefed here, it is important to note that the PM pre-dates Abacus' acquisition of Carlisle and would not reflect the post-acquisition fee flow. Comp. ¶¶ 33, 105.

those assets. *Id*. ¶¶ 12, 56, 59, 61, 72. This retention without providing the promised redemption constitutes textbook unjust enrichment, particularly since Abacus now owns and controls the entity collecting those fees. *Id*. ¶¶ 33, 105. Moreover, whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss. *See Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether the [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case."). The complaint adequately pleads unjust enrichment as an alternative theory of recovery.

### D. The Complaint Adequately Alleges a Claim for Fraudulent Concealment or Misrepresentation

The complaint contains more than sufficient particularity to support the fraudulent concealment and misrepresentation claims. It identifies specific misrepresentations and omissions regarding the status of the Investors' investments and redemption requests, it details how Carlisle, now operating under Abacus' control, announced a controlled liquidation process with distributions to investors while simultaneously refusing to provide information about when or if the Investors would receive their funds. Comp. ¶¶ 12–13, 61, 67–73. The timing of these misrepresentations is specified as occurring after redemption requests were submitted between 2020-2022. *Id*. ¶¶ 46–50, 52–55, 57–58. As the acquiring company now controlling Carlisle, Abacus had a duty to disclose material information about the status of investments and redemption requests, particularly after assuming control of operations and continuing to communicate with investors under its name.

Abacus' argument that the complaint "offer[s] only generic allegations" that do not satisfy Rule 9(b) (Mot. at 23) is contradicted by the allegations of "who, what, when, where, and how" contained in the complaint. *Omnipol, A.S. v. Multinational Def. Services, LLC*, 32 F.4th

21

1298, 1307 (11th Cir. 2022). Investors allege that the relevant misrepresentations and omissions were made by Carlisle in its capacity as fund manager, and, following the 2024 acquisition, by Abacus as Carlisle's successor and controlling parent (which Abacus knowingly ratified and continued). *See* Comp. ¶¶ 3–11, 26–35, 104–105. The complaint also does more than present generalized grievances, it identifies specific categories of concealed or misrepresented information and the dates of those communications, including the true status of redemption requests, the anticipated timeline for liquidation and distributions, the reserves and liabilities preventing distributions, and the mechanics governing allocation of liquidation proceeds. *See id*. ¶¶ 45–61, 67–79, 104(a)–(e), 105(a)–(e). Further, the complaint alleges that Abacus' concealment operated by selectively invoking provisions of the PM to justify delays and withheld distributions while omitting material facts necessary for the Investors to understand the liquidation process and protect their investment. *See id*. ¶¶ 61, 74–79, 104–110. The Investors allege that this concealment induced them to refrain from taking earlier protective action and deprived them of the ability to assess the status and value of their investment. *See id*. ¶¶ 107–112.

Further, Rule 9(b)'s pleading standard may be relaxed where, as here, evidence of the fraud is exclusively within the defendant's possession. *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002). The status of liquidation, the true financial condition of the fund, the existence and magnitude of liabilities, the basis and timing for distributions, and NAV methodologies and policy-sale processes are all facts that are in sole possession of defendant.[6] Lastly, once defendant chose to communicate with the Investors, issuing letters, updates, and newsletters, they were obligated not to omit material information

---

[6] And are all subjects of recently served discovery demands.

necessary to render those communications truthful. The complaint allege that defendant: (1) vaguely represented progress, liquidity, and forthcoming distributions while withholding contradictory or qualifying information; and (2) continued such omissions after acquiring Carlisle, which supports an inference of knowledge and intent. Comp. ¶¶ 5, 8, 12–13, 32–33, 59–62, 67–68, 72–73. These allegations satisfy each element of fraudulent concealment and misrepresentation.[7]

