UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RITZ INVESTMENT LIMITED and
SEASON LIMITED,

     Plaintiffs,

v.                                          Case No: 6:25-cv-2047-JSS-RMN

ABACUS GLOBAL
MANAGEMENT, INC.,

     Defendant.
_____/

## **ORDER**

Defendant moves to dismiss the amended complaint (Dkt. 14) without prejudice based on forum non conveniens or, alternatively, with prejudice based on failure to state a claim and futility of amendment. (Dkt. 26.) Plaintiffs oppose the motion. (Dkt. 30.) Upon consideration, for the reasons outlined below, the court grants the motion in part and denies it in part.

## **BACKGROUND**[1]

Plaintiffs are "private limited compan[ies] with . . . registered address[es]" in Gibraltar, on the European continent. (Dkt. 14 ¶¶ 15–16.) Defendant is a publicly traded corporation organized under Delaware law and headquartered in Orlando, Florida. (*Id.* ¶ 17.) Plaintiffs claim that in 2024, Defendant acquired Carlisle

---

[1] The court credits the well-pleaded factual allegations in the amended complaint (Dkt. 14), as well as the contract attached thereto (Dkt. 14-1), and construes the allegations in the light most favorable to Plaintiffs. *See Harry v. Marchant*, 291 F.3d 767, 769 (11th Cir. 2002) (en banc).

Management Company S.C.A., a "Luxembourg-registered company . . . with offices" in Luxembourg, Europe. (*Id.* ¶¶ 3–4.) According to Plaintiffs, Defendant "exercises complete control over Carlisle's operations" as "Carlisle's sole shareholder." (*Id.* ¶ 4.) Plaintiffs refer to Carlisle as "an alternative fund investment manager." (*Id.* ¶ 3.)

This action arises from Plaintiffs' investments in a fund managed by Carlisle and allegedly, since the 2024 acquisition, by Defendant through Carlisle. (*Id.* ¶¶ 1–4, 7, 25.) The fund is named the Luxembourg Life Fund - Long Term Growth Fund (LLF-LTGF). (*Id.* ¶ 1.) Plaintiffs describe the fund:

> The LLF-LTGF is a specialized investment fund that focuses on the purchase of life settlements, in other words, the purchase of life insurance policies in the secondary and tertiary markets at a discount. The LLF-LTGF buys life insurance policies that are beyond the contestability period (meaning the insurer cannot easily deny claims). The life insurance policies are purchased from the secondary market (original policyholders selling their policies) and the tertiary market (resales of previously settled policies). The LLF-LTGF uses a buy-and-hold strategy, holding most policies until maturity to realize the death benefit.

(*Id.* ¶¶ 21–24.) Plaintiffs and other investors in the fund reportedly receive general information about the fund's performance—but not about the distribution of liquidation proceeds—from Defendant through monthly newsletters sent from Florida. (*Id.* ¶¶ 8, 29, 67.) In general, Plaintiffs complain that Defendant has inadequately informed them about the distribution of liquidation proceeds as they have awaited the redemption of their investments in the fund. (*See id.* ¶¶ 76–79.) The fund is governed by a document titled Placement Memorandum, which Plaintiffs assert is a contract. (*Id.* ¶ 44; *see* Dkt. 14-1 at 2.) The court does not discern any signatures on the contract, (*see* Dkt. 14-1), other than what appear to be the initials of

a Luxembourg financial official, (*see id.* at 2).  Plaintiffs do not claim to be parties to the contract but rather "direct and third-party beneficiaries . . . by virtue of their purchase of shares" in the fund.  (Dkt. 14 ¶ 43.)

Plaintiffs purchased shares in the fund in 2016, 2018, and 2019; in total, Plaintiffs invested over $12.5 million in the fund.  (*See id.* ¶¶ 38–39, 41–42.)  When purchasing the shares, Plaintiffs purportedly relied on Defendant's online description of the fund as an open-end mutual fund.  (*See id.* ¶¶ 35–37.)  Plaintiffs emphasize three distinguishing features of such funds:

> They continuously issue and redeem shares[.]  The shares are bought and sold at the net asset value ([NAV]), which is calculated at the end of each trading day based on the total value of the fund's assets minus liabilities, divided by the number of outstanding shares[.]  They typically hold a diversified mix of assets.

(*Id.* ¶ 36.)  According to the amended complaint, Plaintiffs began requesting the redemption of their shares in the fund in September 2020 and made additional redemption requests in October 2020.  (*See id.* ¶¶ 46–51.)  Plaintiffs state that when they requested redemption of their investments, "the NAV was calculated at $359.18," indicating that the investments to be redeemed were worth at least $16.5 million.  (*Id.* ¶ 52.)  Plaintiffs submitted additional redemption requests in 2022.  (*Id.* ¶¶ 53–58.)  Allegedly, the contract governing the fund restricted the redemption of shares, but in September 2022, Carlisle announced to investors that it would stop applying the restrictions and would "allow investors to redeem their shares upon request for redemption with a NAV dated March 31, 2022." (*Id.* ¶ 45.)  Plaintiffs claim that "[o]n March 30, 2023, Carlisle informed [them] that after the September 2022

announcement, investors representing 85% of the [fund's] assets decided to redeem their shares" such that Carlisle "would enter into a controlled liquidation process of the fund." (*Id.* ¶ 59.) Plaintiffs report that the "liquidation process is complex due to the nature of the investments, the fact that 85% of investors sought to redeem their shares at the same time, and the illiquidity of the fund." (*Id.* at 18.) In total, across three distributions, Plaintiffs have thus far received approximately $404,000. (*See id.* ¶¶ 63–66, 70–71.) Plaintiffs claim that the value of their investments, minus these distributions, still exceeds $16 million. (*Id.* ¶ 102.)

As the fund's name suggests, it focuses on long-term investment. (*Id.* ¶ 1; *see* Dkt. 14-1.) The contract governing the fund reflects the long-term nature of the investment in provisions that describe the term as "[p]erpetual and open-ended," (Dkt. 14-1 at 16), speak of "unlimited duration[s]," (*id.* at 23, 42, 80, 92, 103), state that "[u]nits redeemed in the *early years* from acquisition will be subject to redemption charges," (*id.* at 29 (emphasis added)), and require initial expenses to "be allocated equally throughout *the first financial year*," (*id.* at 41 (emphasis added)). The contract also provides that "[d]istributions not claimed *within five years* from their due date will elapse," (*id.* at 42 (emphasis added)), discusses yearly taxing, auditing, and reporting obligations, (*id.* at 52–53, 55–56, 60), and contemplates retaining investors' personal data for ten years or longer, (*id.* at 59). The contract contemplates that Carlisle will manage the fund's asserts "for the sole benefit of" the fund's registered investors, (*id.* at 20), and to that end, the contract grants "sole discretion" to Carlisle in various

matters related to the fund, including the redemption of investments, (*id.* at 3, 14, 33, 36, 47, 71, 75, 77, 98).  Regarding governing law and forum selection, the contract states: "This contractual relationship is governed by Luxembourg [l]aw.  The [f]und, [Carlisle,] and [registered investors] will be subject to the exclusive jurisdiction of the courts of Luxembourg[ ]City to settle any dispute . . . arising out of or in connection with a [registered investor]'s investment in the [f]und or any related matter."  (*Id.* at 44.)

The amended complaint references sections 20 and 27.2 of the contract.  (Dkt. 14 ¶¶ 74–75, 88–91.)  Section 20 addresses the duration and liquidation of the fund and provides:

> The Depository [a designated Luxembourg bank] shall share any liquidation revenue for each [c]lass within the [f]und minus liquidation expenses and fees among the [registered investors] of the relevant [c]lass in the [f]und in proportion to their holding of such [u]nits in such [c]lass, as instructed by [Carlisle] or by any liquidators that may have been appointed by [Carlisle] or the Depository in agreement with the supervisory authorities.

(Dkt. 14-1 at 42–43.)  Section 27.2 imposes periodic reporting and disclosure requirements on Carlisle.  (*Id.* at 60–61.)  The section states that Carlisle "will publish an [a]nnual [r]eport within six months as from the end of each financial year" and the report "will include, inter alia, audited financial statements, a description of the assets of the [f]und, a report from the [a]uditor, a calculation of the value of the assets of the [f]und as per the financial year end and, where applicable," additional information delineated by the contract.  (*Id.* at 60.)  Considering the additional information set out in section 27.2, Plaintiffs summarize the section as requiring investor disclosures about

"material changes in the fund's operations, special arrangements for the fund's assets, liquidity management, risk profile, and leverage." (Dkt. 14 ¶ 75; *see* Dkt. 14-1 at 60–61.)

