**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Case No. 6:25-cv-02047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

     Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

     Defendant.

**PLAINTIFFS' MOTION TO COMPEL BETTER RESPONSES TO
DISCOVERY REQUESTS AND PRODUCTION OF DOCUMENTS**

Pursuant to Federal Rule of Civil Procedure 37 and Middle District Discovery Handbook § III, Plaintiffs Ritz Investment Limited and Season Limited (collectively, the "Investors") respectfully request an order that (1) compels Defendant Abacus Global Management, Inc. ("Abacus") to provide complete responses to the Investors' First Set of Interrogatories, Requests for Production, and Requests for Admission (together, the "Discovery Requests"), (2) compels Abacus to produce responsive documents, (3) overrules or deems waived Abacus' improper objections and claims of insufficient information, and (4) compels Abacus to pay the Investors' reasonable fees and costs incurred in litigating this motion.

**INTRODUCTION**

Abacus is not a foreign defendant. It is a Florida-based, publicly traded corporation organized under Delaware law and subject to the Court's jurisdiction. Nonetheless, its discovery objections improperly pretend it is a foreign litigant and seek to impose inapplicable, foreign

1

data protection regimes to evade straightforward obligations under the Federal Rules. Abacus contends that the General Data Protection Regulation ("GDPR"), Regulation (EU) 2016/679 of the European Union ("EU"), somehow "bars" production of information held by its Luxembourg subsidiary, Carlisle Management Company S.C.A. ("Carlisle"). Abacus also argues that the Investors must proceed under the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Convention") to obtain such information. This is rank nonsense, as we demonstrate below. Abacus, a Florida corporation, has control of all information in the hands of its subsidiaries, including Carlisle.

Running for cover under EU regulations does not relieve Abacus of its obligations under Rule 26 or limit the scope of discovery here. Forty years ago, the Supreme Court recognized that it was already "well settled that [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987). Thus, the only issue here is whether Abacus has a duty under the Federal Rules to produce documents held by its subsidiary, because that information is within its "control." Decades of precedent make clear that the answer is "yes."

The Discovery Requests were served on Abacus, not Carlisle. Abacus owns Carlisle, and based on the Complaint's allegations and Abacus' public filings, it plainly has the legal power and practical ability to obtain responsive documents from Carlisle. *See* Comp. ¶¶ 3-11, 25-34; **Exhibit A** (acquisition press release); **Exhibit B** at 2 (Abacus Form ARS: Annual Report to Security Holders stating Abacus "*operate[s]* through five principal subsidiaries [including] Carlisle").

Acquiring Carlisle, Abacus became its sole shareholder and exercises control over

2

Carlisle's operations and records. *See* **Ex. B** at 88 ("[Abacus], through LMA,[1] services the life insurance policies held by the Carlisle Funds. . . . It was determined that [Abacus'] management has significant influence over the significant activities of [ ] Carlisle . . . ."); Comp. ¶¶ 3-11, 25-34. Abacus cannot avoid its discovery obligations by relying on the foreign location of documents held by a wholly owned subsidiary, which it has the practical ability to obtain upon demand. This establishes "control" under Rule 34, and Abacus has a duty to produce documents it possesses or controls, whether in the United States or elsewhere.

In addition to hiding behind Carlisle, Abacus' discovery responses violate the Federal Rules and the Court's rules. Abacus asserts boilerplate objections, unilaterally purports to narrow the scope of discovery, refuses to provide substantive answers, and withheld all documents without identifying what is being withheld or why. Abacus has not produced a single document or provided substantive responses to any interrogatories or requests for admission, which were served more than three months ago, on January 30, 2026. This plainly violates the requirement that discovery responses "fairly meet and comply with the discovery request," and avoid imposing unnecessary burden or expense on the requesting party. *See* Middle District Discovery Handbook § I.C(4); *see id*. § I.A(1), (2) (Discovery is expected to proceed with cooperation and good faith.). The Federal Rules likewise require specificity, completeness, and transparency, none of which Abacus has demonstrated.

Accordingly, the Court should grant this motion and compel Abacus to provide complete responses, produce all responsive documents within its possession, custody, or control, overrule its improper objections, and award the Investors their fees and costs pursuant to Rule 37.

---

[1] Longevity Market Assets, LLC, is a Florida limited liability company also owned and controlled by Abacus. **Ex. B** at 1.

## BACKGROUND

Since serving the Discovery Requests on January 30, 2026 (*see* **Composite Exhibit C**), the Investors have received no discovery from Abacus. Abacus served responses and objections on March 2, 2026. *See* **Composite Exhibit D**. Following a one-hour Zoom conferral on March 10, 2026, Abacus said it would supplement its responses, and requested three weeks to do so. Taking Abacus at its word, the Investors agreed to wait. On March 31, 2026, Abacus again failed to produce any documents, and served so-called "supplemental" responses and objections to the requests for production and interrogatories, ignoring the requests for admissions. This was not a good-faith, meaningful response, and illustrated an evident strategy of delay and obfuscation. *See* **Composite Exhibit E**.

