# Exhibit C

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

Case No. 6:25-cv-2047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

      Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

      Defendant.

## PLAINTIFFS' FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT

Plaintiffs Ritz Investment Limited and Season Limited, under Federal Rule of Civil Procedure 36, request defendant Abacus Global Management, Inc. ("Abacus") to admit or deny each of the requests set forth below.

## I.      DEFINITIONS

As used in these Requests for Admissions (the "Requests"), the following terms and words shall have the following meanings:

1.      "AIFM" shall mean alternative investment fund manager.

2.      "And" and "or" shall be both conjunctive and disjunctive; and "including" shall mean "including without limitation."

3.      "Any" shall include the word "all," and "all" shall include the word "any."

4.      "LLF-LTGF" shall mean Luxembourg Life Fund – Long Term Growth Fund.

5.      "Plaintiffs" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party shall mean the party and, where applicable, its officers, directors,

employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

6.      Wherever necessary to ensure completeness or accuracy of these Requests, the singular includes the plural and the plural includes the singular.

## II.      RELEVANT TIME FRAME

Unless specified in a particular Request, these Requests shall include and encompass all information for the period from 2016 to the present.

## III.      INSTRUCTIONS

1.      As to each statement, you shall specifically admit or deny the statement. If denied, the denial must fairly meet the substance of the requested admission. If you qualify your answer or deny any part of the matter for which admission is requested, you shall admit so much of the statement as is true and qualify or deny the remainder.

2.      If you object that a term or phrase is vague or ambiguous, you shall respond with its understanding of the term or phrase and specifically admit or deny the statement.

3.      These Requests are continuing in nature and require supplementation pursuant to the Federal Rules of Civil Procedure.

## IV.      INSTRUCTIONS

1.      Admit that Abacus is the AIFM and management company for LLF-LTGF.

2.      Admit that Plaintiffs submitted redemption requests in September 2020 and July 2022.

3.      Admit that Abacus has not fully redeemed Plaintiffs' investments.

4.      Admit that Abacus issued newsletters to LLF-LTGF investors without providing detailed liquidation timelines.

5. Admit that Abacus has retained funds belonging to Plaintiffs in excess of $16 million USD.

6. Admit that Abacus assumed all obligations of Carlisle Management Company after its acquisition in 2024.

7. Admit that Abacus has control over the assets of the LLF-LTFG.

8. Admit that Abacus has the authority to approve or deny redemption requests for LLF-LTGF.

9. Admit that Abacus has not provided Plaintiffs with a complete accounting of LLF-LTGF assets since September 2022.

10. Admit that Abacus represented to Plaintiffs that liquidation of LLF-LTGF would be completed within a specific timeframe.

11. Admit that Abacus did not meet the timeframe communicated to Plaintiffs for liquidation.

12. Admit that Abacus has continued to charge management or performance fees during the liquidation process.

13. Admit that Abacus has distributed liquidation proceeds to other investors while Plaintiffs' redemption requests remain unpaid.

14. Admit that Abacus has not provided Plaintiffs with monthly newsletters containing detailed liquidation progress.

15. Admit that Abacus has retained funds belonging to Plaintiffs without providing a legal justification for the delay.

16. Admit that Abacus has not provided Plaintiffs with audited financial statements for LLF-LTGF during liquidation.

17.     Admit that Abacus has represented to Plaintiffs that redemption delays were due to market conditions.

18.     Admit that Abacus has not provided Plaintiffs with documentation supporting its claim that market conditions caused redemption delays.

19.     Admit that Plaintiffs have deposited an aggregate of no less than $12.5 million into the LLF-LFGF from 2016 to present.

20.     Admit that LLF-LTGF has settled at least one substantial liquidity claim relating to the LLF-LFGF from 2016 to present.

Dated: January 30, 2026                     Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Ritz Investment Limited
and Season Limited*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: */s/ Robert J. Kuntz Jr.*
        ANDRÉS RIVERO
        Fla. Bar No. 613819
        arivero@riveromestre.com
        ROBERT J. KUNTZ JR.
        Fla. Bar No. 94668
        rkuntz@riveromestre.com
        SYLMARIE TRUJILLO
        Fla. Bar No. 112768
        strujillo@riveromestre.com
        HUGO A. MONTERO
        Fla. Bar No. 1039275
        hmontero@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, I served by email a copy of this document to counsel of record.