### E.  The Complaint Adequately Alleges a Claim Under FDUTPA

The Investors' FDUTPA claim is properly alleged because the statute protects against unfair practices by Florida-based businesses regardless of where victims are located. The complaint alleges that Abacus is headquartered in Florida, that post-acquisition it exercised control over the LLF-LTGF and managed the liquidation process from Florida, and communicated with investors from Florida. *See* Comp. ¶¶ 4–11, 17, 26–34. The Investors further allege that Abacus, from Florida, sent monthly newsletters, responded to the Investors' written inquiries, and concealed material information regarding liquidation timelines, reserves, and allocation mechanics while continuing to administer and benefit from the fund. *See id*. ¶¶ 67–73, 76–79, 104–110. Courts have held that FDUTPA applies when the deceptive conduct originates in Florida, even if the injured parties are non-residents. *Millennium Communications & Fulfillment, Inc. v. Office of Attorney Gen., Dept. of Legal Affairs, State of Fla.*, 761 So. 2d 1256, 1260–61 (Fla. 3d DCA 2000) ("FDUTPA does have applicability to the commercial transactions between Florida corporations and non-resident consumers."). Taking these allegations as a whole, Abacus' reliance on *Amar Shakti Enters., LLC v. Wyndham Worldwide, Inc.*, 2011 WL

---

[7] At most, Abacus again disputes the truth or materiality of the alleged omissions, not the sufficiency of Investors' pleading. Such disputes are not appropriately resolved on a motion to dismiss.

3687855, at *3 (M.D. Fla. 2011) is misguided (Mot. at 25), because that case involved no defendants with a principal place of business or incorporated in Florida (like Abacus), but rather New Jersey, Delaware, and South Dakota.

Defendant improperly tries to convert a choice-of-law provision into a waiver of statutory rights. FDUPTA claims are not displaced unless expressly waived, which the Investors did not do. Abacus' argument that the PM's choice of law provision defeats FDUTPA (Mot. at 24) is further compromised by its own stance that it is not bound by the PM. Mot. at 14. Moreover, statutory consumer protection claims often survive contractual choice of law provisions as a matter of public policy. *See Mgmt. Computer Controls, Inc. v. Charles Perry Const., Inc.*, 743 So. 2d 627, 632 (Fla. 1st DCA 1999) (holding that the venue clause could not be applied to the FDUTPA claim because "[t]he use of the venue clause as a defense to the statutory claim in this case would undermine the effectiveness of the statute"). The complaint adequately alleges a claim under FDUTPA.

### F. The Complaint Adequately Alleges a Claim for Accounting

Here again Abacus attempts to use the PM as a shield that bars the requested relief, while having earlier disavowed any connection or duty tied to it. Mot. at 25. Florida courts recognize accounting as an independent cause of action when a plaintiff alleges the existence of a fiduciary relationship and complex financial transactions requiring forensic examination. *See Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir. 1990) ("Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate."). Here, the complaint alleges both.

24

First, as explained in section II(B) above, the Investors have adequately alleged the existence of a fiduciary relationship. Further, the liquidation of a life-settlements fund is an inherently complex financial transaction, squarely meeting the standard for equitable accounting. Comp. ¶¶ 56, 59–62, 67–69, 72–73 (allegations related to the liquidation process spanning a 3-year period). The information regarding NAV calculations, sale prices of polices, distribution reserves, outstanding liabilities, premium obligations, payment histories, and liquidation assets and expenses is held solely by defendant and has never been fully disclosed to the Investors. *See id.* Accounting is properly and adequately pled.

## **CONCLUSION**

For all these good and sufficient reasons, the Court should deny defendant's motion to dismiss the Amended Complaint.

Date: February 9, 2026

Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Ritz Investment Limited and Season Limited*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: */s/ Robert J. Kuntz Jr.*
ANDRÉS RIVERO
Fla. Bar No. 613819
arivero@riveromestre.com
ROBERT J. KUNTZ JR.
Fla. Bar No. 94668
rkuntz@riveromestre.com
SYLMARIE TRUJILLO
Fla. Bar No. 112768
strujillo@riveromestre.com
HUGO A. MONTERO
Fla. Bar No. 1039275
hmontero@riveromestre.com

25

## **CERTIFICATE OF SERVICE**

I certify that on February 9, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: */s/ Robert J. Kuntz Jr.*
ROBERT J. KUNTZ JR.