Plaintiffs assert that since September 21, 2020, they have been unsuccessful in their attempts to redeem their investments from Defendant. (Dkt. 14 ¶ 12.) Plaintiffs further state: "On April 8, 2025, [they] sent [Defendant] a written inquiry seeking information on [Defendant's] plan to redeem their [investments]. No meaningful redemption plan was received in response." (*Id.* ¶ 13.) Given the alleged deficiencies in Defendant's distribution of Plaintiffs' investments and in Defendant's communication to Plaintiffs about the liquidation process, Plaintiffs initiated this case in October 2025 bringing six counts against Defendant and Carlisle: breach of contract (count one), breach of fiduciary duties (count two), unjust enrichment (count three), fraudulent concealment and fraudulent misrepresentation (count four), violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Fla. Stat. §§ 501.201–213 (count five), and accounting (count six). (Dkt. 1.) Shortly after the initial complaint was filed, the court issued an order to show cause explaining that Plaintiffs' allegations of "two foreign citizens on one side" of this action—i.e., Plaintiffs—and "one domestic citizen and one foreign citizen on the other side"—i.e., Defendant and Carlisle—"d[id] not support [the] diversity jurisdiction" asserted as the basis for the court's subject matter jurisdiction in this case. (Dkt. 9.) *See Caron v. NCL (Bah.), Ltd.*, 910 F.3d 1359, 1364 (11th Cir. 2018) ("[A noncitizen] on both sides of a dispute will defeat jurisdiction."); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1340

- 6 -

(11th Cir. 2011) ("[Diversity] jurisdiction prohibits [a noncitizen] from suing another [noncitizen] in federal court unless the suit includes United States citizens as plaintiffs and defendants[.]"); *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000) ("[F]ederal courts do not have diversity jurisdiction over cases where there are foreign entities on both sides of the action, without the presence of citizens of a state on both sides.").

In response to the order to show cause, Plaintiffs submitted an amended complaint. (Dkt. 14.) The amended complaint drops Carlisle as a party to this action to address the jurisdictional issue raised by the court but otherwise asserts substantially the same allegations and asserts the same six counts as the initial complaint. (*See id.*) The amended complaint alleges an agency relationship between Defendant and Carlisle, (*id.* ¶¶ 7, 26), as well as fiduciary relationships between Defendant and Plaintiffs, (*see id.* at 13–14, 18). It also frequently refers to Plaintiffs collectively as "the Investors," (*e.g.*, *id.* at 1, 3, 10), including when pleading Plaintiffs' reliance on Defendant's purportedly fraudulent misrepresentations and omissions, (*id.* ¶¶ 35–37 ("Relying on [Defendant's categorization of the fund as an open-end mutual fund], the Investors made several purchases of [shares in the fund] as described below."); *id.* ¶¶ 111 ("The Investors detrimentally relied on [Defendant's] misrepresentations regarding liquidation proceedings and requests for information, and invested in the [fund].")). Each count in the amended complaint incorporates by reference all paragraphs that appear prior to the counts in the pleading—paragraphs describing the nature of the action, the parties, jurisdiction and venue, and factual allegations about

the purchase of Plaintiffs' investments and Plaintiffs' requests for redemption of the investments. (*See id. passim.*)  Through each of the first five counts, Plaintiffs request monetary damages including legal fees, and through count six, they request the equitable remedy of an accounting concerning all information related to their investments. (*See id.* at 12–19.)  The contract at issue in this action is attached to the amended complaint. (Dkt. 14-1.)

## APPLICABLE STANDARDS

"Procedurally, 'the appropriate way to enforce a forum[ ]selection clause pointing to a . . . foreign forum is through the doctrine of forum non conveniens.'" *AQuate II LLC v. Myers*, 100 F.4th 1316, 1322 (11th Cir. 2024) (alterations added) (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013)).  When deciding a motion to dismiss based on forum non conveniens, the court "accept[s] as true the factual allegations in the complaint to the extent [that] they are uncontroverted by affidavits or other evidence, or have not been challenged in the context of an evidentiary hearing," and the court "draw[s] all reasonable inferences in favor of the plaintiffs." *Otto Candies, LLC v. Citigroup, Inc.*, 963 F.3d 1331, 1336 (11th Cir. 2020); *accord Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1083 (11th Cir. 2024).  In general, the "forum non conveniens determination is committed to the [court's] sound discretion." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).  However, the enforceability of a forum selection clause is an issue of law for which no deference is accorded.  *Cleveland v. Kerzner Int'l Resorts, Inc.*, 657 F. App'x 924, 925

(11th Cir. 2016); *see Usme*, 106 F.4th at 1085 ("[P]lenary review governs the enforcement of a forum selection clause . . . .").

In deciding a motion to dismiss for failure to state a claim, the court "accept[s] the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff[s]." *Henley v. Payne*, 945 F.3d 1320, 1326 (11th Cir. 2019). Typically, a court analyzing a motion to dismiss considers only the four corners of the complaint and the exhibits attached to the complaint. *See Turner v. Williams*, 65 F.4th 564, 583 n.27 (11th Cir. 2023). To survive a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiffs plead facts that allow the court to "draw the reasonable inference that the defendant is liable" for the alleged misconduct. *Id.* While "detailed factual allegations" are not generally required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

Moreover, a claim sounding in fraud "must state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). To meet this particularity requirement, the claim must set forth "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the

[p]laintiffs; and (4) what the defendant[] gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th Cir. 1997). In other words, the claim must provide "the who, what, when[,] where, and how" of the alleged fraudulent activities. *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (quoting *Gross v. Medaphis Corp.*, 977 F. Supp. 1463, 1470 (N.D. Ga. 1997)).

## ANALYSIS

The parties agree—and review of the contract confirms—that although the contract applies to Carlisle and concerns the management of the fund, Plaintiffs and Defendant are not parties to the contract. (Dkt. 26 at 2–6, 10, 16–18; Dkt. 30 at 11, 16–19, 23–24; *see* Dkt. 14-1.) Nonetheless, Defendant seeks to enforce the contract's forum selection and governing law clauses against Plaintiffs, (Dkt. 26 at 8–15), and Plaintiffs assert contractual rights as intended third-party beneficiaries while contending that Defendant breached contractual obligations derived through Carlisle, (Dkt. 14 ¶¶ 26–33, 43, 105; Dkt. 30 at 7–10, 16–21, 28). In making its primary, forum-related argument for dismissal, Defendant asserts the validity of the contract. (Dkt. 26 at 9–12.) However, as part of its alternative argument that each count fails to state a claim, Defendant maintains that Plaintiffs do not have rights and Defendant does not have obligations under the contract, (*id.* at 15–18), and that the contract is "unenforceable as a matter of law" for violating Florida's statute of frauds, (*id.* at 18–19). The court first examines whether dismissal is warranted under the doctrine of forum non conveniens. The court then considers each count in turn to determine whether Plaintiffs state claims for relief. The court concludes by addressing leave to

amend.

### A. Forum Non Conveniens

When a forum selection clause does not apply, the court conducts the typical forum non conveniens analysis, which requires the court to "give some weight to the plaintiffs' choice of forum" and to evaluate private and public interests. *Atl. Marine*, 571 U.S. at 62–63 & n.6. In contrast, when a forum selection clause applies, the court conducts a modified analysis that gives no weight to the plaintiffs' choice of forum and no consideration to private interests. *Id.* at 63–64. Thus, when confronted with a forum non conveniens motion involving a forum selection clause, the court must begin by determining whether the clause applies. *See AQuate*, 100 F.4th at 1324. "A forum selection clause . . . is a contractual provision that cannot ordinarily be invoked by or against one who was not a party to the agreement in which the clause appears." *Usme*, 106 F.4th at 1087. (*See* Dkt. 30 at 11 (Plaintiff's argument for application of this general rule).) Because Plaintiffs and Defendant are non-parties to the contract, (Dkt. 26 at 2 ("[N]either [Defendant] nor Plaintiffs are parties to the [contract.]"); Dkt. 30 at 11 ("Neither [Plaintiffs] nor [D]efendant are parties to the [contract.]" (emphasis omitted)); *see* Dkt. 14-1), the contract's forum selection clause cannot be invoked by Defendant or against Plaintiffs under this general rule. *See Usme*, 106 F.4th at 1087.