On April 13, 2026, the parties had a second, one-hour Zoom conferral regarding Abacus' supplemental responses.[2] The parties are now at an impasse. Abacus refuses to substantively respond to the Discovery Requests or produce a single document. This motion follows multiple good-faith efforts to resolve these issues without the Court's intervention, pursuant to Local Rule 3.01(g) and Section VIII(F) of the Discovery Handbook.

The Discovery Requests seek information essential to the Investors' claims, including defendant's management of the fund at issue (the Luxembourg Life Fund – Long Term Growth Fund or "LLF-LTGF"), the handling of investor redemption requests, the calculation and

---

[2] On April 14, 2026, after the second conferral, the Investors provided Abacus with proposed search terms it had requested for some of the requests for production. Abacus rejected the search terms with no alternative proposal. Further, despite the Investors having provided a draft confidentiality agreement on February 2, 2026, more than a month later, on March 10, Abacus stated that it preferred its own draft, which it failed to provide for another three weeks. The Investors sent Abacus redline edits to its draft confidentiality agreement on April 14, 2026. Unsurprisingly and consistent with its foot-dragging, the Investors did not receive a response and counterproposal from defendant for another three weeks, until May 5, 2026. Although the Investors will continue to engage in negotiations regarding the draft confidentiality agreement, it appears unlikely to be finalized without a ruling on defendant's GDPR objections.

application of NAV to those redemptions, communications between the defendant and the Investors, and the relationship between the defendant and Carlisle before and after the acquisition.

Rather than respond substantively, Abacus has asserted boilerplate objections, such as "vague," "overbroad," "unduly burdensome," and "disproportionate" with no explanation. It also unilaterally attempts to limit the relevant time to December 2024 forward (after offering to limit it to the time from the Investors' September 2020 redemptions forward, a longer period that the Investors accepted). Defendant also refuses to answer interrogatories, except to say it is "willing to meet and confer;" which plainly is no answer at all. Finally, Abacus has flatly refused to produce *any documents* based on a GDPR objection (which never could apply to Abacus and cannot shield it from producing information held by an EU subsidiary), defying precedent requiring production even when foreign blocking statutes or data privacy laws actually are applicable.

Abacus is subject to this Court's jurisdiction and should be ordered to produce documents within its possession, custody, or control, and to fully respond to the Discovery Requests.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26 permits broad discovery of any nonprivileged matter relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *see Randall v. Offplan Millionaire AG*, 2019 WL 1003167, at *2 (M.D. Fla. 2019). The Federal Rules "strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

The Rules impose specific obligations governing discovery responses. "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). In objecting to requests for production, "[a]n objection

5

must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).

Requests for admission require that "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." Fed. R. Civ. P. 36(a)(4). "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if the party states that it has made reasonable inquiry* and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." *Id*. (emphasis added).

Where a party fails to comply with these obligations, Rule 37 authorizes the Court to compel discovery and award reasonable expenses, including attorneys' fees incurred by the party moving to compel. Fed. R. Civ. P. 37(a)(3)(B); 37 (a)(4); 37(a)(5)(A).

## ARGUMENT

Abacus' discovery objections lack merit because: (1) even assuming arguendo that it applied, the GDPR does not bar document production and, in fact, permits transfers for litigation purposes; (2) the Supreme Court's factor test supports production pursuant to the Federal Rules; (3) Abacus has control over its documents and Carlisle's, and; (4) Abacus' blanket objections and refusal to respond to interrogatories and requests for admission violate the Federal Rules and Middle District Discovery Handbook.

## I.     The GDPR Does Not Bar the Investors' Discovery Requests

Abacus, a Florida-based, publicly traded, for-profit corporation, is plainly subject to the Court's jurisdiction, and the GDPR has no application to discovery from a domestic defendant corporation's wholly owned foreign subsidiary, because the parent company has control of information in the subsidiary's possession. For almost 40 years since the Supreme Court's landmark decision on transnational discovery, it has been "well settled that [foreign] statutes do

not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute." *Societe Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 544 n.29 (1987) (holding that a federal district court has jurisdiction to order, under the Federal Rules of Civil Procedure, a foreign national to produce evidence located in a foreign country).

Courts addressing GDPR objections have rejected attempts to use European privacy law to block discovery. Even where "the key decisionmakers" and "the important documents and evidence relevant to Plaintiffs' claims" are outside the United States, federal courts can still compel production "without redaction or withholding of personal data pursuant to the GDPR," subject to a protective order. *See AnywhereCommerce, Inc. v. Ingenico, Inc.*, 2020 WL 5947735, at *1 (D. Mass. 2020) (holding that the GDPR "does not constrain the court's authority to compel the production of discovery," and ordering domestic defendants to produce unredacted documents without withholding personal data); *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *2-4 (D.N.J. 2020) (upholding orders compelling production of personal data and holding that a protective order sufficiently addressed GDPR concerns).