By: */s/ Robert J. Kuntz Jr.*
        ROBERT J. KUNTZ JR.

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

Case No. 6:25-cv-2047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

       Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

       Defendant.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Plaintiffs Ritz Investment Limited and Season Limited, requests under Rule 34 of the Federal Rules of Civil Procedure, that defendant Abacus Global Management, Inc. ("Abacus") produce the documents identified below within 30 days of service.

### I.     DEFINITIONS

As used in this request for production of documents (the "Request"), the following terms and words shall have the following meanings:

1.     "And" and "or" shall be both conjunctive and disjunctive; and "including" shall mean "including without limitation."

2.     "Any" shall include the word "all," and "all" shall include the word "any."

3.     "Communications" shall refer to any exchange or transmission of words or ideas to another person or entity, whether accomplished person to person, by telephone, in writing, by fax, by electronic mail or through another medium, and shall include, without limitation, discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, emails, faxes, and statements or questions.

4.      "Control" shall mean possessed by you, in your custody or control, or under your direction, and shall include under the possession, custody or control of persons under your direction, including your employees, subordinates, counsel, accountants, experts, agents, contractors, consultants, and any person or entity purporting to act on your behalf.

5.      "Date" shall mean the exact day, month, and year, if ascertainable, and if not, the best approximation thereof (based on its relationship to other events).

6.      "Document" shall mean any written, recorded or graphic matter, and all tangible things from which information can be processed or transcribed, and all copies containing additional matter, however produced or reproduced, of any kind and description, in your actual or constructive possession, custody, care, or control, that pertain directly or indirectly, in whole or in part, either to any of the subjects listed below or to any other matter relevant to this action, or which are themselves listed below as specific documents, including the following: communications; texts correspondence; memoranda, notes, messages, letters, facsimiles, emails, and any other types of electronic messages (including, but not limited to, text, instant message, and direct message); social media or other online content, geolocation data; data created in whole or in part without human authorship by artificial intelligence system or machine learning mode (including but not limited to generative algorithms, large language models, or automated content creation tools, regardless of its storage format or medium); data generated and stored by devices connected to the Internet of Things; communications generated and stored in workplace collaboration tools or ephemeral messaging applications; bulletins; diaries; chronological data; minutes; books; reports; charts; ledgers; invoices; worksheets; receipts; computer memory; word processing data; computer printouts; work-product schedules; account records; patents; licenses; legal pleadings or motions; minutes of directors' meetings; minutes of shareholders' or

2

other meetings; minutes of subsidiaries directors', shareholder', or other meetings; work assignments; transaction files; statistical records; financial records; bank records; security agreements; testing reports; newspaper or magazine articles; stories or clippings; affidavits; declarations; contracts; transcripts; surveys; graphic representations of any kind; photographs; graphs; microfilms; videotapes; tape recordings; motion pictures or other films; or information maintained in any electronic medium (including information found in computer hard drives, flash drives, USB drives, pocket drives, CDs, backup tapes, metadata, and pdfs). This also includes any and all files from any personal computer, notebook, or laptop computer, file server, minicomputer, main-frame computer, or other storage device, including but not limited to, hard disk drives or backup or retrieved electronic information, including but not limited to, e- mail, and all relevant files that are still on the storage media, but are identified as "erased but recoverable," or which are similarly identified. A draft or non-identical copy of a document is a separate document within the meaning of this term. This term also encompasses electronically stored information stored in any medium whatsoever from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form.

7.      "ESI" shall mean electronically-stored information and associated metadata.

8.      "LLF-LTGF" shall mean Luxembourg Life Fund – Long Term Growth Fund.

9.      "Plaintiffs" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party shall mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

3

10. "Relating to" and "relate to" shall mean directly or indirectly referring to, evidencing, discussing, defining, mentioning, reflecting, regarding, pertaining to, consisting of, concerning, recording, evaluating, or in any way logically or factually connected with the matter discussed or to which reference is made.

11. Wherever necessary to ensure completeness or accuracy of these document requests, the singular includes the plural and the plural includes the singular.

## I.    RELEVANT TIME FRAME

Unless specified in a particular request, these requests for production shall include and encompass all information for the period from 2016 to the present.