Binding a non-party to a contractual clause is possible but requires foreseeability: that is, the non-party should be in a position to foresee that it may be bound by the clause. *See Lipcon v. Underwriters at Lloyd's*, 148 F.3d 1285, 1299 (11th

- 11 -

Cir. 1998); *Todd Benjamin Int'l, Ltd. v. Grant Thornton Int'l, Ltd.*, 682 F. Supp. 3d 1112, 1130–31 (S.D. Fla. 2023).   Exceptions to the general rule that comport with this principle include "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver[,] and estoppel."  *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quotation omitted).  In its motion, Defendant neither addresses foreseeability nor invokes any of these exceptions against Plaintiffs with respect to the contract, and thus, the court implements the general rule.  (*See* Dkt. 26.)  *See Greenlaw v. United States*, 554 U.S. 237, 244 (2008) (explaining that parties "are responsible for advancing the facts and arguments entitling them to relief" (quotation omitted)); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("It is not for the court to manufacture arguments on [a party]'s behalf.").   In any event, the court would look to state law to decide whether an exception exists under the circumstances of this case, *see Usme*, 106 F.4th at 1087 (citing *Arthur Andersen*, 556 U.S. at 631), and Florida law provides: "[T]he third-party beneficiary doctrine enables a non-contracting party to enforce a contract against a contracting party—not the other way around," *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016); *see Alonso-Roth v. Magical Cruise Co.*, No. 6:23-cv-1710-RBD-EJK, 2024 WL 6881765, at *3, 2024 U.S. Dist. LEXIS 102763, at *8 (M.D. Fla. June 10, 2024) ("[C]ontracting parties cannot impute obligations onto third-party beneficiaries without their consent." (citing *Mendez*, 203 So. 3d at 149)).  Plaintiffs assert contractual rights under an intended third-party beneficiary theory,

(Dkt. 14 ¶ 43; Dkt. 30 at 20), so under state law, Defendant cannot enforce the contract against them without their consent, *see Mendez*, 203 So. 3d at 149.  For these reasons, the forum selection clause does not apply, and the court conducts the typical forum non conveniens analysis.

Further support for this outcome lies in Plaintiffs' position that enforcing the forum selection clause against them would unfairly deprive them of both their day in court and a remedy as to Defendant's misconduct.  (Dkt. 30 at 11–12.)  *See Turner v. Costa Crociere S.P.A.*, 9 F.4th 1341, 1345 (11th Cir. 2021) ("Forum selection clauses are presumptively valid and enforceable unless the plaintiff makes a strong showing that enforcement would be unfair or unreasonable under the circumstances.  A plaintiff can defeat this presumption by showing that (1) the clause was induced by fraud or overreaching[,] (2) the plaintiff would be deprived of its day in court because of inconvenience or unfairness[,] (3) the chosen law would deprive the plaintiff of a remedy[,] or (4) enforcement of the clause would contravene public policy." (quotations omitted)).  On this subject, Defendant claims, as to lawsuits generally, that "courts have routinely recognized that litigants will not be deprived of a remedy in Luxembourg," (Dkt. 26 at 10–11 (collecting cases); *see also id.* at 11 n.4), and as to this lawsuit specifically, that this court "may dismiss the suit and retain jurisdiction" if the court "has concerns over whether Luxembourg would entertain jurisdiction over this case," (*id.* at 11–12).  Defendant does not claim, however, that Luxembourg would exercise jurisdiction over this case, (*see id.* at 10–12), and Plaintiff persuasively argues that Luxembourg would not, (Dkt. 30 at 11–12).

- 13 -

Luxembourg law provides that Luxembourg courts may exercise jurisdiction over a commercial company when the company maintains its registered office there or operates a branch or agency in Luxembourg if the dispute arose within the branch or agency's area of activity.  Nouveau Code de procédure civile [New Code of Civil Procedure] art. 41 (Lux.).  Although Plaintiffs plead that Carlisle has a registered office in Luxembourg, (Dkt. 14 ¶ 3), they also allege that Defendant—a business entity distinct from Carlisle—is "a Delaware-registered corporation" headquartered in Orlando, Florida, (*id.* ¶ 17).  Defendant emphasizes Carlisle's "continue[d] . . . exist[ence] as an independent legal entity organized under the laws of Luxembourg."  (Dkt. 26 at 16.)  The amended complaint is silent as to whether Defendant, as opposed to Carlisle, maintains a registered office in Luxembourg or operates a branch or agency there within the meaning of Luxembourg law, (*see* Dkt. 14), but Plaintiffs represent in their response that Defendant does not, (Dkt. 30 at 12 ("Under Article 41 . . . , a civil or commercial company may be sued in Luxembourg only when it has its registered office there, or where it maintains a branch or agency with authority to deal with third parties and the dispute arises from the activities of that branch or agency.  [Defendant] satisfies none of these conditions[,] and its motion is devoid of any assurance that it would submit to the jurisdiction of the Luxembourg courts." (footnote omitted))).  As Defendant does not appear to be subject to the jurisdiction of Luxembourg courts, Plaintiffs have established that enforcing the forum selection clause would deprive them of their day in court and their remedy with respect to their claims against Defendant.  *See Lineworks Eng'g, LLC v. Aerial Surveying, Inc.*,

- 14 -

No. 2:14-cv-2018-HGD, 2015 WL 5559797, at \*6 (N.D. Ala. Sept. 18, 2015) ("In *MacPhail* [*v. Oceaneering Int'l, Inc.*, 170 F. Supp. 2d 718 (S.D. Tex. 2001)], the district court held a forum selection clause to be unenforceable . . . because the chosen forum would likely not exercise jurisdiction, depriving the plaintiff of his day in court[.]"). Thus, even if the clause applied, the court would not enforce it and would conduct the typical forum non conveniens analysis.

"Normally, to obtain a forum non conveniens dismissal, the moving party must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *Turner*, 9 F.4th at 1347 (quotation omitted). The court addresses the first and third requirements before turning to the private and public factors. Concerning the first requirement, Defendant contends that in general, Luxembourg is an adequate alternative forum. (*See* Dkt. 26 at 10–11 & n.4.) However, Defendant does not indicate that Luxembourg is available as an adequate alternative forum to Plaintiffs for their claims against Defendant or that Luxembourg offers at least some relief to Plaintiffs. (*See id.*) Dismissal on forum non conveniens grounds is therefore improper. *See Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001) ("A defendant . . . bears the burden of proving the adequacy of the alternative forum. . . . Courts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief." (quotation omitted)); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir. 2001) (explaining that a forum is available "when the defendant is amenable to process" in

- 15 -

the forum (quotation omitted)).  Concerning the third requirement, Defendant does not demonstrate that Plaintiffs can reinstate their suit in Luxembourg without undue inconvenience or prejudice.  (*See* Dkt. 26 at 10.)  Defendant maintains that "there is no inconvenience or unfairness in requiring Plaintiffs to proceed in Luxembourg" because Plaintiffs sue under a contract that contemplates litigation in Luxembourg and because "Plaintiffs reside in Gibraltar," which "is much closer to Luxembourg than to Orlando," Florida.  (*Id.*)  Nonetheless, Defendant does not establish that Plaintiffs can reinstate their suit against it in Luxembourg.  (*See* Dkt. 30 at 13 ("Because [D]efendant cannot be compelled to appear in a Luxembourg court, Luxembourg cannot constitute an available forum as a matter of law.  Defendant merely seeks to evade suit altogether.").)  Dismissal is improper on this basis, as well.

Moreover, on balance, the private and public factors counsel against dismissal. Private factors in the forum non conveniens analysis include the "relative ease of access to sources of proof," the "availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses," the "possibility of view of premises, if view would be appropriate to the action," and "all other practical problems that make trial of a case easy, expeditious[,] and inexpensive." *Atl. Marine*, 571 U.S. at 62 n.6 (quoting *Piper*, 454 U.S. at 241 n.6).  "The court must also give some weight to the plaintiff['s] choice of forum." *Id.*  In fact, "there is normally a strong presumption that the plaintiff has chosen a sufficiently convenient forum, and defendants in such cases are required to prove vexation and oppressiveness that are out of all proportion to the plaintiff's convenience." *Leon*, 251 F.3d at 1314–15

(quotation omitted). This presumption "weakens when," as here, "the plaintiff is a foreigner litigating far from home." *Id.* at 1315 (quotation omitted). Public factors for consideration include the "administrative difficulties flowing from court congestion," the "interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action," the "avoidance of unnecessary problems in conflict of laws, or in the application of foreign law," the "local interest in having localized controversies decided at home," and the "unfairness of burdening citizens in an unrelated forum with jury duty." *Piper*, 454 U.S. at 241 n.6 (quotation omitted).