Further, even foreign corporations subject to a federal court's jurisdiction may be compelled to produce discovery, despite GDPR objections, without categorical redaction. *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *3-4; *Sowa v. Mercedes-Benz Grp. AG*, 2025 WL 3143639, at *2 (N.D. Ga. 2025). In *Sowa*, the court considered the parties' competing ESI protocols in light of a German defendant's GDPR objections. The defendant's proposal "(1) include[d] a definition for *foreign personal data*; (2) allow[ed] for the redaction of foreign personal data and 'information that is objectively irrelevant' within documents that the parties disclose; and (3) exempts custodians or sources of information from identification 'under

7

applicable foreign data privacy laws.'" *Id.* at *1. Defendant's proposal also would have allowed it to redact all personal information (including the names and business contact information of employees and custodians of information), as well as all information the party deemed "objectively irrelevant." *Id.* at *2. The court denied entry of defendant's proposal, finding no persuasive authority for it. *Id.* at *4 (citing *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *6, and *Randall v. Offplan Millionaire AG*, 2019 WL 1003167, at *3 (M.D. Fla. 2019)); *accord AnywhereCommerce*, 2020 WL 5947735, at *2 (the burden is on the resisting party). The *Sowa* court reasoned that permitting preemptive redactions "would undermine the interests advanced by the Federal Rules of Civil Procedure and this Court's routine discovery process." 2025 WL 3143639, at *7.

Further, even where the GDPR actually applies (not here), courts have recognized that Article 49(1)(e) of the GDPR (referred to as the "litigation exception") authorizes the transfer of personal data where "necessary for the establishment, exercise or defense of legal claims." *See, e.g.*, *In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, 2020 WL 14025674, at *2 (S.D. Fla. 2020) (recognizing that the GDPR permits necessary disclosure for legal claims); *Sowa*, 2025 WL 3143639, at *4; *AnywhereCommerce*, 2020 WL 5947735, at *1-2 (same).

Here, the GDPR is a non-starter and wholly inapplicable because Abacus, a Florida corporation, is not a foreign defendant, period. It acquired Carlisle in 2024 and conducted due diligence on the fund prior to acquiring it, meaning that the law requires it to hold responsive documents stateside that pre-date 2024. *See* **Ex. A**. Further, Abacus admits that it services the fund from Orlando, Florida through its subsidiary LMA, which means it also holds responsive documents stateside from *at least* 2024 to present. *See* **Ex. B** at 1, 88. Abacus' decision to withhold responsive documents and hide behind a wholly owned subsidiary is frivolous.

8

Even assuming *arguendo* that *all* responsive documents were in Carlisle's possession, Abacus still would have control of them, (*see* Section III below). Further, as shown above, GDPR objections do not permit wholesale refusal to produce responsive documents. *Arigna Tech. Ltd. v. Nissan Motor Co., Ltd.*, 2022 WL 3020136, at *1 (E.D. Tex. 2022) ("[S]imply invoking the GDPR does not excuse a party from its discovery obligations."). Abacus argues that Article 49(1)(e) "is interpreted narrowly under European Data Protection Board Guidelines 2/2018," and does not authorize "wholesale production of third-party investor data" in discovery. *See* **Ex. E**, Supplemental Responses to RFP Nos. 4, 6, 7, 8, 9, 10, 13, 20, 22, 26.[3] That may be, but we are in a U.S. court, and a purported "narrow" interpretation of Article 49 in the EU is irrelevant. *See Sowa*, 2025 WL 3143639, at *4-5.

At most, the GDPR may support narrowly tailored protections, such as confidentiality designations, but it plainly does not support a wholesale refusal to produce any documents. Where the GDPR actually applies (not here), courts order confidentiality designations to address privacy concerns, while preserving the broad scope of discovery under the Federal Rules. *See Sowa*, 2025 WL 3143639, at *4-5; *In re Mercedes-Benz Emissions Litig.*, 2020 WL 487288, at *3-4; *AnywhereCommerce, Inc.*, 2020 WL 5947735, at *4 (ordering production of documents "located in the United States[] without redaction or withholding of personal data pursuant to the GDPR"), *on reconsideration*, 2021 WL 2256273 (ordering production of documents located abroad pursuant to a protective order).

II.     **The *Aérospatiale* Factors Strongly Support Ordering Abacus to Produce Documents Pursuant to the Federal Rules of Civil Procedure, Not the Hague Convention**

Abacus' contention that the Hague Convention applies instead of the Federal Rules of

---

[3] Abacus has objected on GDPR grounds to numerous discovery requests, which are listed for ease of reference in the attached **Exhibit F**.

Civil Procedure, and its improper refusal to produce anything while it hides behind the GDPR, contradict clear, binding precedent that does not permit it to obstruct discovery on this flimsy basis. *See, e.g.*, *Aérospatiale*, 482 U.S. 522 at 544 (declining "to hold as a blanket matter that comity requires resort to Hague Evidence Convention procedures without prior scrutiny in each case of the particular facts, sovereign interests, and likelihood that resort to those procedures will prove effective"). The Hague Convention is optional, not mandatory, and U.S. courts routinely refuse to require Hague procedures where, as here, the responding party is properly before the Court and has possession, custody, or control of the requested materials. *See, e.g.*, *AnywhereCommerce*, 2020 WL 5947735, at *1-2.