## II.    INSTRUCTIONS

1. These document requests are continuing in nature and, when previously unproduced documents to your attention, the response to the document request shall be supplemented.

2. The documents that are the subject of this discovery request are to be produced either (1) in the exact order in which they are kept in the ordinary course of business, or (2) classified according to the specific request(s) to which they are responsive.

3. To the extent that you do not have possession, custody, or control of any documents identified as responsive to a particular request here, please so indicate by writing "none" and explain the lack of possession, custody, existence or control of such responsive documents in your response.

4. All electronic documents and e-mails are requested to be produced in electronic format by a forensically-sound method, with all original metadata preserved and intact.

5. ESI should be produced as follows:

4

a.      E-mail, instant messaging, calendar, contacts, and word processing files must be derived from the original electronic media and converted to single-page .tiff images with accompanying system metadata, e.g. author, recipient(s), "cc" recipient(s), "bcc" recipient(s), date and time of creation and receipts, date and time of modification, etc. and substantive metadata (e.g., the substance of the changes, etc.), with all attachments. All chronological metadata shall be standardized to Eastern Standard Time. Plaintiff reserves the right to request native format production for ESI. On such request, you shall produce documents (identified by Bates number or range) in original native electronic format.

b.      Dynamic files (e.g., databases, spreadsheets, project files, etc.) shall be produced in original native format with all accompanying metadata, along with all such software necessary to interpret the produced information if such software is not readily commercially available.

c.      For all ESI not specified above, production shall be made in native format with all accompanying metadata, along with all software necessary to interpret the produced information if such software is not readily commercially available, unless plaintiff specifically agrees to a different form of production.

6.      If any document requested here previously was in your possession, custody, or control but is no longer, please state the following for each such document in your response:

a.      the type of document (e.g., correspondence, memorandum, e-mail, etc.);

b.      the date of the document;

c.      any and all persons who signed or authored the document;

d.      any and all persons who received the document or a copy of it, along with the date of receipt;

5

        e.      any and all persons now in possession of the document;

        f.      a description of the subject matter and the substance of the document that is as complete as possible; and

        g.      the disposition of the document (e.g. lost, discarded or destroyed), including the date of disposition.

7.      If any documents requested here have been lost, discarded or destroyed, these documents shall be identified as completely as possible, including:

        a.      the names of the authors of the document;

        b.      the names of the persons to whom the documents or copies were sent;

        c.      the date of the document;

        d.      the date on which the document was received by each addressee, co-payee or its recipients;

        e.      a description of the subject matter and the substance of the document that is as complete as possible;

        f.      the date on which the document was lost, discarded or destroyed; and

        g.      the manner in which the document was lost, discarded or destroyed.

8.      If you withhold production of a document requested here on grounds of privilege, work product, or on any other basis, please state the following, in a privilege log, for each document withheld:

        a.      the type of document (e.g., correspondence, memorandum, e-mail);

        b.      the date of the document;

        c.      the identity of any and all persons who signed, sent, or authored the document;

d. the identity of any and all persons who received the document or a copy of it;

e. the date on which the document was received by each addressee or recipient;

f. the reasons for non-production;

g. a brief description of the type and the substance of the document; and

h. the statute, rule, or decision that you claim gives rise to the basis to withhold.

### III. DOCUMENTS REQUESTED

1. All documents evidencing the acquisition of Carlisle Management Company ("Carlisle") by Abacus, including pre-acquisition due diligence into the LLF-LTGF, agreements, and closing documents.

2. All documents and internal communications reassigning Abacus employees to Carlisle and vice-versa.

3. All organizational charts and governance documents showing Abacus' and Carlisle's management structures and decision-making authority over LLF-LTGF post-acquisition.

4. All internal memoranda or reports discussing the impact of the acquisition on LLF-LTGF obligations.

5. All versions of the Placement Memorandum governing LLF-LTGF (including July 2022 version).

6. All communications between Abacus (or Carlisle) and LLF-LTGF investors regarding redemption requests since 2016.

7.      All communications, internal and with LLF-LTGF investors, discussing LLF-LTGF investors' redemption requests or liquidation status.

8.      Monthly newsletters or investor updates issued by Abacus or Carlisle since 2016.

9.      Documents reflecting NAV calculations for LLF-LTGF since 2016.

10.     Documents showing all distributions of liquidation proceeds to any investor by LLF-LTGF since 2016.

11.     Accounting records showing assets, liabilities, and reserves for LLF-LTGF during liquidation, including which company paid for such audits, since 2016.