In this case, Defendant largely disregards the private factors but states—without otherwise discussing any evidence—that "all relevant evidence is in Luxembourg." (Dkt. 26 at 15; *see id.* at 13–15.) Plaintiffs respond that Defendant, a company headquartered in Florida, has "exercise[d] complete control over Carlisle's operations" since 2024, and thus, witnesses and evidence, including Defendant's business records and its communications with third parties, are located in Florida. (Dkt. 30 at 14.) Plaintiffs further assert that by failing to address the private factors in its motion, Defendant has forfeited any argument as to the factors. (*Id.*) The court agrees with Plaintiffs that the private factors do not favor dismissal. "Perhaps the most important private interest of the litigants is access to evidence," *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003) (quotation omitted), and the court cannot accept Defendant's unsupported assertion that all relevant evidence is in Luxembourg when Defendant is headquartered in Orlando, Florida. To the extent that relevant documentary evidence is located in Luxembourg with Carlisle and not in Florida with

Defendant, "the burden of producing those documents—in today's electronic age—is minimal." *Ingram v. Pfizer, Inc.*, No. 6:10-cv-0459-Orl-GAP-GJK, 2010 WL 11626801, at *2, 2010 U.S. Dist. LEXIS 153973, at *5 (M.D. Fla. July 19, 2010).  Additionally, "[i]ssues not raised" in a motion "are deemed forfeited," *Anthony v. Georgia*, 69 F.4th 796, 807 (11th Cir. 2023), and Defendant does not argue that the private factors favor dismissal, (*see* Dkt. 26).  As Plaintiffs state, "[i]n terms of access to witnesses, [Plaintiffs] will be able to produce records and testify in Orlando without difficulty," and "[i]t will be expedient and cost-effective to have witnesses appear in this [c]ourt, rather than moving this action to Luxembourg."  (Dkt. 30 at 14.)  Further, although Plaintiffs are foreigners litigating far from their Gibraltar home, *see Leon*, 251 F.3d at 1315, the court gives some weight to their choice of the Middle District of Florida as the forum for this action, *see Atl. Marine*, 571 U.S. at 62 n.6.

Accordingly, the private factors weigh against dismissal.  *See TNT USA Inc. v. TrafiExpress, S.A. de C.V.*, 434 F. Supp. 2d 1322, 1334 (S.D. Fla. 2006) ("Two out of the four defendants have a presence in this district, and the corporate defendants do business in American markets.  Thus[,] it is hardly burdensome to litigate in Miami, which is only a plane ride away from any witnesses or records under [the] defendants' control that may be located in Mexico City."); *Owens v. Superfos A/S*, 170 F. Supp. 2d 1188, 1193–94 (M.D. Ala. 2001) ("[The d]efendant insists that litigating this case in Alabama would be highly burdensome [because] its crucial witnesses and documents are located in Denmark.  However, [the d]efendant has offered little in the record to indicate with specificity who or what these sources of proof might be, nor the relative

difficulty in bringing them to Alabama for a trial.  Such blanket assertions, without more, are insufficient . . . . Consequently, the private factors weigh against dismissing the present matter."); *Ava's Delights, LLC v. EcoView Am.*, No. 6:20-cv-01380-Orl-40LRH, 2021 WL 168465, at *3, 2021 U.S. Dist. LEXIS 11678, at *7–8 (M.D. Fla. Jan. 6, 2021) ("Because there is no conclusive proof that the parties[] agreed to a forum selection clause, the [c]ourt proceeds under the traditional forum non conveniens analysis—not the modified framework . . . . Under that analysis, considerable deference is given to a plaintiff's choice of forum. . . . Having relied on the modified . . . framework . . . , the . . . [d]efendants fail to establish the requisite elements.  They do not demonstrate that Alabama is an alternate and available forum. . . . [They] do not even mention the private . . . factors.  Thus, [they] fall short of showing that that the private . . . factors outweigh [the plaintiff's] choice of forum or that dismissal is warranted under the doctrine of forum non conveniens." (footnote omitted)); *New Life Mgmt. Co. v. Sandy Lane Hotel Co.*, No. 13-CV-60566, 2013 WL 12152494, at *8, 2013 U.S. Dist. LEXIS 202784, at *24 (S.D. Fla. Aug. 20, 2013) ("[The d]efendant has failed to show that its interests would be so unfairly burdened by a trial in Florida to necessitate a dismissal in favor of Barbados as a forum.").

Regarding the public factors, Defendant makes four arguments. (Dkt. 26 at 13–15.)  First, Defendant notes the immense court congestion in the Middle District of Florida. (*Id.* at 14.)  Second, Defendant invokes the contract's governing law clause to argue that Luxembourg law controls this case.  (*Id.* at 13; *see id.* at 6–7.)  Third, Defendant contends that Luxembourg's local interest in the case far exceeds Florida's,

as Carlisle is organized under Luxembourg law and Florida's sole connection to the case is Defendant's headquarters. (*Id.* at 14.) Fourth, according to Defendant, declining to dismiss this case in favor of a Luxembourg forum threatens to burden citizens in a forum unrelated to the case with jury duty given that the amended complaint demands a jury. (*Id.* at 14–15; *see* Dkt. 14 at 19 ("[Plaintiffs] demand trial by jury on all issues so triable.").) As to the first argument, Plaintiffs respond: "[P]roceeding in this forum will not impose administrative difficulties. Florida courts are well-equipped to handle complex cases, and having the action here (where [D]efendant is headquartered) will streamline access to witnesses, documents, and other evidence, minimizing delays and procedural inefficiencies." (Dkt. 30 at 15.) As to the second argument, Plaintiffs maintain that the governing law clause is inapplicable and unenforceable for the same reasons that the forum selection clause is, and thus, Florida law, including the FDUTPA, applies to the case. (*Id.* at 11; *see id.* at 16–31 (asserting that the amended complaint states claims for relief under Florida law, without considering Luxembourg law); *see also* Dkt. 26 at 15–26 (Defendant's arguments on failure to state a claim, which cite Florida law).) As to the third and fourth arguments, Plaintiffs emphasize the location of Defendant's headquarters in Orlando, Florida, to argue that this forum has "a clear and substantial connection to the dispute" and that "local jurors have a direct interest in resolving a dispute involving a company headquartered in their community." (Dkt. 30 at 15.)

Like the private factors, the public factors counsel against dismissal. To begin, although "the Middle District of Florida is one of the busiest district courts in the

country and its limited resources are precious," *McCoy v. Lowe's Home Ctrs., LLC*, No. 3:25-cv-1099-MMH-PDB, 2025 WL 2695071, at *1 n.1, 2025 U.S. Dist. LEXIS 185127, at *1 n.1 (M.D. Fla. Sept. 22, 2025) (quotation omitted), court congestion does not weigh in favor of dismissal, or if it does, it does only minimally. *See CAE USA, Inc. v. XL Ins. Co.*, No. 8:11-cv-64-T-24 TBM, 2011 WL 1878160, at *8, 2011 U.S. Dist. LEXIS 52794, at *23–24 (M.D. Fla. May 17, 2011) (rejecting the defendant's argument that "dismissal of th[e] case would relieve [the c]ourt's docket congestion," and reasoning that "it [wa]s not certain that litigating th[e] case w[ould] result in a waste of judicial resources"); *cf. Todd Benjamin*, 682 F. Supp. 3d at 1129 ("[T]he Southern District of Florida has one of the busiest dockets in the country, and this factor therefore weighs in favor of dismissal.  Nonetheless, this factor generally does not warrant significant consideration in the forum non conveniens analysis, and the [c]ourt does not accord it much weight."); *Newco MG, Inc. v. Perry*, No. 8:11-cv-1287-T-24-TGW, 2012 WL 631562, at *4, 2012 U.S. Dist. LEXIS 25071, at *11 (M.D. Fla. Feb. 28, 2012) (finding "only minimally persuasive" the defendant's arguments that "dismissal would relieve [the c]ourt's docket congestion" and would avoid "burdening local jurors with a case with which they ha[d] minimal connection or concern").  In addition, the court's reasoning respecting the applicability of the forum selection clause pertains equally to the governing law clause: namely, Defendant has not convinced the court to deviate from the general rule dictating that Defendant cannot enforce the governing law clause against Plaintiffs because Defendant and Plaintiffs are non-parties to the contract containing the clause.  *See Usme*, 106 F.4th at