Further, Abacus, as a party seeking "an order to apply Hague Convention procedures in lieu of the procedures set forth in the Federal Rules of Civil Procedure," must establish that a specific foreign law "***actually bars*** the production or testimony at issue." *See Randall*, 2019 WL 1003167, at *3 (citing *Alfadda v. Fenn*, 149 F.R.D. 28, 34 (S.D.N.Y. 1993)). This is a burden Abacus cannot carry.

Even if the GDPR barred discovery in the U.S. (it does not) and Abacus could withhold production (it cannot), the comity factors the Supreme Court articulated in *Aérospatiale* still would support production under the Federal Rules. If the GDPR applied here (it does not), *Aérospatiale's* comity analysis would require a court to balance the following factors:

> (1) the importance to the litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Aérospatiale*, 482 U.S. at 544 n.28; *accord In re Farm-Raised Salmon & Salmon Prods. Antitrust Litig.*, 2020 WL 14025674, at *2 (S.D. Fla. 2020).

10

In applying *Aérospatiale*'s factors, district courts hold that that a comity analysis should be conducted only when discovery risks violating a foreign blocking statute. *See Randall*, 2019 WL 1003167, at *5 (finding that discovery did not risk violating Swiss law and therefore could be obtained without resorting to the Hague Convention procedures because the documents were already on "United States soil," although the "Court presume[d] that [they] did not originate in the United States;" and neither plaintiff nor defendant were Swiss citizens).

Weighing the *Aérospatiale* factors, discovery here proceeds under the Federal Rules, not the Hague Convention. We address each factor in turn.

### A. The Discovery Requested Is Important to the Investors' Litigation

Discovery is important when it is "essential" to moving a case forward from a standstill. *See Randall*, 2019 WL 1003167, at *6. Discovery is "crucial" if it is likely to contain information regarding the conduct alleged in the complaint. *E.g.*, *In re Farm-Raised Salmon*, 2020 WL 14025674, at *3. "[T]he quantity of such documents does not control whether they are important to [the] litigation," which is determined by the "nature of the requests." *Vitality Sys., Inc. v. Sogeval Lab'ys, Inc.*, 2010 WL 11507286, at *3 (M.D. Fla. 3, 2010)

Here, the first *Aérospatiale* factor weighs in favor of production under the Federal Rules because the Investors seek information concerning Abacus' conduct at issue in this case. The Discovery Requests plainly are important. To illustrate, the Investors request defendant's acquisition and due diligence materials, governance documents, internal reports, redemption communications, communications with its agents, and valuation materials concerning the LLF-LTGF. *See* RFP Nos. 1, 3, 4, 12-14, 17-18. Those requests track the Complaint's core allegations: Abacus allegedly acquired Carlisle, controls Carlisle's operations, caused Carlisle to manage the LLF-LTGF under Abacus' name, assumed the role of communicating with LLF-

11

LTGF investors, and failed to provide meaningful redemption, liquidation, and valuation information, despite the Investors' repeated redemption requests. *See* Compl. ¶¶ 4, 7-8, 12-13, 25-34, 45-60, 67-79, 84-88. Discovery of those subjects is not collateral. It is squarely aimed at the conduct, knowledge, control, accounting, valuation, and damages issues that are central to this litigation.

Abacus has intentionally and willfully failed to respond to *any* of the Investors' Discovery Requests. This failure is frivolous, and the Investors reserve all rights.

### B.  The Investors' Discovery Requests Are Sufficiently Specific

Under the second *Aérospatiale* factor, district courts in this Circuit have found discovery requests sufficiently specific where a "[p]laintiff seek[s] a discrete set of documents tied directly to [its] claim." *See In re Farm-Raised Salmon*, 2020 WL 14025674, at *3. The Discovery Requests here meet this standard.

The Investors did not serve overbroad discovery requests, but requested a discrete set of 28 categories of documents, and answers to 25 interrogatories, all aimed at the claims and factual issues that remain in this case. Contrary to Abacus' objections, the Investors do not seek "wholesale production of third-party investor data." *Cf.* **Ex. E**, Defendant's Supplemental Responses to RFP Nos. 5, 6, 7, 8, 9, 10, 13, 20, 22, 24. The Discovery Requests are focused on the remaining issues: Abacus' control over Carlisle and the LLF-LTGF; its role in the redemption and liquidation process; the valuation and status of the Investors' shares; the calculation and distribution of liquidation proceeds; the fees charged during liquidation; and the adequacy and transparency of defendant's communications concerning redemptions and distributions. These issues are fundamentally relevant to the Investors' claims that Abacus breached its fiduciary duties to the Investors, engaged in unfair or deceptive conduct under

FDUTPA, and must provide an accounting of the Investors' shares, distributions, and future redemption plans. *See* Compl. ¶¶ 4, 7-8, 12-13, 25-34, 45-60, 67-79, 94-98, 113-18.

The Investors have a right to receive responsive documents produced in the ordinary manner required by the Federal Rules. Categorical withholding or redaction based on generalized GDPR objections is improper. *See Sowa*, 2025 WL 3143639, at *6. The specificity factor supports production under the Federal Rules.