12.     Documents, including internal accounting records from Carlisle and Abacus, evidencing performance fees or management fees charged during liquidation, including all information regarding who paid the performance and management fees, and to whom they were directed.

13.     All communications with CACEIS Bank, Union Bancaire Privée S.A. ("UBP"), LGT Bank (Switzerland) Ltd. ("LGT Bank"), or other agents regarding Plaintiffs' redemption requests.

14.     All communications between Abacus and any regulatory authority regarding LLF-LTGF liquidation or redemption delays.

15.     All audited financial statements for LLF-LTGF from 2016 to present.

16.     All documents reflecting any gating or liquidity restrictions imposed on LLF-LTGF investors during liquidation.

17.     All internal analyses or reports concerning market conditions cited as reasons for redemption delays.

18. All contracts or agreements with third-party service providers engaged in the liquidation process.

19. All versions of investor newsletters or updates issued since 2016 regarding LLF-LTGF liquidation.

20. All internal emails or correspondence discussing Plaintiffs' redemption requests or related complaints.

21. All documents evidencing reserves or holdbacks applied to LLF-LTGF assets during liquidation.

22. All documents evidencing any LLF-LTGF liquidation settlements, including but not limited to correspondence, demand resolution agreements, and party names.

23. All documentation and correspondence with consultants, accounting firms, or internal appraisers detailing an appraisal or analysis of LLF-LTGF's value.

24. All audited financial statements for Carlisle, Abacus, and the LLF-LTGF since 2016.

25. All documents relating to litigation involving Tim Mol at both Abacus and any prior fund.

26. All internal communications and documentation concerning marketing efforts, including materials and their placement used to raise money for the LLF-LTGF.

27. All documents relating to cross-border financial investment marketing.

28. All minutes of directors', shareholders', or other meetings where discussions regarding the LLF-LTGF were held.

Dated: January 30, 2026

Respectfully submitted,

**RIVERO MESTRE LLP**
*Counsel for Ritz Investment Limited
and Season Limited*
2525 Ponce de Leon Blvd., Suite 1000
Miami, Florida 33134
Telephone: (305) 445-2500
Facsimile: (305) 445-2505

By: */s/ Robert J. Kuntz Jr.*
  ANDRÉS RIVERO
  Fla. Bar No. 613819
  arivero@riveromestre.com
  ROBERT J. KUNTZ JR.
  Fla. Bar No. 94668
  rkuntz@riveromestre.com
  SYLMARIE TRUJILLO
  Fla. Bar No. 112768
  strujillo@riveromestre.com
  HUGO A. MONTERO
  Fla. Bar No. 1039275
  hmontero@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, I served by email a copy of this document to counsel of record.

By: */s/ Robert J. Kuntz Jr.*
  ROBERT J. KUNTZ JR.

10

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

Case No. 6:25-cv-2047-JSS-RMN

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

      Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

      Defendant.

## PLAINTIFFS' FIRST SET OF INTERROGATORIES TO DEFENDANT

Plaintiffs Ritz Investment Limited and Season Limited, under Federal Rule of Civil Procedure 33, request that defendant Abacus Global Management, Inc. ("Abacus") respond to each of the following interrogatories in writing and under oath, within thirty days of service.

## I.     DEFINITIONS

As used in these interrogatories (the "Interrogatories"), the following terms and words shall have the following meanings:

1. ""AIFM" shall mean alternative investment fund manager.

2. "And" and "or" shall be both conjunctive and disjunctive; and "including" shall mean "including without limitation."

3. "Any" shall include the word "all," and "all" shall include the word "any."

4. "LLF-LTGF" shall mean Luxembourg Life Fund – Long Term Growth Fund.

5. "Communications" shall refer to any exchange or transmission of words or ideas to another person or entity, whether accomplished person to person, by telephone, in writing, by fax, by electronic mail or through another medium, and shall include, without limitation,

discussions, conversations, negotiations, conferences, meetings, speeches, memoranda, letters, correspondence, notes, emails, faxes, and statements or questions.