1087; *Mendez*, 203 So. 3d at 149.  Consequently, Florida law governs this case[2]—a circumstance favoring a Florida forum.  *See Vohra Health Servs., P.A. v. Kane*, No. 10-21941-CIV-MARTINEZ-BROWN, 2010 WL 11597976, at *8, 2010 U.S. Dist. LEXIS 153821, at *22 (S.D. Fla. Oct. 25, 2010) ("The forum's familiarity with the governing law weighs in favor of [the p]laintiff."); *Gold X-Press Corp. v. Very Beary Venture I, LLC*, No. 03-60176-CIV-ALTONAGA/BANDSTRA, 2003 WL 23763844, 2003 U.S. Dist. LEXIS 19747, at *6 (S.D. Fla. Oct. 3, 2003) (determining that the public factors favored the plaintiffs' choice of a Florida forum when "[s]ix of the eight counts in the . . . [a]mended [c]omplaint [we]re based on Florida law, which [the c]ourt [wa]s suited to apply").  Moreover, this case is "not unrelated to [Central Florida] and its citizens, as Defendant is headquartered" here.  *See Jackson v. Threebridge Sols., LLC*, No. 8:21-cv-2464-WFJ-AEP, 2022 WL 45050, at *3, 2022 U.S. Dist. LEXIS 2096, at *10 (M.D. Fla. Jan. 5, 2022); *cf. Jackson v. Equifax Info. Servs. LLC*, No. 13-21691-CIV-GRAHAM, 2013 WL 12384161, at *2, 2013 U.S. Dist. LEXIS 204764, at *6 (S.D. Fla. July 17, 2013) ("[The d]efendants have adequately shown that the Northern District of Georgia is a much more convenient forum because [one defendant] is headquartered there." (citing *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007))).  Because the private and public factors do not weigh in favor of dismissal, Defendant has not demonstrated that dismissal is

---

[2] The parties appear to assume that if the court finds the governing law clause inapplicable, Florida substantive law controls Plaintiffs' claims, (*see* Dkt. 26 at 15–26; Dkt. 30 at 16–31), and "[i]f the parties litigate the case under the assumption that a certain law applies, [the court] will assume that law applies," *Anderson v. Wilco Life Ins. Co.*, 17 F.4th 1339, 1345 (11th Cir. 2021) (quotation omitted).

warranted based on forum non conveniens.  *See Turner*, 9 F.4th at 1347.

### B. Count One

Now that the court has decided the forum non conveniens issue, it proceeds to analyze each count with respect to failure to state a claim.  Count one alleges that Defendant breached the contract by failing to distribute Plaintiffs' investments in compliance with section 20 and by failing to "respond to [Plaintiffs'] requests for specific information as to the status" of their investments in compliance with section 27.2.  (Dkt. 14 ¶¶ 82–93.)  Although elsewhere in the amended complaint Plaintiffs seek the equitable remedy of an accounting, the relief requested in count one is legal, not equitable; Plaintiffs seek compensatory damages, prejudgment interest, attorney fees, and costs rather than specific performance or other equitable relief.  (*Id.* at 13.) *See Waldrop v. S. Co. Servs.*, 24 F.3d 152, 156 (11th Cir. 1994) ("Compensatory damages are the classic form of legal relief."); *Castigliano v. O'Connor*, 911 So. 2d 145, 148 (Fla. Dist. Ct. App. 2005) (describing "specific performance [a]s an equitable remedy"). Defendant argues that Florida's statute of frauds bars the count given the long-term nature of the fund and the absence of signatures from the contract.  (Dkt. 26 at 18–19.) Plaintiffs respond that the statute does not apply to the contract, which "could be performed within one year" and "has been partially performed."  (Dkt. 30 at 22.) Plaintiffs do not contend that the contract satisfies the statute's signature requirement or that the contract has been fully performed.  (*See id.* at 22–23.)

Florida's statute of frauds provides:

No action shall be brought . . . upon any agreement that is not to be

> performed within the space of [one] year from the making thereof . . . unless the agreement . . . or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Fla. Stat. § 725.01. The statute applies to a contract that "could not be performed within one year from the time [the contract] was made." *Harris Corp. v. Giesting & Assocs.*, 297 F.3d 1270, 1275 (11th Cir. 2002). Conversely, "if the contract's full performance is possible within one year from the inception of the contract, then it falls outside the statute of frauds." *Browning v. Poirier*, 165 So. 3d 663, 666 (Fla. 2015). The doctrine of partial performance "remove[s] a contract from the statute of frauds" for an action seeking "specific performance or other equitable relief," but "part performance is an equitable doctrine only" and, as such, "is not available in an action solely for damages at law." *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir. 1991).

The statute of frauds applies to the contract at issue because the contract could not be performed within one year. Plaintiffs allege that in accordance with the contract, they purchased shares in the fund in 2016, 2018, and 2019 and sought to redeem their investments in 2020. (Dkt. 14 ¶¶ 38, 41, 46.) Further, the contract describes the term as "[p]erpetual and open-ended," (Dkt. 14-1 at 16), speaks of "unlimited duration[s]," (*id.* at 23, 42, 80, 92, 103), states that "[u]nits redeemed in the *early years* from acquisition will be subject to redemption charges," (*id.* at 29 (emphasis added)), requires initial expenses to "be allocated equally throughout *the first financial year*," (*id.* at 41 (emphasis added)), provides that "[d]istributions not claimed *within five years* from their due date will elapse," (*id.* at 42 (emphasis added)), discusses yearly

taxing, auditing, and reporting obligations, (*id.* at 52–53, 55–56, 60), contemplates retaining investors' personal data for ten years or longer, (*id.* at 59), and generally entails long-term investment, (*see id. passim*). Consequently, the court agrees with Defendant, (*see* Dkt. 26 at 18–19), that in light of Plaintiffs' conduct and the contract's text, the statute of frauds applies. *See Harris*, 297 F.3d at 1275; *LynkUs Commc'ns, Inc. v. WebMD Corp.*, 965 So. 2d 1161, 1165 (Fla. Dist. Ct. App. 2007) (affirming the application of the statute of frauds to an alleged agreement involving a business "arrangement that, by its very nature, would extend for more than a year"). As Plaintiffs do not request equitable relief, (*see* Dkt. 14 at 13), partial performance does not remove the contract from the statute, *see Dwight*, 947 F.2d at 459.

Because the statute of frauds applies, Plaintiffs cannot sue for breach of the contract unless the contract is signed by Defendant (directly or indirectly, as through Carlisle). *See* Fla. Stat. § 725.01. Defendant's argument that the contract "contains no signatures" is well-taken, (Dkt. 26 at 19), as upon reviewing the contract, the court does not discern any signatures attributable to Defendant, (*see* Dkt. 14-1). Moreover, Plaintiffs do not respond to this argument. (*See* Dkt. 30.) Consequently, the statute of frauds bars count one as pleaded. *See Spaziani v. Bancroft*, 618 So. 2d 744, 747 (Fla. Dist. Ct. App. 1993) ("The courts have been very liberal in defining 'signature.' But we have found no case which dispenses with the requirement altogether."). The court notes that the contract's failure to satisfy the statute of frauds does not signify the invalidity of the contract. *See Grossman v. Levy's*, 81 So. 2d 752, 753 (Fla. 1955)

("[Florida's] statute of frauds, unlike the statutes of some states, does not declare an offending contract to be void or invalid." (citation and quotations omitted)).

## C. Count Two

Count two lists six ways in which Defendant purportedly breached fiduciary duties owed to Plaintiffs: (1) "[f]ailing to honor [Plaintiffs'] redemption requests submitted in accordance with . . . liquidation protocols," (2) "[f]ailing to provide timely, specific, and accurate information regarding the status, valuation, and liquidation" of Plaintiffs' investments, (3) "[f]ailing to provide material information about the [fund]'s performance and redemption process," (4) "[r]esponding to [Plaintiffs'] inquiries with generic, non[]responsive communications," (5) "[c]ontinuing to accrue performance fees based on unrealized gains while denying [Plaintiffs] access to their capital," and (6) generally "[f]ailing to act in good faith or with reasonable diligence in protecting [Plaintiffs'] interests."  (Dkt. 14 ¶¶ 94–98.) "[T]o establish a breach of fiduciary duty under Florida law, a plaintiff must prove three elements: the existence of a fiduciary duty, a breach of that duty, and that the plaintiff's damages were proximately caused by the breach." *Med. & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 989 (11th Cir. 2020) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).  Defendant challenges only the first element. (*See* Dkt. 26 at 21– 22; *see also* Dkt. 30 at 25–26.)