### C. The Requested Discovery Concerns Abacus' U.S.-Based Conduct and Documents Within Its Possession, Custody, or Control

The third *Aérospatiale* factor also supports compelling production under the Federal Rules. To apply this factor, courts consider whether "the information concerns individuals and entities conducting business within the United States" and "may include communications between [foreign affiliates] and these individuals and entities." *See Vitality Sys.*, 2010 WL 11507286, at *3.

The Investors' Discovery Requests were properly directed to defendant Abacus, a Delaware corporation headquartered in Orlando, Florida. They concern Abacus' own role in the management, servicing, marketing, valuation, and liquidation of the LLF-LTGF after it acquired Carlisle. The Complaint alleges that Abacus acquired Carlisle in 2024, exercises control over Carlisle's operations, caused Carlisle to continue managing the LLF-LTGF as Abacus' agent and under Abacus' name, and published monthly LLF-LTGF newsletters to investors. *See* Compl. ¶¶ 4, 7-8, 17, 25-34.

The Discovery Requests are not aimed at a purely foreign transaction or at records uniquely maintained by a foreign non-party. They seek documents concerning Abacus' own personnel, internal communications, accounting records, audited financial statements, marketing materials, and post-acquisition fund-related activities. *See, e.g.*, **Ex. E**, Defendant's

13

Supplemental Responses to RFP Nos. 2, 12, 24, 26. Those categories concern Abacus' own conduct and its communications with Carlisle, LMA, fund service providers, investors, auditors, accountants, and other persons involved in the LLF-LTGF. To the extent responsive documents also involve Carlisle or other foreign entities, that does not turn the requests into foreign discovery that must proceed through the Hague Convention. Instead, the requests seek documents within Abacus' possession, custody, or control concerning the U.S.-based conduct and communications at issue.

The relevant inquiry is not whether every responsive document originated in the United States, but whether the discovery concerns U.S.-based conduct, U.S. entities, or communications involving those entities. Here, the requested discovery concerns ticks all those boxes. It inquires about Abacus' acquisition and control of Carlisle, Abacus' management and servicing of the LLF-LTGF, Abacus' Florida-based investor communications, and Abacus' accounting, valuation, and marketing activities regarding the fund. Resort to Hague Convention procedures is completely unnecessary and would only delay discovery from a party properly before the Court.

### D. The Investors Have No Other Means to Secure the Requested Information

As to the fourth *Aérospatiale* factor, courts consider whether the information sought is "unique" (*In re Photochromic Lens Antitrust Litig.*, 2012 WL 12904331, at *3 (M.D. Fla. 2012)); the proximity of any discovery deadline (*id.*); and the extent to which "any unproduced responsive documents" in a foreign corporation's possession are also in the possession of its domestic affiliate (*Vitality Sys.*, 2010 WL 11507286, at *4). Further, a plaintiff should secure responsive documents from a domestic defendant and, "[a]s for any other unproduced responsive documents in a [foreign defendant's] possession," that defendant must "demonstrate[] that the documents could be obtained from an alternate source." *Id.*

14

Here, the Discovery Requests target the LLF-LTGF, Abacus' and Carlisle's conduct, the Investors' repeated redemption requests, the liquidation process, the valuation of the Investors' shares, and the status of past and future distributions. Unless Abacus produces the requested documents, the Investors have no alternative means for obtaining this information. Incredibly, in responding to several requests, Abacus' fatuously asserts that the Investors are "better positioned to seek the relevant documentation, if it exists, directly from its source." *See*, *e.g.*, **Ex. E**, Defendant's Supplemental Responses to RFP No. 9 (requesting "[d]ocuments reflecting NAV calculations for LLF-LTGF since 2016"); No. 10 (requesting "[d]ocuments showing all distributions of liquidation proceeds to any investor by LLF-LTGF since 2016"). The "source" is Abacus, which owns and controls Carlisle.

In view of the fast-approaching October 2026 discovery cutoff, Abacus' dilatory and obstructive conduct amounts to an unlawful attempt to run out the clock. The Investors have no reasonable, timely, alternative source for the requested information. Thus, the fourth *Aérospatiale* factor weighs against requiring use of the Hague Convention.

### E.  *Abacus' Noncompliance Undermines Important United States Interests*

Under the fifth *Aérospatiale* factor, "the United States has a superior interest in documents created and/or possessed by [foreign litigants] regarding the agreements and activities of entities and individuals conducting business within the United States." *Vitality Sys.*, 2010 WL 11507286, at *4. Further, "[t]he [United States] has strong interests in enforcing its [. . .] laws and fairly adjudicating matters before its courts." *In re Photochromic*, 2012 WL 12904331, at *3. The fifth factor is generally recognized within this Circuit as the most important one. *See Sowa*, 2025 WL 3143639, at *6-7.

With regard to this factor, the Court's interest in the information responsive to the

15

Discovery Requests—including information that might be "protected data" under foreign law—outweighs the interests of any foreign nation. Abacus cannot show that any EU country has a significant interest in barring the transfer of data that is relevant and necessary in this U.S. litigation. *See Sowa*, 2025 WL 3143639, at *6.