6.      "Document" means any written, recorded or graphic matter, whether produced, reproduced, or stored on paper, cards, tapes, film, electronic facsimile, computer storage devices, or any other media, and includes, but is not limited to originals, copies and drafts, including, but not limited to: paper, books, letters, photographs, images, video, statements, of account, financial statements and data, balance sheets, profit and loss statements and other financial analysis, bills, invoices, receipts, photographed objects, tangible things, correspondence, telegrams, cables, telex manager, memoranda, notes, notations, work papers, transcripts, minutes, reports, and records of telephone or other conversations, or of interviews, of conferences, or of other meetings, affidavits, statements, summaries, opinions, reports, studies, analyses, evaluations, contracts, agreements, journals, press releases, statistical records, desk calendars, appointment books, diaries, lists, tabulations, summaries, sound recordings, computer print-outs, data processing in-put and out-put, microfilms, and other records kept by electronic, photographic or mechanical means, and anything similar to any of the foregoing, however denominated. This also includes any and all files from any personal computer, notebook, or laptop computer, file server, minicomputer, main-frame computer, or other storage device, including but not limited to, hard disk drives or backup or retrieved electronic information, including but not limited to, e-mail. All relevant files that are still on the storage media, but are identified as "erased but recoverable," or which are similarly identified, are to be included.

7.      "Identify", when used in reference to a document, shall mean and include the name and address of the custodian of the document, the location of the document, and a general description of the document, including:

2

a.   the type of document (i.e., correspondence, memorandum, telex, etc.);

b.   the general subject matter of the document;

c.   the date of the document;

d.   the author of the document;

e.   the addressee of the document; and

f.   the relationship of the author and addressee to each other.

8.     "Identify" with respect to a person shall mean to provide, to the extent known, the person's full name, job title, present or last known address, and when referring to a natural person, the present or last known place of employment.

9.     "Person" shall mean a natural person acting as an individual, a group of individuals acting in a collegial, business or group capacity (e.g., as a board of directors or committee), or a business, corporation, proprietorship, partnership, trust, association, or any governmental, juridical, or other entity.

10.    "Plaintiffs" and "defendant" as well as a party's full or abbreviated name or pronoun referring to a party shall mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

11.    Wherever necessary to ensure completeness or accuracy of these Interrogatories, the singular includes the plural and the plural includes the singular.

## II.    DEFINITIONS

Unless specified in a particular Interrogatory, these Interrogatories shall include and encompass all information for the period from 2016 to the present.

3

### III.    INSTRUCTIONS

1.    In answering these Interrogatories, you are required to furnish information not only within your own knowledge or obtainable by you, but also any information or knowledge in the possession of or obtainable by your attorneys, representatives, agent or anyone acting on your behalf.

2.    If you cannot answer the following Interrogatories in full, after exercising due diligence to secure the information to do so, state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portion.

3.    If any of your answers to these Interrogatories, or sub-parts thereof, make reference to a document or documents, attach a copy or copies of the document or documents to your answer.

4.    If you object to fully identifying a document or oral communication because of a privilege, you must nevertheless provide the following information unless divulging the information would disclose the privileged information:

a.    the nature of the privilege claimed (including work product);

b.    if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked;

c.    the date of the document or oral communication;

d.    if a document: its type (correspondence, memorandum, facsimile, etc.), custodian, location, and such other information sufficient to identify the document for a subpoena duces tecum or a document request, including where appropriate the author, the addressee, and, if not apparent, the relationship between the author and addressee;

e.      if an oral communication: the place where it was made, the names of the persons present while it was made, and, if not apparent, the relationship of the persons present to the declarant; and

f.      the general subject matter of the document or oral communication.

5.      You are under a continuous obligation to supplement your answers to these Interrogatories should additional information become known to you, or the circumstances change.

## IV.    INTERROGATORIES

1.      Identify all persons involved in communications with Plaintiffs regarding redemption requests from 2016 to present.

2.      Describe in detail the process for calculating NAV for LLF-LTGF during each liquidation cycle, including all methodologies and valuation adjustments. If calculation methods differed during the different liquidation cycles, or from other funds, specify why new approaches were taken and how the multiple approaches vary.

3.      State all reasons why Plaintiffs' redemption requests were denied and not redeemed in full.

4.      Identify all distributions made to Plaintiffs and other LLF-LTGF investors, specifying their nationalities, since 2016, including dates, amounts, and NAV applied.