The existence of a fiduciary duty is typically a factual issue not properly resolved on a Rule 12(b)(6) motion. *See Asokan v. Am. Gen. Ins. Co.*, 302 F. Supp. 3d 1303, 1317 (M.D. Fla. 2017) ("[W]hether a fiduciary relationship exists is a question of fact for

the jury."); *see also Doe v. Evans*, 814 So. 2d 370, 375 (Fla. 2002) ("[I]t is a question for the jury to determine whether a fiduciary relationship arose[.]").  Further, Plaintiffs plausibly plead that Defendant owed them fiduciary duties.  "A fiduciary relationship may be either express or implied."  *Hogan v. Provident Life & Accident Ins. Co.*, 665 F. Supp. 2d 1273, 1287 (M.D. Fla. 2009).  "Express fiduciary relationships are created by contract or legal proceedings."  *Id.*  "Implied fiduciary relationships 'are premised upon the specific factual situation surrounding the transaction and the relationship of the parties' and exist where 'confidence is reposed by one party and a trust accepted by the other.'"  *Id.* (quoting *Cap. Bank v. MVB, Inc.*, 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994)).

Plaintiffs assert an express relationship based on the contract and an implied relationship based on the parties' investment situation.  (Dkt. 30 at 25–26.)  Count two states that as "fund manager through Carlisle," Defendant "owes a fiduciary duty to" Plaintiffs and that a "relationship of trust and confidence existed between [Plaintiffs] and [D]efendant, where [Plaintiffs] reposed trust and confidence in [D]efendant, which it accepted."  (Dkt. 14 ¶¶ 94–95.)  Plaintiffs allege Defendant's liability through Carlisle.  (Dkt. 14 ¶¶ 3–11, 26–34, 67–69, 94.)  The contract requires Carlisle to manage the fund "for the sole benefit" of the fund's investors, (Dkt. 14-1 at 20), and grants Carlisle "sole discretion" with respect to various matters of fund management, (*e.g.*, *id.* at 77 (stating that Carlisle "has the sole discretion to decide which policies are purchased or sold")).  Plaintiffs' allegations therefore suffice.  *See Maliner v. Wachovia Bank, N.A.*, No. 04-60237-CIV-ALTONAGA/B, 2005 WL 670293, at *11, 2005 U.S.

- 27 -

Dist. LEXIS 5985, at *33 (S.D. Fla. Mar. 1, 2005) (concluding that a fiduciary relationship existed under Florida law when a contract conferred on the defendant investment manager sole discretion to manage the plaintiffs' accounts); *see also Waldemar v. Golden*, No. 8:18-cv-313-T-36TGW, 2018 WL 6326206, at *4, 2018 U.S. Dist. LEXIS 204891, at *11–12 (M.D. Fla. Dec. 4, 2018) (determining that a breach of fiduciary duty count arising under Florida law stated a plausible claim for relief when an investor sued her investment advisors for failing to "act in her best interests" and to provide her with a "full and fair disclosure of material facts" related to her investment). Thus, the court does not dismiss count two for failure to state a claim.

## D. Count Three

Purportedly pleaded in the alternative to count one, count three alleges that Defendant has been unjustly enriched insofar as it has continued to retain the benefit of Plaintiffs' investments—which exceed $16 million—in ways "violat[ing] the fundamental principles of justice, equity, and good conscience." (Dkt. 14 ¶¶ 99–103.) Like all the other counts in the amended complaint, (*see id.* at 12–13, 15, 17–18), count three incorporates all the paragraphs that appear prior to the counts in the pleading, (*id.* at 14 ("realleg[ing] the allegations contained in paragraphs 1 through 81")), including paragraphs premised on the existence of a valid contract governing the fund, (*see id.* ¶¶ 44–45, 74–75). Defendant contends that "where, as here, an unjust enrichment claim incorporates allegations of a valid contract, unjust enrichment cannot be pleaded in the alternative." (Dkt. 26 at 22 (citations omitted).)

"It is well settled in Florida that a plaintiff cannot pursue a quasi-contract claim

for unjust enrichment if an express contract exists concerning the same subject matter." *Wiand v. Wells Fargo Bank, N.A.*, 86 F. Supp. 3d 1316, 1332 (M.D. Fla. 2015) (alteration adopted and quotation omitted). The Federal Rules of Civil Procedure permit alternative and inconsistent claims. Fed. R. Civ. P. 8(d)(2)–(3). However, by incorporating allegations of a valid contract into count three, Plaintiffs have failed to plead unjust enrichment in the alternative to breach of contract. *See Collaboration Betters the World, Inc. v. Hertz Corp.*, No. 2:23-cv-131-JES-KCD, 2023 WL 3931822, at *3, 2023 U.S. Dist. LEXIS 100936, at *6–7 (M.D. Fla. June 9, 2023) ("Although [the] plaintiff can plead unjust enrichment in the alternative, [the unjust enrichment] count incorporates all factual allegations regarding the existence of a valid contract as alleged in [the breach of contract counts]. . . . [W]hile [a plaintiff] may plead breach of contract and unjust enrichment in the alternative, [the plaintiff has] not done so. Instead, [it] pleaded a contractual relationship as part of [its] unjust enrichment claim, and that contractual relationship defeats [the] unjust enrichment claim . . . ." (quotation and citation omitted)). Consequently, the court dismisses count three.

### E. Count Four

Count four asserts that Defendant committed fraudulent concealment and misrepresentation in connection with the process of liquidating the fund. (Dkt. 14 ¶¶ 104–12.) The count focuses on Defendant's allegedly deficient responses to Plaintiffs' inquiries into the process and to their demands to redeem their investments. (*Id.*) Fraudulent concealment has five elements under Florida law: (1) "the defendant concealed or failed to disclose a material fact," (2) "the defendant knew or should have

known the material fact should be disclosed," (3) "the defendant knew that its concealment of or failure to disclose the material fact would induce the plaintiff to act," (4) "the defendant had a duty to disclose the material fact," and (5) "the plaintiff detrimentally relied on the misinformation." *Cote v. R.J. Reynolds Tobacco Co.*, 909 F.3d 1094, 1106 n.6 (11th Cir. 2018) (citing *Hess v. Philip Morris USA, Inc.*, 175 So. 3d 687, 691 (Fla. 2015)).  Fraudulent misrepresentation has four elements under Florida law: (1) "a false statement concerning a material fact," (2) "the representor's knowledge that the representation is false," (3) "an intention that the representation induce another to act on it," and (4) "consequent injury by the party acting in reliance on the representation." *Johnson v. Davis*, 480 So. 2d 625, 627 (Fla. 1985).  To begin, because the different causes of action have different elements, Plaintiffs' decision to combine them in a single count poses a shotgun pleading problem.  *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (classifying as a shotgun pleading a complaint that fails to "separat[e] into a different count each cause of action or claim for relief"); *Solar Eclipse Inv. Fund VII, LLC v. T-Mobile USA, Inc.*, No. 20-25257-Civ-GAYLES/TORRES, 2021 WL 4067911, at *5, 2021 U.S. Dist. LEXIS 155274, at *14 (S.D. Fla. Aug. 16, 2021) ("[C]ombining two distinct—albeit related—causes of action [i.e., fraudulent concealment and fraudulent misrepresentation under Florida law] fails to notify [the defendant] or the [c]ourt of the claim presented."), *report and recommendation adopted by* 2021 WL 4050820, at *1, 2021 U.S. Dist. LEXIS 168242, at *3 (S.D. Fla. Sept. 5, 2021).  Moving forward, Plaintiffs shall assert fraudulent concealment and fraudulent misrepresentation in separate counts.  *See*

*Merritt v. Knowles*, No. 6:24-cv-1365-JSS-DCI, 2026 WL 617427, at *5, 2026 U.S. Dist. LEXIS 45364, at *14 (M.D. Fla. Mar. 5, 2026) (requiring each distinct cause of action to be pleaded in its own separate count).

In addition, Federal Rule of Civil Procedure 9(b) requires Plaintiffs to plead their fraudulent concealment and misrepresentation claims with particularity. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting [the] fraud . . . ."); *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1196 (S.D. Fla. 2017) ("The [p]laintiffs' claim for fraudulent concealment is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); *C.S.I.R. Enters., Inc. v. Sebrite Agency, Inc.*, 214 F. Supp. 2d 1276, 1281–82 (M.D. Fla. 2002) (requiring a fraudulent misrepresentation count to satisfy Rule 9(b)). The Eleventh Circuit has explained:

> Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks*, 116 F.3d at 1371); *accord Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) ("[P]ursuant to Rule 9(b), a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [plaintiff]; and (4) what the defendant[] gained by the alleged fraud." (quotation

omitted)). A plaintiff must "'plead the who, what, when, where, and how' of the allegedly fraudulent statements or omissions, though the 'specific facts related to the defendant's specific state of mind when the allegedly fraudulent statements were made' need only be alleged generally." *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013) (quoting *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008)); *see also United States ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (rejecting the argument that courts "should apply a more lenient pleading standard" when evidence of fraud is "uniquely held by the defendant").