All five *Aérospatiale* factors support compelling defendant's production of documents and information responsive to the Investors' Discovery Requests.

### III.   The Requested Documents Are Under Abacus' Control and Should Be Produced

Abacus repeatedly objects that it does not possess the requested documents or that they are "equally available" to the Investors. *See*, *e.g.*, **Ex. E**, Defendant's Supplemental Response to Interrogatory No. 4; Supplemental Responses to RFP Nos. 5, 6, 7, 8, 9, 10, 15, 16, 19, 20, 21, 24, 27. This is vaporous nonsense. Abacus *controls* the requested documents and information, despite arranging for all of it to be held by Carlisle.

It is beyond dispute that a party must produce documents within its possession, custody, or control, including documents it has the practical ability to obtain from subsidiaries and affiliated entities, agents, or service providers. *See Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016). "Control" does not require a party to have physical possession of documents at issue. Documents are under that party's control for discovery purposes when it has the right, authority, or practical ability to obtain them upon demand. *See id.*; *Costa v. Kerzner Intern. Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011). The *Costa* court required a U.S.-based defendant to obtain and produce documents held by its non-party foreign affiliate because Rule 34 "control" extends beyond physical possession and includes the legal right or practical ability to obtain documents upon demand. *Id*. The court rejected the argument that such discovery must use the Hague Convention, and ordered production under the Federal Rules

16

despite the documents' foreign location. *Id.* Further, the fact that a document might otherwise be available to the requesting party does not relieve the responding party of its duty to produce it. *E.g., Weaver v. Mateer & Harbert, P.A.*, 277 F.R.D. 655, 662 (M.D. Fla. 2011).

To evaluate "control," the court should consider: (1) the corporate structure of the party and the nonparties; (2) the nonparties' connection to the transaction at issue in the litigation; and (3) the degree to which the nonparties benefit from the outcome of the litigation." *Costa*, 277 F.R.D. at 471. All three factors are met here.

First, Abacus wholly owns Carlisle. "Where the relationship between the entities is that of a parent and its wholly-owned subsidiary in possession of the discovery, 'control' under Rule 34 is presumed by virtue of the corporate structure, and no further analysis is required." *Silver v. Tenet Health Care Corp.*, 2010 WL 11444064, at *3 (S.D. Fla. 2010); *accord  Platypus Wear, Inc. v. Clarke Modet & Co.*, 2007 WL 4557158, at *5 (S.D. Fla. 2007) ("Clarke, S.L.'s complete ownership of Clarke Brazil is sufficient to establish its legal right to control the documents of its subsidiary, without requiring additional proof of actual control [. . .]").

Second, Abacus and Carlisle are both linked to the LLF-LTGF. Carlisle was the fund manager of the very investment fund that is the subject of this litigation, which Abacus acquires and now services. Documents in Carlisle's possession relating to redemption requests, communications with the Investors, and fund management decisions (not already in the U.S.) are core records underlying the Investors' claims. As Carlisle's owner, nothing prevents Abacus from obtaining those documents on demand. *See Costa*, 277 F.R.D. at 471.

Moreover, as "providers of [ ] international financial services," Abacus and Carlisle have no doubt "shared responsive information and documents in the normal course of their business dealings." *See Sergeeva*, 834 F.3d at 1201. It is implausible that Abacus did not share and rely on

17

Carlisle documents to conduct pre-acquisition due diligence, continue servicing the LLF-LTGF post-acquisition, comply with U.S. regulatory obligations of publicly traded companies, and mount a defense in this litigation.

Abacus may rely on the inapposite case of *In re Vivendi Universal, S.A. Sec. Litig.*, 2009 WL 8588405 (S.D.N.Y. 2009). The court there credited *specific evidence* that Luxembourg bank secrecy laws prohibited an affiliate from providing documents and the parent lacked both the legal right and practical ability to obtain them. *Id.* at *2-3. Abacus has made no such showing. It generally asserted Luxembourg law as to six requests for production (Nos. 9, 11, 13, 14, 15, 24) and three interrogatories (Nos. 12, 16, 18). *See* Ex. E. During conferral Abacus admitted it is unaware of any *specific* documents it is barred from producing, and provided *no evidence* that it lacks the ability to obtain documents from its wholly owned subsidiary. Unlike *Vivendi*, where impossibility was established, Abacus makes only generalized assertions of burden under foreign law, which are insufficient, and at most could apply only to specific documents responsive to the requests objected to.

Abacus' admitted coordination with Carlisle and its status as sole shareholder demonstrate the practical ability to demand and obtain responsive documents, which satisfies Rule 34's control standard. Production should proceed immediately. *See* Middle District Discovery Handbook § III.A(13). Abacus should be required to produce all non-privileged documents responsive to the Investors' requests for production, and to respond to the Investors' interrogatories and requests for admission. Hiding behind Carlisle should immediately stop.