5.      Describe the relationship between Abacus' and Carlisle's management teams, both pre- and post-acquisition, with special attention placed on their relationship during the LLF-LTGF disclosure process, and explain Abacus' role and responsibilities as AIFM and management company for LLF-LTGF after acquiring Carlisle. Identify all relevant staff members.

6. Identify all communications sent to all LLF-LTGF investors regarding liquidation, redemption timelines, and NAV since 2016.

7. Identify all performance fees, management fees, or other charges assessed against Abacus, Carlisle, or LLF-LTGF during liquidation, including all entities and individuals, and, if so, provide amounts, dates, and justification.

8. Describe any gating, suspension, or liquidity management measures applied to LLF-LTGF since 2016.

9. Identify any funds managed by Carlisle that experienced gating, suspension, or liquidity management measures since 2016.

10. Identify all persons, specifying said persons' employer (Abacus, Carlisle, or third-party) when such decisions were made, and their employer today, who participated in the decision to suspend or delay redemptions for LLF-LTGF.

11. Describe in detail all communications with CACEIS Bank, Union Bancaire Privée S.A. ("UBP"), and LGT Bank (Switzerland) Ltd. ("LGT Bank") regarding Plaintiffs' redemption requests, including dates and participants.

12. State the total amount of assets currently held by LLF-LTGF and the location of those assets.

13. Identify all other liquidation requests, and whether completed or denied, from 2016 onwards, and state whether Abacus has received any complaints from other investors regarding delayed redemptions, and if so, describe the nature of those complaints.

14. Identify all third-party service providers involved in the liquidation process of LLF-LTGF, describe their roles, and whether they were paid by Carlisle or Abacus.

15.     Describe any internal policies or procedures governing redemption requests during liquidation, including any gating or liquidity restrictions imposed on LLF-LTGF investors during liquidation and the reasons for imposing them..

16.     State whether Abacus has made any representations to regulators regarding the status of LLF-LTGF liquidation, and if so, describe those representations.

17.     Identify all audits or financial reviews conducted on LLF-LTGF since 2016, including the names of the auditing firms, dates of audits, and whether such services were paid for by Abacus or Carlisle.

18.

19.     Identify all internal reports or analyses prepared by Abacus concerning the impact of market conditions on LLF-LTGF liquidation.

20.     Describe in detail all steps Abacus took by way of due diligence before acquiring Carlisle and identify all person who conducted said due diligence.

21.     Describe in detail any LLF-LTGF liquidation settlements, including but not limited to party names and liquidation terms.

22.     State all LLF-LTGF investors, redeemed parties (with date of redemption), and affiliates and related parties classified by their investment's status of redeemed or still invested.

23.     State all partners, employees, accounting firms, and financial consultants, both internal and external, involved in auditing, valuing, and preparing tax returns for Carlisle and Abacus, including fees paid to contractors since the LLF-LTGF's founding.

24.     State all litigation involving Abacus and Carlisle's partners at both their present and prior funds, along with all law firms hired by Abacus and Carlisle.

7

25.    Identify all marketing efforts, including materials, distribution channels, and placement of such materials, including country of publication, used to raise money for the LLF-LTGF, and where Carlisle and Abacus funds, including the LLF-LTGF, were marketed.

Dated: January 30, 2026                    Respectfully submitted,

                                           **RIVERO MESTRE LLP**
                                           *Counsel for Ritz Investment Limited*
                                           *and Season Limited*
                                           2525 Ponce de Leon Blvd., Suite 1000
                                           Miami, Florida 33134
                                           Telephone: (305) 445-2500
                                           Facsimile: (305) 445-2505

                                           By: */s/ Robert J. Kuntz Jr.*
                                               ANDRÉS RIVERO
                                               Fla. Bar No. 613819
                                               arivero@riveromestre.com
                                               ROBERT J. KUNTZ JR.
                                               Fla. Bar No. 94668
                                               rkuntz@riveromestre.com
                                               SYLMARIE TRUJILLO
                                               Fla. Bar No. 112768
                                               strujillo@riveromestre.com
                                               HUGO A. MONTERO
                                               Fla. Bar No. 1039275
                                               hmontero@riveromestre.com

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, I served by email a copy of this document to counsel of record.

                                           By: */s/ Robert J. Kuntz Jr.*
                                               ROBERT J. KUNTZ JR.

8