Defendant maintains that count four lacks the requisite particularity. (Dkt. 26 at 23–25.) The court agrees. The count generally describes the subject matter of alleged misrepresentations and omissions that Defendant made and ratified, and it connects most, but not all, of the misrepresentations and omissions to dates. (*See* Dkt. 14 ¶¶ 104–05.) The count also incorporates prior paragraphs that set out a timeline related to Plaintiffs' requests to redeem their investments, and the timeline identifies persons who communicated with Plaintiffs about the investments. (*See id.* ¶¶ 46–73.) However, the count does not allege the "precise statements" or omissions at issue, the "time, place, and person responsible" for each statement or omission, the "content and manner" in which each statement or omission misled Plaintiffs, and what Defendant gained by each statement or omission. *See Am. Dental Ass'n*, 605 F.3d at 1291. The count does not supply full answers to the "who, what, when, where, and how" questions for each statement or omission. *See Aprigliano*, 979 F. Supp. 2d at 1342.

Further, "[p]leading a misrepresentation alone is not enough to show fraud. Reliance is required, too.  To establish reliance under Florida law, [P]laintiffs must show that but for the alleged misrepresentation or nondisclosure, [they] would not have entered the transaction." *Otto Candies, LLC v. Citigroup Inc.*, 137 F.4th 1158, 1193 (11th Cir. 2025) (quotation omitted).  "A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b)." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1128 (11th Cir. 2019).  Nonetheless, count four includes conclusory allegations of reliance and does not connect Plaintiffs' alleged reliance with specific misrepresentations or omissions attributable to Defendant.  (*See* Dkt. 14 ¶¶ 36–37, 111.)    Additionally, the count discusses the purported misrepresentations and omissions with respect to Plaintiffs collectively, instead of alleging the particulars of the fraud as to each Plaintiff.  (*See id.* ¶¶ 104–12.)  *See Aguilo v. Cognizant Tech. Sols. U.S. Corp.*, No. 8:21-cv-2054-KKM-AEP, 2022 WL 2106077, at *3, 2022 U.S. Dist. LEXIS 104407, at *10-11 (M.D. Fla. June 10, 2022) ("Florida law treats each fraud claim as factually distinct and requires proof of matters individual to each plaintiff.  [The p]laintiffs make no attempt, however, to allege the particulars of fraudulent concealment—the who, what, when, where, and how—as to each of them individually.  Therefore, the fraudulent concealment claim is deficient for this reason alone." (quotation and citation omitted)).

In light of the above, the court dismisses count four for failure to state a claim. *See Trophia v. Camping World, Inc.*, 616 F. Supp. 3d 1305, 1310 (M.D. Fla. 2022) (partially granting a Rule 12(b)(6) motion on the basis that "combining [a loss of

consortium] claim with another claim under the same count raise[d] shotgun[ ]pleading concerns"); *see also Fernau v. Enchante Beauty Prods.*, 847 F. App'x 612, 621–22 (11th Cir. 2021) (affirming the dismissal of fraud claims, including claims arising under Florida common law, because the conclusory allegation that if the plaintiffs had received a "full and accurate disclosure at the time of sale," they "would not have invested" did not meet "Rule 9(b)'s heightened pleading requirement that the plaintiffs allege with particularity the manner in which they relied on the defendants' statements" (quotation omitted)).

## F.  Count Five

Count five asserts FDUTPA violations based on Defendant's unfair and deceptive conduct related to investors' abilities to redeem their investments in the fund, the distribution of liquidation proceeds, and the adequacy of Defendant's communications to investors.  (Dkt. 14 at 17–18.)[3]  The count states that as investors in the fund, Plaintiffs have incurred actual damages as a result of Defendant's FDUTPA violations.  (*Id.*)  Defendant puts forth two arguments as to count five.  (Dkt. 26 at 25–26.)  First, in Defendant's view, the governing law clause calling for the

---

[3] The court cites counts five and six by page number rather than paragraph number to avoid confusion, as the amended complaint erroneously includes paragraphs numbered 114 through 118 in each count. (*See* Dkt. 14 at 17–19.)  *See Zhou v. Individuals*, No. 23-24601-CIV-ALTONAGA/REID, 2024 WL 4308741, at *1 n.2, 2024 U.S. Dist. LEXIS 178190, at *2 n.2 (S.D. Fla. Apr. 2, 2024) ("While the [c]ourt typically uses paragraph numbers to refer to a complaint, [the p]laintiff's paragraphs 8 [through] 13 are misnumbered as paragraphs 2 [through] 7.  To avoid confusion, the undersigned references the page numbers of the [c]omplaint when discussing these paragraphs.").  If Plaintiffs replead, they shall take care in their amended pleading to avoid such misnumbering.  *See Carter v. Fla. Dep't of Child. & Fams.*, No. 6:25-cv-372-JSS-DCI, 2025 WL 3906571, at *4, 2025 U.S. Dist. LEXIS 270203, at *13 (M.D. Fla. Dec. 31, 2025) (ordering the plaintiff to "number all her paragraphs correctly").

application of Luxembourg law precludes Plaintiffs from bringing FDUTPA claims. (*Id.*)   Second, according to Defendant, the amended complaint lacks allegations establishing a connection between Defendant's purported misconduct and Florida that are sufficient to invoke the FDUTPA.  (*Id.* at 26.)  The court rejects the first argument for the same reasons expressed in the forum non conveniens analysis above.  Namely, the court implements the general rule that Defendant cannot enforce the governing law clause against Plaintiffs because Defendant and Plaintiffs are non-parties to the contract containing the clause.  *See Usme*, 106 F.4th at 1087; *Mendez*, 203 So. 3d at 149.

As to the second argument, the FDUTPA applies to "commercial transactions between Florida corporations[, like Defendant,] and non[]resident consumers[, like Plaintiffs]."  *Millennium Commc'ns & Fulfillment, Inc. v. Off. of Att'y Gen.*, 761 So. 2d 1256, 1260-61 (Fla. Dist. Ct. App. 2000).  Moreover, "the FDUTPA applies to private causes of action arising from single unfair or deceptive acts in the conduct of any trade or commerce, even if [the act] involves only a single party, a single transaction, or a single contract."  *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003).  The amended complaint alleges three connections to Florida: (1) Defendant is headquartered in Florida; (2) as Defendant's agent, Carlisle communicates to investors "by issuing newsletters from Florida" about the fund, (Dkt. 14 ¶¶ 17, 29); and (3) Defendant "does business in Florida," (*id.* at 17).  Defendant contends that the allegation about Carlisle is insufficient to connect Defendant's alleged misconduct to Florida because the communications to investors through newsletters from Florida are "unrelated to the conduct at issue" and because Carlisle's conduct is not Defendant's

conduct. (Dkt. 26 at 26.) However, Plaintiffs complain that Defendant "has misled [them] regarding . . . the transparency of its communications to investors" and "deceived consumers into believing [that Defendant] would . . . accurately and transparently communicate" with investors. (Dkt. 14 at 17–18.) Consequently, when viewed in the light most favorable to Plaintiffs, *see Henley*, 945 F.3d at 1326, the allegation about Carlisle relates to the conduct at issue.

In addition, the amended complaint contains allegations supporting that Carlisle has acted as Defendant's agent such that Carlisle's conduct can be attributed to Defendant. (Dkt. 14 ¶¶ 4–11, 26–34, 69.) Plaintiffs allege eight pertinent facts highlighting interactions between Defendant as principal and Carlisle as agent:

(1) Carlisle is registered under Defendant's name in the Luxembourg registry.

(2) Carlisle manages the fund in Defendant's name.

(3) Defendant completely controls Carlisle as Carlisle's sole shareholder.

(4) Defendant acquired Carlisle's assets and liabilities when Defendant purchased Carlisle.

(5) Former executives from Carlisle now occupy leadership positions with Defendant.

(6) Web traffic redirects from Carlisle's to Defendant's website.

(7) Carlisle's employees portray themselves as Defendant's employees to the public.

(8) Investors received liquidation information from Defendant through Carlisle.