18

**IV.     Abacus' Evasive, Boilerplate Discovery Responses Violate the Federal Rules**

*A.  Abacus' Unilateral Time Limitation is Improper and Without Basis*

Abacus attempts to unilaterally limit discovery to a period beginning in December 2024, when it acquired Carlisle, and refuses to produce information predating that acquisition. This purported limitation is unwarranted and improper. The Investors' claims arise from misconduct that predates the acquisition, including redemption requests submitted in 2020 and 2022, as well as the handling of the Investors' funds during that period. Abacus' post-acquisition conduct cannot be understood or evaluated without considering pre-acquisition facts, particularly where Abacus now controls the relevant entities and information.

To the extent Abacus contends that materials predating its December 2024 acquisition of Carlisle are not in its possession, custody, or control, that position is neither clearly articulated in its discovery responses nor supported by the record. Abacus does not identify any specific categories of documents it cannot access, nor does it describe any efforts undertaken to obtain any responsive information from Carlisle or its agents. Instead, it hides behind a unilateral temporal limitation with no explanation. That is insufficient.

Plaintiffs have expressly alleged that Abacus necessarily conducted due diligence in connection with its acquisition of Carlisle, and acquired Carlisle with full knowledge of its operations, practices, and holdings. Comp. ¶ 33. The Complaint further alleges that Abacus now exercises complete control over Carlisle, that Carlisle operates as Abacus' agent, and that its assets, liabilities, employees, and investor communications have been subsumed by Abacus. Comp. ¶¶ 4, 7-8, 29-31. Having conducted due diligence and assumed operational control by servicing the fund, Abacus cannot now plausibly disclaim access to the very categories of information it necessarily reviewed, acquired, and now manages.

During the meet and confer process, Abacus proposed limiting its responsive time frame to the period from the Investors' redemption requests to the present, which the Investors accepted. Abacus then reneged on that agreement and rejected its own proposal. The Investors are willing to limit the discovery period to the period from 2020 to present, because that period captures the first redemption request in 2020, the renewed redemption requests in 2022, the September 2022 redemption-related announcement, the controlled liquidation process, Abacus' acquisition of Carlisle, and Abacus' post-acquisition conduct.

### B.   Abacus' Blanket Refusal to Produce Documents is Unlawful

Even aside from its baseless GDPR and control arguments, Abacus' responses to the Requests for Production are independently deficient. Rule 34 requires a responding party to state whether responsive materials are being withheld and to produce non-objectionable material. Fed. R. Civ. P. 34(b)(2)(C). Abacus did neither. It has produced *no documents* and has not identified anything being withheld. This alone warrants an order compelling production.

### C.   Abacus Must Provide Full, Substantive Answers to the Interrogatories

Abacus' interrogatory responses are non-answers. It provided no substantive information, and instead stated *seventeen times* that it is "willing to meet and confer" and *nine times* that its "investigation is ongoing." Rule 33 requires answers, not stalling maneuvers.

A party must answer interrogatories based on the information available to it at the time of the response. The mere possibility that additional information might later be discovered does not excuse failing to provide a complete answer now. *E.g.*, *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 230 F.R.D. 682, 685 (M.D. Fla. 2005) (The mere fact that a party might later supplement its interrogatory answers does not permit it to refuse to respond with whatever discoverable information it now possesses.).

To illustrate, Interrogatory No. 1 asks for identification of persons who communicated with the Investors regarding redemption requests. Abacus identifies no one. Interrogatory No. 2 asks for a detailed description of defendant's NAV calculation methodologies. Again, Abacus fails to answer. Interrogatory No. 3 asks for the reasons why the Investors redemption requests were not fulfilled. Defendant still fails to answer. These interrogatories go to the heart of the Investors' case.

Interrogatories seeking factual bases for key claims and defenses are expressly contemplated by Rule 33 and regularly compelled in complex commercial litigation. They should be compelled here. Abacus should be required to serve complete, verified answers to the interrogatories, providing the best information it has at this time, identifying any information not presently known, and later supplementing as required under Rule 26(e).

### D.  Abacus' Responses to the Requests for Admission Are Improperly Evasive

Abacus' responses to the Investors' Requests for Admission violate Rule 36. It frequently asserts that the requests are vague (RFA Nos. 2, 3, 5, 6, 7, 8, 9, 13, 15, 16, 17, 18, 20) or that it lacks information sufficient to admit or deny (RFA Nos. 2, 19, 20), without describing anything it did to conduct a reasonable inquiry. Fed. R. Civ. P. 36 ("The answering party may assert lack of knowledge or information as a reason for failing to admit or deny *only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny*.") (emphasis added). A party must conduct a reasonable inquiry and provide a clear admission or denial, or explain in detail why it cannot.

To illustrate, in response to Requests for Admission Nos. 2, 19, and 20, defendant claims it lacks sufficient information to admit or deny whether the Investors submitted redemption requests in September 2020 and July 2022—information that is central to the claims in this case,

which is readily ascertainable through reasonable inquiry, which Abacus had to learn from whatever due diligence it conducted into Carlisle, and which it has owned or controlled since acquiring Carlisle. *See Odom v. Roberts*, 337 F.R.D. 347, 351 (N.D. Fla. 2020). In *Odom*, the court found that a responding party "may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him." *Id.* A "reasonable inquiry" requires a good-faith effort to obtain information from sources within the party's control, which includes Carlisle.