(*Id.*) Given these allegations, Plaintiffs sufficiently plead an agency relationship

- 36 -

between Carlisle and Defendant. *See S.Y. v. Naples Hotel Co.*, 476 F. Supp. 3d 1251, 1258 & n.3 (M.D. Fla. 2020) (finding allegations of control "sufficient to support a claim of an agency relationship" and noting that the existence of an agency relationship is a factual issue inappropriate for resolution on a Rule 12(b)(6) motion where, as here, the alleged agency relationship is based on principal-agent interactions, not just a contract); *see also Walters v. Fast AC, LLC*, 60 F.4th 642, 652 (11th Cir. 2023) (observing that a complaint need not specifically plead a theory of vicarious liability, such as agency, under the federal pleading rules (citing *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259–61 (11th Cir. 2015))).

"Various state and federal courts have permitted FDUTPA claims when an out-of-state plaintiff challenges conduct with a nexus to Florida." *MasForce Eur., BVBA v. Mastry Marine & Indus. Design, Inc.*, No. 8:11-cv-1814-T-24AEP, 2013 WL 12156533, at *19–20, 2013 U.S. Dist. LEXIS 202911, at *54 (M.D. Fla. Oct. 24, 2013). Given the alleged connections to Florida, including Defendant's Florida headquarters and Defendant's purportedly deficient communications to investors through newsletters from Florida, Plaintiffs have demonstrated a nexus to Florida sufficient to assert a FDUTPA claim. *See id.* (describing challenged conduct as "unquestionably connected to Florida" for FDUTPA purposes when a Belgian corporation sued Florida corporations in connection with the sale and manufacture of a boat in Florida); *Bei Jing Han Tong San Kun Ke Ji You Xian Gong Si v. Atl. Med. Prods., LLC*, No. 8:20-cv-2972-CEH-TGW, 2022 WL 88167, at *11, 2022 U.S. Dist. LEXIS 3822, at *32 (M.D. Fla. Jan. 7, 2022) ("[The p]laintiff contends [that] there is a sufficient nexus between

the State of Florida and [the d]efendant's wrongful conduct to support a FDUTPA claim because every wrongful act giving rise to the claim was controlled, directed, or ratified by [the d]efendant from its headquarters in Florida.  The [c]ourt agrees with [the p]laintiff." (citation omitted)); *see also PNR*, 842 So. 2d at 777.  Accordingly, the court does not dismiss count five.

## G. Count Six

Premised upon the purported fiduciary relationship between Plaintiffs and Defendant and the complexity of the liquidation process for the fund, count six seeks a comprehensive equitable accounting regarding Plaintiffs' investments.  (Dkt. 14 at 18–19.)  Defendant asserts that count six fails to state a claim because the contract governing the fund does not provide a right to an accounting, because accounting is a remedy rather than a cause of action, and because Plaintiffs do not plausibly plead either the inadequacy of a legal remedy or a fiduciary relationship with Defendant. (Dkt. 26 at 26.)  "To obtain an accounting under Florida law, . . . a party must show either (1) a sufficiently complicated transaction and an inadequate remedy at law or (2) the existence of a fiduciary relationship."  *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1311 (11th Cir. 2014).  Florida law does not require a contract to provide a right to an accounting.  *See id.*  Although the Eleventh Circuit has stated in dicta that "an accounting is best understood as a remedy for a cause of action, not as a cause of action in its own right," *id.* at 1310 n.21, Florida law supports that "an action for an accounting is a separate and distinct cause of action that may be available where a fiduciary duty exists," *Cassedy v. Alland Invs. Corp.*, 128 So. 3d 976, 978 (Fla.

- 38 -

Dist. Ct. App. 2014).

Even if an accounting must be a remedy for another cause of action, the amended complaint includes counts to which the accounting remedy may attach. (*See* Dkt. 14.)  For example, as explained above, count two, which alleges a breach of fiduciary duties, survives Defendant's motion to dismiss, as Plaintiffs plausibly plead the existence of a fiduciary relationship with Defendant.  *See Maliner,* 2005 WL 670293, at *11, 2005 U.S. Dist. LEXIS 5985, at *33; *see also Waldemar*, 2018 WL 6326206, at *4, 2018 U.S. Dist. LEXIS 204891, at *11–12; *cf. Tampa Park Apartments, Inc. v. Carson*, No. 8:14-cv-1230-T-AEP, 2018 WL 11651672, at *2, 2018 U.S. Dist. LEXIS 251233, at *5 (M.D. Fla. June 21, 2018) (reasoning that the dismissal of breach of contract and breach of fiduciary duty counts left an accounting unavailable as a remedy for either count).  The existence of such a relationship suffices for an accounting under Florida law regardless of the adequacy of a legal remedy.  *See Zaki*, 771 F.3d at 1311.  Even so, count six states that "[b]ecause of the volume of the funds at issue, it is not clear that a remedy at law is as full, adequate, and expeditious as it is in equity."  (Dkt. 14 at 18.)  This statement tracks language from Florida caselaw on accounting.  *E.g.*, *F. A. Chastain Constr., Inc. v. Pratt*, 146 So. 2d 910, 913 (Fla. Dist. Ct. App. 1962) ("Matters of account are one of the ordinary sources of equity jurisdiction and on its facts this case falls squarely within the rule that although courts of law have jurisdiction to enforce contract demands which involve an accounting, equity will take cognizance of cases where the contract demands between litigants involve extensive or complicated accounts and *it is not clear that the remedy at law is as full, adequate[,] and*

*expeditious as it is in equity*." (emphasis added)).  Defendant does not challenge the complicated transaction element in its arguments on count six, (*see* Dkt. 26 at 26), and the amended complaint adequately indicates that the liquidation process for the fund is complex, (*see, e.g.*, Dkt. 14 at 9–11, 18).

For the reasons articulated above, Defendant's arguments against count six are unavailing.  Because the count states a claim for relief, it is not due to be dismissed.

## H. Leave to Amend

In a single sentence at the end of its motion, and without explanation or citation to legal authority, Defendant asks the court to dismiss Plaintiffs' claims "with prejudice because no additional amendment could cure Plaintiffs' fatal deficiencies." (Dkt. 26 at 26.)  Because Defendant does not explain why amendment would be futile, (*see id.*), the court cannot conclude that it would be.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant."); *see also Stann v. First Liberty Ins. Corp.*, 845 F. App'x 843, 849 (11th Cir. 2021) ("[The appellant] mentions this issue in only one sentence of his initial brief without citing any authority.  Because this is a conclusory argument devoid of any reasoning, [the court] deem[s] it abandoned.").  Further, the Federal Rules of Civil Procedure evidence a liberal policy in favor of amendment.  *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend a pleading before trial] when justice so requires."); *Reeves v. Wilson*, No. CV624-049, 2025 WL 2201078, at *1, 2025 U.S. Dist. LEXIS 148459, at *2 (S.D. Ga. Aug. 1, 2025) ("The Federal Rules adopt a

liberal policy towards amended pleadings."), *report and recommendation adopted by* 2025 WL 2616375, at *1, 2025 U.S. Dist. LEXIS 177000, at *1 (S.D. Ga. Sept. 10, 2025). Therefore, the court grants Plaintiffs leave to submit a second amended complaint. *See Miles v. Carnival Corp.*, 767 F. Supp. 3d 1368, 1376 (S.D. Fla. 2025) (observing that district courts generally enjoy "discretion to grant leave to amend sua sponte").

## CONCLUSION

Accordingly:

1. Defendant's motion to dismiss (Dkt. 26) is **GRANTED in part and DENIED in part** as stated in this order. The motion is **granted** to the extent that counts one, three, and four are **DISMISSED without prejudice** for failure to state a claim. The motion is otherwise **denied**.

2. If Plaintiffs wish to submit a second amended complaint aimed at correcting the pleading deficiencies identified in this order and can do so in good faith, they shall do so on or before May 25, 2026. Because the deadline for amending the pleadings in this case expired on February 5, 2026, (Dkt. 29 at 1), Plaintiffs shall exclude from the second amended complaint any claims not asserted in the amended complaint, unless prior to filing the second amended complaint, Plaintiffs satisfy the Federal Rules of Civil Procedure by establishing "good cause" and seeking "the [court]'s consent," Fed. R. Civ. P. 16(b)(4), in a motion that fully complies with all applicable Local Rules, including Local Rule 3.01. In any second amended complaint, Plaintiffs shall properly number their

paragraphs, and if they bring fraudulent concealment and fraudulent misrepresentation claims, they shall assert the claims in separate counts because fraudulent concealment and fraudulent misrepresentation have different elements under Florida law.

3. The deadline for Defendant to answer Plaintiffs' amended complaint (Dkt. 14) is extended to May 26, 2026.

   **ORDERED** in Orlando, Florida, on May 7, 2026.

   _____
   JULIE S. SNEED
   UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record