Defendant should be required to serve amended responses to the Investors' requests for admission that comply with Rule 36 and provide non-evasive admissions or denials after reasonable inquiry. If it does anything else, the Court should deem those matters admitted.

### E.  Abacus' Boilerplate Objections Are Improper and Should Be Overruled

Defendant relies on identical, boilerplate, unsupported objections to nearly every request, asserting that they are "vague," "overbroad," "unduly burdensome," and "disproportionate," without making any effort to explain why that might be. These objections are insufficient as a matter of law. For example, a party must explain the specific "burden" imposed by a particular request and provide an objection tailored to it. *See, e.g.*, *L–3 Comms. Corp. v. Sparton Corp.*, 313 F.R.D. 661, 670 (M.D. Fla. 2015) (A party that believes a discovery request is unduly burdensome is obligated to explain why and identify evidence supporting that assertion.). Generalized, reflexive objections do not satisfy Rule 34 and provide no basis for the requesting party or the court to evaluate what is actually being withheld, or why.

This deficiency is particularly obvious in Abacus' responses that merely object to what it claims is a request's purported overbreadth (without stating why that might be), provides no substantive response at all (which is facially unlawful), and then refuses to do anything other

than "meet and confer" (which also is unlawful). Abacus did this throughout its responses to each type of discovery request. *See* **Ex. E**, Supplemental Responses to RFP Nos. 1-28, Interrogatories 1, 4, 6, 7, 8, 9, 10, 11, 13, 14, 15, 17, 19, 23, 24, 25; *see* **Ex. D**, Responses to RFA Nos. 2, 3, 5, 6, 7, 8, 9, 13, 15, 16, 17, 18, 20.

Because Abacus failed to provide any factual basis for its objections, failed to provide answers  to any interrogatory or request for admission, and failed to meaningfully engage in the conferral process, those objections should be overruled.

## CONCLUSION

Abacus has the duty and practical ability to substantively respond to the Investors' discovery requests and produce responsive documents, even if some information is held by Carlisle. It is wholly irrelevant that Carlisle is a foreign entity, and Abacus may not hide behind Carlisle, which it controls. The GDPR is irrelevant to this case and does not limit Abacus' discovery obligations. Even if it could apply, the GDPR's litigation exception in Article 49(1)(e) authorizes information transfer necessary for the establishment, exercise, or defense of legal claims. At bottom, there is no conflict or even antagonism between the GDPR and the Federal Rules. Further, all relevant international comity factors support disclosure here, and the Hague Convention is wholly irrelevant to this case against a Florida corporation hiding behind its wholly owned foreign subsidiary.

Accordingly, for all these good and sufficient reasons, Plaintiffs respectfully request an order (1) compelling Abacus to provide complete discovery responses and produce responsive documents that satisfy the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida, including its Handbook on Civil Discovery, (2) overruling Abacus' improper objections or deeming them waived, and (3) awarding the Investors the reasonable fees they

incurred in litigating this motion.

## LOCAL RULE 3.01(G) CERTIFICATE OF GOOD FAITH CONFERRAL

Pursuant to Local Rule 3.01(g), the undersigned certifies that it conferred with Defendant's counsel in a good faith effort to resolve the issues raised in this Motion. The parties conducted two substantive meet-and-confer conferences via Zoom on March 10, 2026 and April 13, 2026. During these conferences, Plaintiffs outlined the deficiencies in Defendant's responses to Plaintiffs' First Set of Interrogatories, Requests for Production, Requests for Admission, supplemental responses to the First Set of Interrogatories, and supplemental responses to the Requests for Production.

The parties were unable to resolve the issues presented in this Motion. Defendant maintains its objections and has refused to provide further supplemental responses or produce any documents. Accordingly, the relief sought in this Motion is opposed.

Date: May 19, 2026                              Respectfully submitted,

                                                **RIVERO MESTRE LLP**
                                                *Counsel for Ritz Investment Limited*
                                                *and Season Limited*
                                                2525 Ponce de Leon Blvd., Suite 1000
                                                Miami, Florida 33134
                                                Telephone: (305) 445-2500
                                                Facsimile: (305) 445-2505

                                                By: /s/ *Robert Kuntz*
                                                        ROBERT KUNTZ
                                                        Fla. Bar No. 94668
                                                        rkuntz@riveromestre.com
                                                        SYLMARIE TRUJILLO
                                                        Fla. Bar No. 112768
                                                        strujillo@riveromestre.com
                                                        HUGO MONTERO
                                                        Fla. Bar No. 1039275
                                                        hmontero@riveromestre.com

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 19, 2026, I electronically filed this document with the Clerk of the Court using CM/ECF. I also certify that this document is being served today on all counsel of record by transmission of Notices of Electronic Filing generated by CM/ECF.

By: _/s/ Robert Kuntz_
ROBERT KUNTZ