# Exhibit E

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| RITZ INVESTMENT LIMITED,<br>SEASON LIMITED,<br><br>            Plaintiffs,<br><br>    v.<br><br>ABACUS GLOBAL MANAGEMENT,<br>INC.,<br><br>            Defendant. | Case No. 6:25-cv-2047-JSS-RMN |

**DEFENDANT'S AMENDED RESPONSES AND OBJECTIONS TO PLAINTIFFS'
FIRST SET OF INTERROGATORIES**

In accordance with Federal Rules of Civil Procedure 26 and 33, Defendant Abacus Global

Management, Inc. ("Abacus") hereby provides amended responses and objections to Plaintiffs Ritz

Investment Limited and Season Limited's ("Plaintiffs") First Set of Interrogatories, dated January

30, 2026 (the "Interrogatories").

**GENERAL OBJECTIONS**

1.      Any indication that Abacus will produce documents or disclose information in

response to an Interrogatory is not intended as a representation that Abacus agrees to the

characterization of facts or events as set forth by Plaintiffs in the Interrogatory or that such

documents exist or are in Abacus's possession, custody, or control.

2.      Abacus objects to the Interrogatories to the extent that they seek private, business

confidential, proprietary, commercially sensitive, or personal information.  Any such information

disclosed to Plaintiffs shall be pursuant to a confidentiality agreement to be agreed upon by and

1

between Abacus and Plaintiffs.

3.      Abacus objects to the Interrogatories insofar as they purport to assume disputed facts or facts that are inaccurate, call for or assume legal conclusions, are argumentative, or are otherwise defective in form.  Abacus hereby denies any such disputed or inaccurate facts or legal conclusions that are or may be assumed by the Interrogatories, Definitions, or Instructions.

4.      Abacus objects to each Interrogatory to the extent that it calls for legal conclusions or opinions or makes erroneous statements of law or requires Abacus to perform a legal analysis. Abacus's response herein shall be only as to matters of fact, and shall not be construed as stating or implying any conclusions of law concerning the matters referenced in any Request.

5.      Abacus objects to the Interrogatories to the extent they seek information regarding matters that are neither relevant to the claims or defenses of any party nor proportional to the needs of the action.

6.      Abacus objects to the Interrogatories to the extent they seek information or documents that are a matter of public record equally accessible and/or ascertainable to Plaintiffs or that otherwise can be obtained more readily from a source other than Abacus (including, but not limited to, information that is currently within Plaintiffs' control).

7.      Abacus objects to each Interrogatory to the extent it purports to require Abacus to provide information or documents in the possession, custody, or control of persons or entities other than Abacus.

8.      Abacus objects to the Interrogatories to the extent they call for information that is not known or reasonably available to Abacus.

9.      Abacus objects to each Interrogatory to the extent that it is duplicative or redundant of other requests or interrogatories.

10.      Abacus objects to the Interrogatories, including to the Definitions and Instructions contained therein, to the extent they seek to impose obligations on Abacus beyond those required by the Local Rules of the United States District Court for the Middle District of Florida and the Federal Rules of Civil Procedure.  Abacus's responses to the Interrogatories will be made in accordance with those rules, and any Court orders relevant to the proper scope, timing, and extent of discovery in this action.

11.      Abacus objects to the Interrogatories to the extent they seek information that is protected from discovery by the attorney-client privilege, work-product doctrine, or any other privilege or immunity recognized in law or equity (collectively, "Privileged Information"). Abacus hereby asserts all applicable privileges and protections and will exclude Privileged Information necessary for any response.

12.      Abacus objects to the Interrogatories to the extent that they seek information in Abacus's possession that is the confidential, proprietary, and/or trade secret information of a third party. Abacus will provide such information only to the extent it can do so in a manner consistent with its legal or contractual obligations to any third parties.

13.      Abacus objects to the Interrogatories to the extent that they presuppose that this Court is the appropriate forum and that U.S. law governs Plaintiffs' claims.  LLF-LTGF is a fund domiciled in Luxembourg, governed by Luxembourg law, managed by a Luxembourg AIFM, and subject to oversight by the Commission de Surveillance du Secteur Financier.  Plaintiffs are registered Gibraltar entities that invested through intermediaries located outside the United States. Abacus contends that no material events giving rise to Plaintiffs' claims occurred in the United States.  The proportionality calculus under Fed. R. Civ. P. 26(b)(1) weighs heavily against imposing the burden of broad U.S.-style discovery in a matter where the governing law, the

3

relevant witnesses, the relevant documents, and the relevant regulators are, all located outside the United States.

14.     Abacus objects to the Interrogatories to the extent responding would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

15.     Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

16.     GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data

be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  To the extent Plaintiffs' Interrogatories seek the identities, nationalities, financial information, transaction histories, or other personal data of non-party investors, service providers, or employees, compliance would be incompatible with this principle and would require Abacus to process and disclose the personal data of individuals who are not parties to this action, without their consent under GDPR Article 6(1)(a) and without a demonstrated lawful basis under Article 6(1).  Abacus reserves its objections on this basis as to each Interrogatory to which GDPR restrictions apply.

17.    Abacus objects on the grounds that Plaintiffs' Interrogatories exceed the 25-interrogatory limit imposed by Fed. R. Civ. P. 33(a)(1).  When discrete subparts of the Interrogatories are properly counted, the total number of Interrogatories exceeds the allotted 25.  The parties have not stipulated to additional Interrogatories, nor have Plaintiffs sought leave to serve them.

18.    The failure of Abacus to make a specific objection to an Interrogatory is not, and shall not be construed as, an admission that responsive information or documents exist.  Likewise, any statement herein that Abacus will provide information or produce documents in response to an Interrogatory does not mean that Abacus has such information or documents, or that such information or documents exist.  Rather, any such statement reflects Abacus's intentions, subject to its general and specific objections, to conduct a reasonable search for responsive documents and information from the sources within its possession, custody, or control.

19.    To the extent Abacus responds to part or all of an Interrogatory, Abacus's response is not intended to and shall not be construed as a waiver by Abacus of any objection to such Interrogatory.

20.    These Responses and Objections reflect Abacus's present knowledge, information, and belief, and may be subject to modification based on facts and circumstances that may come to Abacus's attention, further discovery, or subsequent case developments.  Abacus reserves the right to alter, supplement, amend, or otherwise modify its Objections and Responses to the Interrogatories.

## SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.    Abacus objects to Plaintiffs' definition of "defendant" as it includes the undefined terms "officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." "defendant" is overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent it purports to require collection and/or production of documents or information from undefined subsidiaries or affiliates of Abacus, Abacus interprets Plaintiffs' definition of "defendant" as referring solely to Abacus Global Management, Inc.

2.    Abacus objects to Plaintiffs' definition of "Plaintiffs" as it includes the undefined terms "officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." Abacus interprets Plaintiffs' definition of "Plaintiffs" as referring to Ritz Investment Limited and Season Limited.

3.    Abacus objects to Plaintiffs' definition of "AIFM" to the extent it includes or refers to any entity other than Carlisle Management Company S.C.A. ("Carlisle"). Abacus interprets Plaintiffs' definition of "AIFM" as referring solely to Carlisle.

4.    Abacus objects to Plaintiffs' definition of "Communications" because "without limitation" and "through another medium" render the definition boundless and disproportional to any reasonable burden consistent with FRCP 26(b)(1).  To the extent the definition reaches communications involving Carlisle personnel, Carlisle's EU-based business operations, or any

6

natural persons located in the European Union, production of those "communications" constitutes a transfer of personal data under GDPR Article 4(1) and implicates the transfer restrictions of GDPR Articles 44–49. A definition this broad—covering all exchanges with no geographic, temporal, or subject-matter limitation—makes it impossible for Abacus to evaluate its GDPR compliance obligations before responding, particularly given that Abacus did not acquire Carlisle until late 2024 and has limited visibility into pre-acquisition communications involving EU data subjects.

5.    Abacus objects to Plaintiffs' definition of "Document" to the extent it is functionally boundless and exceeds the proportionality requirement of FRCP 26(b)(1), particularly because examining "erased but recoverable" data, if deleted pursuant to GDPR Article 17's Right to be Forgotten, would directly violate foreign law. More generally, to the extent the definition includes information relating to an identified or identifiable EU person, the definition's overbreadth affords Abacus no mechanism by which to segregate or otherwise distinguish protected from non-protected material before production.

6.    Abacus objects to Plaintiffs' definitions of "Identify" to the extent they would require disclosure of personal data protected under GDPR Article 4(1), including the names, addresses, employment information, and organizational relationships of natural persons associated with Carlisle's operations who are or were located in the EU. Compelling Abacus to compile and produce such a roster constitutes processing and cross-border transfer of personal data for purposes incompatible with the purposes for which it was originally collected, in violation of GDPR Article 5(1)(b), and without a lawful transfer mechanism as required by GDPR Article 48 and Chapter V. Abacus will provide identifying information to the extent it can do so without disclosing GDPR-protected personal data of EU natural persons, and will meet and confer regarding appropriate

7

anonymization, redaction, or other protective protocols for any identification that would otherwise require such disclosure.

7.      Abacus objects to Plaintiff's definition of "LLF-LTGF" as an oversimplification inconsistent with its characterization in the Private Placement Memorandum.  Abacus interprets LLF-LTGF as a specialized "alternative investment fund" created, organized, and governed by the laws of Luxembourg, including associated rules and regulations, that is managed by Carlisle, the AIFM.

8.      Abacus objects to Plaintiffs' definition of "Person" the extent that its inclusion of natural persons, when combined with the definition of "Identify" and the interrogatories incorporating both, would require Abacus to compile and disclose personal data of EU-based natural persons, including employees, officers, and agents of Carlisle, in violation of GDPR Article 4(1) and the purpose limitation and transfer restrictions of Articles 5(1)(b) and 48.  Abacus does not object to the definition as applied to corporate or juridical entities, and will respond accordingly as to such entities while reserving this objection as to any natural person whose personal data is protected under applicable EU data protection law.

9.      Abacus objects to Defendants' Instructions 1-5 on the grounds that "you" is undefined, and the term is therefore vague and ambiguous, particularly to the extent it purports to require collection and/or production of documents or information from undefined subsidiaries or affiliates of Abacus.  Abacus with interpret "you" as referring solely to Abacus only.

10.     Abacus objects to Defendants' Instructions 1-5 to the extent they impose greater burdens on Abacus than what is required by the Federal Rules of Civil Procedure.  Abacus will furnish non-privileged information or produce non-privileged documents within Abacus's possession, custody, or control and responsive to Plaintiffs' Interrogatories, subject to and without

8

waiver of objections.

11.    Abacus objects to Instructions 1-5 to the extent that they presuppose that this Court is the appropriate forum and that U.S. law governs Plaintiffs' claims.  LLF-LTGF is a fund domiciled in Luxembourg, governed by Luxembourg law, managed by a Luxembourg AIFM, and subject to oversight by the Commission de Surveillance du Secteur Financier.  Plaintiffs are registered Gibraltar entities that invested through intermediaries located outside the United States. Abacus contends that no material events giving rise to Plaintiffs' claims occurred in the United States.  The proportionality calculus under Fed. R. Civ. P. 26(b)(1) weighs heavily against imposing the burden of broad U.S.-style discovery in a matter where the governing law, the relevant witnesses, the relevant documents, and the relevant regulators are, all located outside the United States.

### SPECIFIC OBJECTION TO RELEVANT TIME FRAME

1.    Abacus objects to Plaintiffs' identified time "period" under "II. Definitions" to the extent Plaintiffs seek information from "the period from 2016 to the present," on the grounds that such a time period that is overbroad, unduly burdensome, and disproportionate to the needs of the case.  Abacus acquired Carlisle in 2024 and so Plaintiffs' "period" extends beyond the time period covered by Abacus's acquisition of Carlisle.  Abacus interprets the relevant time "period" to include the period from December 2024 to January 30, 2026 (the date Plaintiffs served their Interrogatories on Abacus).

### OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES

### INTERROGATORY NO. 1:

Identify all persons involved in communications with Plaintiffs regarding redemption requests from 2016 to present.

### RESPONSE TO INTERROGATORY NO. 1:

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks the identity of "[a]ll persons involved in communications with Plaintiffs" including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the timeframe of this Interrogatory as overbroad and not relevant to the claims and defenses in this action.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory on the grounds that such information is already within Plaintiffs' possession, custody, or control, as Plaintiffs know who they communicated with at Carlisle concerning Plaintiffs' purported "redemption requests." *See, e.g.*, Amended Complaint ¶ 56.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not

10

Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is

11

processed.  This Interrogatory seeks identification of "all persons" involved in communications regarding redemption requests over a nearly ten-year period spanning multiple entities and multiple EU/EEA jurisdictions.  To the extent responsive information exists, compliance would require Abacus to identify and disclose the names, roles, and employer affiliations of individuals— potentially including employees of Carlisle, CACEIS Bank, and other Luxembourg- and EU-based service providers—who are not parties to this action and who have not consented to disclosure of their personal data for purposes of U.S. litigation.  The sweeping temporal scope and lack of any limitation on category of "persons" magnifies the data minimization concern, as compliance would necessitate processing the personal data of an indeterminate number of EU/EEA data subjects with no demonstrated necessity tying each individual's data to Plaintiffs' specific claims.  Compliance with this Interrogatory as written is incompatible with GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus responds as follows:  To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records.  Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer.  Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing.  Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 2:**

Describe in detail the process for calculating NAV for LLF-LTGF during each liquidation cycle, including all methodologies and valuation adjustments. If calculation methods differed during the different liquidation cycles, or from other funds, specify why new approaches were taken and how the multiple approaches vary.

**RESPONSE TO INTERROGATORY NO. 2:**

Abacus objects on the grounds that Plaintiffs' Interrogatories exceed the 25-interrogatory limit imposed by Fed. R. Civ. P. 33(a)(1), in part because this Interrogatory contains at least three discrete subparts:  describing the NAV calculation process, explaining differences among liquidation cycles, and comparing to other funds.  Abacus reserves the right to decline to answer interrogatories that exceed the numerical limit.

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and

13

regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Subject to and without waiver of the above objections, Abacus responds as follows:  To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records.  Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer.  Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing.  Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 3:**

State all reasons why Plaintiffs' redemption requests were denied and not redeemed in full.

**RESPONSE TO INTERROGATORY NO. 3:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent it assumes as established fact that

14

Plaintiffs' redemption requests "were denied and not redeemed in full." This characterization presupposes that Plaintiffs had a contractual or legal entitlement to redeem, that cognizable redemption requests were made, and that such requests were improperly denied—factual and legal conclusions that are disputed and that Abacus does not concede. The Interrogatory as framed would require Abacus to adopt Plaintiffs' characterization of events as a premise for its response, which is improper. *See* Middle District Discovery (2021) § IV(A)(3) (interrogatories "should be interpreted reasonably, in good faith, and according to the meaning the plain language of the interrogatory would naturally import"); Fed. R. Civ. P. 33(a)(2) (interrogatories may relate to "facts" or "the application of law to fact," but may not compel adoption of disputed premises). To the extent Abacus responds, its response should not be construed as an admission that redemption requests were made, denied, or not redeemed in full, or that Abacus bore any obligation with respect to such requests.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and

15

regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that this Interrogatory is an improper contention interrogatory that seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2) (interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete factual issues rather than requiring a comprehensive narrative of Abacus's defenses. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 4:**

Identify all distributions made to Plaintiffs and other LLF-LTGF investors, specifying their nationalities, since 2016, including dates, amounts, and NAV applied.

**RESPONSE TO INTERROGATORY NO. 4:**

Abacus objects that this Interrogatory seeks information that is already within Plaintiffs'

possession or equally accessible to Plaintiffs. Plaintiffs' own Complaint demonstrates familiarity with the subject matter of this request. *See* Amended Complaint ¶¶ 63-71 (identifying distributions received by Plaintiffs). To the extent Plaintiffs possessed sufficient information to plead these allegations with particularity, that information is necessarily within their own custody or obtainable from their own records, advisors, or intermediary banks. Requiring Abacus to compile and verify information that Plaintiffs already possess, or can obtain from sources within their control, imposes unnecessary burden and expense and is disproportionate to the needs of the case. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all distributions" and "investors" including from a timeframe not relevant to the claims and defenses in this litigation. Abacus will interpret this Interrogatory to mean "Unitholders" in the LLF-LTGF, as defined in the Private Placement Memorandum.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information

17

that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or

18

defence of legal claims," this derogation is interpreted narrowly under European Data Protection

Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data

in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must

be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to

an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be

"adequate, relevant and limited to what is necessary" in relation to the purposes for which it is

processed. This Interrogatory seeks identification of distributions made to all LLF-LTGF investors

over a nearly ten-year period, including individualized transaction amounts, dates, and NAV

figures. To the extent responsive information exists, compliance would require Abacus to compile

and disclose the financial transaction histories of every investor in a Luxembourg-domiciled

fund—non-party individuals and entities who have no connection to this litigation and have not

consented to disclosure of their financial information to Plaintiffs or to transfer of that data to the

United States. Compliance with this Interrogatory as written is incompatible with GDPR Article

5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Abacus further objects to this Interrogatory to the extent it requests identification of the

nationalities of non-party investors. To the extent such information exists in Abacus's possession,

its provision would constitute processing of sensitive personal data. Combining nationality with

investment and transaction data would create detailed financial profiles of identifiable EU/EEA

natural persons. This is precisely the type of bulk processing that GDPR Article 5(1)(c) prohibits

absent a demonstrated necessity.

Subject to and without waiver of the above objections, Abacus responds as follows: To

the extent non-privileged, responsive information exists within Abacus's possession, custody, or

19

control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records. Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer. Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing. Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 5:**

Describe the relationship between Abacus' and Carlisle's management teams, both pre- and post-acquisition, with special attention placed on their relationship during the LLF-LTGF disclosure process, and explain Abacus' role and responsibilities as AIFM and management company for LLF-LTGF after acquiring Carlisle. Identify all relevant staff members.

**RESPONSE TO INTERROGATORY NO. 5:**

Abacus objects on the grounds that Plaintiffs' Interrogatories exceed the 25-interrogatory limit imposed by Fed. R. Civ. P. 33(a)(1), in part because this Interrogatory contains at least four discrete subparts: describing the Abacus-Carlisle management relationship, explaining Abacus's role as AIFM, identifying staff, and distinguishing pre- vs. post-acquisition. Abacus reserves the right to decline to answer interrogatories that exceed the numerical limit.

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case, including to the extent it seeks information from a timeframe not relevant to the claims and defenses in this litigation, to the extent its compound questions would circumvent the cap of 25 interrogatories permitted by the Federal Rules, and to the extent it presupposes a roles and responsibilities Abacus does not concede and expressly

20

contests.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control. To the extent this Interrogatory seeks a description of the relationship between Abacus and Carlisle's management teams "pre-acquisition," Abacus objects that it lacks knowledge sufficient to respond regarding Carlisle's internal management structure and operations prior to the acquisition, as no legal relationship between Abacus and Carlisle existed before late 2024.

Abacus further objects that this Interrogatory is an improper contention interrogatory that seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2) (interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete factual issues rather than requiring a comprehensive narrative of Abacus's defenses. To

21

the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond

or object at that time.  Abacus further reserves the right to supplement this response pursuant to

Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 6:**

Identify all communications sent to all LLF-LTGF investors regarding liquidation, redemption timelines, and NAV since 2016.

**RESPONSE TO INTERROGATORY NO. 6:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

disproportionate to the needs of the case to the extent it seeks information regarding "all

communications" including from a timeframe not relevant to the claims and defenses in this

litigation.  Abacus further objects to this Interrogatory as overbroad, vague, and ambiguous on the

grounds that "investors" is undefined.   Abacus will interpret this Interrogatory to mean

"Unitholders" in the LLF-LTGF, as defined in the Private Placement Memorandum.

Abacus further objects to production of documents Plaintiffs have already acknowledged,

through reference in the Amended Complaint, that they have in their possession, custody, and

control.  *See* Amended Complaint ¶¶ 45, 59-73, 75-77, 90.  To the extent Plaintiffs possessed

sufficient information to plead these allegations with particularity, that information is necessarily

within their own custody or obtainable from their own records, advisors, or intermediary banks.

Requiring Abacus to compile and verify information that Plaintiffs already possess, or can obtain

from sources within their control, imposes unnecessary burden and expense and is disproportionate

to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (court must limit discovery that "can

be obtained from some other source that is more convenient, less burdensome, or less expensive").

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from

22

disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes

23

"personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. This Interrogatory seeks identification of all communications sent to all LLF-LTGF investors over a nearly ten-year period across three broad subject-matter categories. To the extent responsive information exists, compliance would require Abacus to identify and disclose the contents, dates, and recipients of investor communications, necessarily revealing the identities of non-party investors in a Luxembourg-domiciled fund, their investment status, and the substance of individualized correspondence directed to them. These non-party investors have no connection to this litigation and have not consented to disclosure of their personal data or financial correspondence to Plaintiffs or to transfer of that data to the United States. The absence of any

24

limitation to communications directed to Plaintiffs themselves, combined with the sweeping temporal scope, renders this Interrogatory incompatible with GDPR Article 5(1)(c), and compliance would lack a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus responds as follows:  To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records.  Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer.  Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing.  Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**<u>INTERROGATORY NO. 7:</u>**

Identify all performance fees, management fees, or other charges assessed against Abacus, Carlisle, or LLF-LTGF during liquidation, including all entities and individuals, and, if so, provide amounts, dates, and justification.

**<u>RESPONSE TO INTERROGATORY NO. 7:</u>**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all performance fees, management fees, or other charges" including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or

25

protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Subject to and without waiver of the above objections, Abacus responds as follows: To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records. Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer. Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing. Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental

26

response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns. To the extent any entity received management and/or performance fees during liquidation, such fees would have been justified by their issuance in accordance with one or more of the Private Placement Memorandum's relevant provisions, *e.g.*, Part I §§ 20, 21, Part II (LLF-LTGF) § 6.3.4, and Part II (LTGF 2021) §§ 5.3.6, 5.3.8.

**INTERROGATORY NO. 8:**

Describe any gating, suspension, or liquidity management measures applied to LLF-LTGF since 2016.

**RESPONSE TO INTERROGATORY NO. 8:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "any gating, suspension, or liquidity management measures" including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory on the grounds that "gating," "suspension," and "liquidity management measures" are undefined terms and therefore vague and ambiguous.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within

27

Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that this Interrogatory is an improper contention interrogatory that seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2) (interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

28

**INTERROGATORY NO. 9:**

Identify any funds managed by Carlisle that experienced gating, suspension, or liquidity management measures since 2016.

**RESPONSE TO INTERROGATORY NO. 9:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "any funds managed by Carlisle" including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory on the grounds that "funds" is not a defined term and this overly broad, vague, and ambiguous.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and

29

control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not

Abacus.

Subject to and without waiver of the foregoing objections, Abacus declines to respond to

this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper

contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's

position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer

with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific,

discrete, factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus

reserves all rights to respond or object at that time. Abacus further reserves the right to supplement

this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record

develops.

**INTERROGATORY NO. 10:**

Identify all persons, specifying said persons' employer (Abacus, Carlisle, or third-party) when such decisions were made, and their employer today, who participated in the decision to suspend or delay redemptions for LLF-LTGF.

**RESPONSE TO INTERROGATORY NO. 10:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

disproportionate to the needs of the case to the extent it seeks information regarding "all persons"

including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from

disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or

protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information

that Abacus has legal or contractual obligations not to disclose or information about third parties

whose privacy interests are protected by federal, state, or international law.

30

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

To the extent decisions to suspend or delay redemptions for LLF-LTGF were made, such decisions would have been made by Carlisle as AIFM in Luxembourg, pursuant to Luxembourg law and the fund's governing documents, prior to and independent of any involvement by Abacus. Abacus lacks possession, custody, or control of information regarding the identity and affiliation of persons who may have made such decisions at Carlisle prior to the acquisition.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes

31

"personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. This Interrogatory seeks not only the identities of individuals who may have participated in certain decisions, but also their employer at the time of those decisions and their current employer, requiring Abacus to compile and disclose both historical and present employment data for each identified individual. To the extent responsive information exists, compliance would require Abacus to process and disclose the personal data of employees and officers of Carlisle, Abacus, and potentially third-party entities across EU/EEA jurisdictions, including their career histories and current affiliations. These individuals are not parties to this action and have not consented to disclosure of their employment information to Plaintiffs or to

32

transfer of that data to the United States.   The requirement to identify current employers compounds the data minimization concern, as it necessitates ongoing processing of personal data bearing no demonstrated connection to the substance of Plaintiffs' claims.   Compliance with this Interrogatory as written is incompatible with GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

To the extent responding to this Interrogatory would require processing data subject to GDPR, Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order.   To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records.   Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer.   Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing.   Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

### INTERROGATORY NO. 11:

Describe in detail all communications with CACEIS Bank, Union Bancaire Privée S.A. ("UBP"), and LGT Bank (Switzerland) Ltd. ("LGT Bank") regarding Plaintiffs' redemption requests, including dates and participants.

### RESPONSE TO INTERROGATORY NO. 11:

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

disproportionate to the needs of the case to the extent it seeks information regarding "all communications" including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection

Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  This Interrogatory seeks a detailed description of all communications with three named financial institutions, including the dates and identities of all participants.  To the extent responsive information exists, compliance would require Abacus to identify and disclose the personal data of individual employees and officers at CACEIS Bank (a Luxembourg-based depositary), UBP (a

35

Swiss financial institution), and LGT Bank (a Swiss financial institution) who may have participated in such communications—individuals who are not parties to this action and who have not consented to disclosure of their identities, roles, or participation in specific correspondence to Plaintiffs or to transfer of that data to the United States. The requirement to describe the communications "in detail" further risks disclosure of personal data of third parties referenced within those communications. Compliance with this Interrogatory as written is incompatible with GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus responds as follows: To the extent responding to this Interrogatory would require processing data subject to GDPR, Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records. Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer. Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing. Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 12:**

State the total amount of assets currently held by LLF-LTGF and the location of those

36

assets.

**RESPONSE TO INTERROGATORY NO. 12:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory on the grounds that "assets" is an undefined term.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus responds as follows: To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this

37

Interrogatory may be derived from its business records. Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer. Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing. Pursuant to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable specificity the categories and locations of responsive business records in a timely supplemental response, and will at that time make such records available for inspection and copying at a mutually agreeable time and location, or will produce copies, subject to the entry of an appropriate protective order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 13:**

Identify all other liquidation requests, and whether completed or denied, from 2016 onwards, and state whether Abacus has received any complaints from other investors regarding delayed redemptions, and if so, describe the nature of those complaints.

**RESPONSE TO INTERROGATORY NO. 13:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all other liquidation requests," including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory as overbroad, vague, and ambiguous on the grounds that "investors" is undefined. Abacus will interpret this Interrogatory to mean "Unitholders" in the LLF-LTGF, as defined in the Private Placement Memorandum.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

38

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under

Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. This Interrogatory seeks identification of all liquidation requests from all investors over a nearly ten-year period, together with their disposition, and separately seeks identification and description of complaints from other investors. To the extent responsive information exists, compliance would require Abacus to disclose the identities of non-party investors who submitted liquidation requests or complaints, the status of their individual requests, and the substance of their grievances, each constituting personal data and, in combination, forming detailed profiles of identifiable EU/EEA data subjects' financial dealings with and complaints about a Luxembourg-domiciled fund. These non-party investors have no connection to this litigation and have not consented to disclosure of their identities, transaction histories, or complaint information to Plaintiffs or to transfer of that data to the United States. The complaint-description component is particularly sensitive, as it would require Abacus to disclose the substance of private communications from individuals who may have had a reasonable expectation that their grievances would remain confidential. Compliance with this Interrogatory as written is incompatible with

40

GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus responds as follows: Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

## INTERROGATORY NO. 14:

Identify all third-party service providers involved in the liquidation process of LLF-LTGF, describe their roles, and whether they were paid by Carlisle or Abacus.

## RESPONSE TO INTERROGATORY NO. 14:

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all third-party service providers," including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within

41

Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding

42

corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. This Interrogatory seeks identification of all third-party service providers, a description of their roles, and which entity compensated them. To the extent responsive information exists and the service providers include sole practitioners, individual consultants, or small firms in which the identity of the firm is inseparable from the identity of a natural person, compliance would require disclosure of those individuals' personal data, professional activities, and compensation sources. Even where the service providers are entities rather than natural persons, describing their roles and payment relationships in detail risks identifying individual employees or officers who performed the relevant work—individuals who are not parties to this action and who have not consented to disclosure of their professional activities or compensation arrangements to Plaintiffs or to transfer of that data to the United States. The compensation component compounds the concern, as it would require Abacus to disclose financial relationships between EU/EEA-based entities and individuals that bear no demonstrated connection to Plaintiffs' individual claims. Compliance with this Interrogatory as written is incompatible with GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

43

Subject to and without waiver of the above objections, Abacus responds as follows: Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 15:**

Describe any internal policies or procedures governing redemption requests during liquidation, including any gating or liquidity restrictions imposed on LLF-LTGF investors during liquidation and the reasons for imposing them..

**RESPONSE TO INTERROGATORY NO. 15:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "any internal policies or procedures governing redemption requests," including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory as overbroad, vague, and ambiguous on the grounds that "investors" is undefined. Abacus will interpret this Interrogatory to mean "Unitholders" in the LLF-LTGF, as defined in the Private Placement Memorandum.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties

44

whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that this Interrogatory is an improper contention interrogatory that seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2) (interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete, factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement

45

this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 16:**

State whether Abacus has made any representations to regulators regarding the status of LLF-LTGF liquidation, and if so, describe those representations.

**RESPONSE TO INTERROGATORY NO. 16:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information, including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

46

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete, factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

## INTERROGATORY NO. 17:

Identify all audits or financial reviews conducted on LLF-LTGF since 2016, including the names of the auditing firms, dates of audits, and whether such services were paid for by Abacus or Carlisle.

## RESPONSE TO INTERROGATORY NO. 17:

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all audits or financial reviews," including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within

47

Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus responds as follows: To the extent non-privileged, responsive information exists within Abacus's possession, custody, or control for the period from December 2024 to present, Abacus believes the answer to this Interrogatory may be derived from its business records. Pursuant to Fed. R. Civ. P. 33(d), Abacus elects to make such records available in lieu of a narrative answer. Abacus's investigation into the specific records from which the responsive information may be ascertained is ongoing. Pursuant

48

to its obligation to supplement under Fed. R. Civ. P. 26(e), Abacus will identify with reasonable

specificity the categories and locations of responsive business records in a timely supplemental

response, and will at that time make such records available for inspection and copying at a mutually

agreeable time and location, or will produce copies, subject to the entry of an appropriate protective

order addressing GDPR and confidentiality concerns.

**INTERROGATORY NO. 19:**

Identify all internal reports or analyses prepared by Abacus concerning the impact of
market conditions on LLF-LTGF liquidation.

**RESPONSE TO INTERROGATORY NO. 19:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

disproportionate to the needs of the case to the extent it seeks information regarding "all internal

reports or analyses," including from a timeframe not relevant to the claims and defenses in this

litigation.  Abacus further objects to this Interrogatory as overbroad, vague, and ambiguous on the

grounds that "market conditions" is undefined.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from

disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or

protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information

that Abacus has legal or contractual obligations not to disclose or information about third parties

whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within

Abacus's possession, custody, or control.

Abacus further objects that this Interrogatory is an improper contention interrogatory that

seeks a detailed narrative of Abacus's position.  *See* Middle District Discovery (2021) § IV(C)(2)

49

(interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete, factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 20:**

Describe in detail all steps Abacus took by way of due diligence before acquiring Carlisle and identify all person who conducted said due diligence.

**RESPONSE TO INTERROGATORY NO. 20:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information, including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

50

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects that this Interrogatory is an improper contention interrogatory that seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2) (interrogatories "purport[ing] to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive").

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. As set forth above, this Interrogatory is an improper contention interrogatory that assumes disputed facts and seeks a detailed narrative of Abacus's position. *See* Middle District Discovery (2021) § IV(C)(2). Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory in a manner that targets specific, discrete, factual issues. To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 21:**

Describe in detail any LLF-LTGF liquidation settlements, including but not limited to party names and liquidation terms.

**RESPONSE TO INTERROGATORY NO. 21:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information, including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or

51

protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus  had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that it cannot be certain this Interrogatory can be responded to fully without disclosing personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  It reserves the right to amend its response and objections should it identify liquidation settlements for which "party" and/or terms cannot be disclosed without also disclosing  "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Subject to and without waiver of the above objections, Abacus responds as follows:

52

Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 22:**

State all LLF-LTGF investors, redeemed parties (with date of redemption), and affiliates and related parties classified by their investment's status of redeemed or still invested.

**RESPONSE TO INTERROGATORY NO. 22:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information, including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct

53

legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection

54

Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  This Interrogatory seeks what would effectively constitute the complete investor register of a Luxembourg-domiciled fund — the identity of every investor, every redeemed party with redemption dates, and every affiliate and related party, classified by current investment status. To the extent responsive information exists, compliance would require Abacus to compile and disclose a comprehensive roster of every natural person and entity that has invested in or redeemed from LLF-LTGF, together with the precise timing and current status of their financial relationship with the fund.  This is among the most invasive categories of personal data processing conceivable in the fund context, combining investor identity with individualized transaction history and current financial exposure.  The overwhelming majority of these individuals and entities are not parties to this action and have not consented to disclosure of their investment status, redemption history, or affiliate relationships to Plaintiffs or to transfer of that data to the United States.  Any such register is maintained by CACEIS Bank as central administration agent under Luxembourg law and may be independently subject to Luxembourg professional secrecy obligations.  Compliance with this Interrogatory as written is incompatible with GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Abacus further objects to this Interrogatory to the extent it seeks what would effectively amount to a complete investor register for a Luxembourg fund, including the identities and

investment status of all investors, the overwhelming majority of whom are presumably not parties to this action and have not consented to disclosure of their financial information to Plaintiffs or to transfer of their data to the United States. Such production, if responsive information exists, would violate GDPR Articles 5(1)(b) and (c) (purpose limitation and data minimization) and would lack a lawful basis under Article 6(1). Any such investor register is maintained by CACEIS Bank as central administration agent under Luxembourg law and may also be subject to Luxembourg professional secrecy obligations.

Subject to and without waiver of the above objections, Abacus responds as follows: Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns, Abacus reserves all rights to respond or object at that time. Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 23:**

State all partners, employees, accounting firms, and financial consultants, both internal and external, involved in auditing, valuing, and preparing tax returns for Carlisle and Abacus, including fees paid to contractors since the LLF-LTGF's founding.

**RESPONSE TO INTERROGATORY NO. 23:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks information regarding "all partners, employees, accounting firms, and financial consultants, both internal and external," including from a timeframe not relevant to the claims and defenses in this litigation.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from

56

disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes

"personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. The breadth of Plaintiffs' Interrogatory—"seeking all partners, employees, accounting firms, and financial consultants, both internal and external, involved in auditing, valuing, and preparing tax returns for Carlisle and Abacus"—is incompatible with this principle and would require Abacus to process and transfer the personal data of individuals who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus further objects to this Interrogatory to the extent it seeks the personal data of individual employees and partners of Carlisle, Abacus, and third-party firms, including

compensation-related information.  To the extent such information exists, disclosure of individual

fee and compensation data would constitute processing of personal data under GDPR Article 4(1)

and would lack a demonstrated lawful basis under Article 6(1) for purposes of this litigation.

Subject to and without waiver of the above objections, Abacus responds as follows:

Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a

manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through

potential redaction, anonymization, or entry of an appropriate protective order.  To the extent

Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns,

Abacus reserves all rights to respond or object at that time.  Abacus further reserves the right to

supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual

record develops.

**INTERROGATORY NO. 24:**

State all litigation involving Abacus and Carlisle's partners at both their present and prior
funds, along with all law firms hired by Abacus and Carlisle.

**RESPONSE TO INTERROGATORY NO. 24:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

disproportionate to the needs of the case to the extent it seeks information regarding "all litigation,"

including from a timeframe not relevant to the claims and defenses in this litigation.  Abacus

further objects to this Interrogatory as overbroad, vague, and ambiguous on the grounds that

"partners" is undefined.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from

disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or

protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information

59

that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Subject to and without waiver of the foregoing objections, Abacus declines to respond to this Interrogatory as currently framed. Abacus is willing to meet and confer with Plaintiffs regarding reformulation of this Interrogatory.  To the extent Plaintiffs serve a properly framed interrogatory, Abacus reserves all rights to respond or object at that time.  Abacus further reserves the right to supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual record develops.

**INTERROGATORY NO. 25:**

Identify all marketing efforts, including materials, distribution channels, and placement of such materials, including country of publication, used to raise money for the LLF-LTGF, and where Carlisle and Abacus funds, including the LLF-LTGF, were marketed.

**RESPONSE TO INTERROGATORY NO. 25:**

Abacus objects to this Interrogatory as vague, overbroad, unduly burdensome, and

60

disproportionate to the needs of the case to the extent it seeks information regarding "all marketing efforts, including materials, distribution channels, and placement of such materials," including from a timeframe not relevant to the claims and defenses in this litigation. Abacus further objects to this Interrogatory as overbroad, unduly burdensome, vague, and ambiguous on the grounds that "funds" is undefined and not within the scope of this action.

Abacus objects to this Interrogatory to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Interrogatory to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Interrogatory to the extent it seeks information not within Abacus's possession, custody, or control.

Abacus further objects to this Interrogatory insofar as it seeks materials and information that, if it exists, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent Carlisle, its agents, or its service providers possess knowledge of events prior to the acquisition, such knowledge remains in custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators, not Abacus.

Abacus further objects that answering this Interrogatory, to the extent responsive

61

information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the U.S. for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  This Interrogatory seeks identification of distribution channels, placement of materials by country, and the full scope of marketing efforts for LLF-LTGF and other Carlisle and Abacus

62

funds.  To the extent responsive information exists, compliance would require Abacus to identify

and disclose the personal data of intermediaries, distributors, placement agents, and their personnel

across multiple EU/EEA jurisdictions—individuals and entities who are not parties to this action

and who have not consented to disclosure of their information for purposes of U.S. litigation.

Identifying marketing channels and country-level placement data would also risk revealing the

identity of investors or categories of investors reachable through those channels, compounding the

data minimization concern.  Compliance with this Interrogatory as written is incompatible with

GDPR Article 5(1)(c) and would lack a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus responds as follows:

Abacus is willing to meet and confer with Plaintiffs regarding narrowing this Interrogatory in a

manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through

potential redaction, anonymization, or entry of an appropriate protective order.  To the extent

Plaintiffs serve a properly framed interrogatory in a context that accommodates GDPR concerns,

Abacus reserves all rights to respond or object at that time.  Abacus further reserves the right to

supplement this response pursuant to Fed. R. Civ. P. 26(e) as discovery progresses and the factual

record develops.


Dated:  March 31, 2026                         Respectfully Submitted,

                                               /s/ Alex Zuckerman
                                               **Quinn Emanuel Urquhart & Sullivan, LLP**
                                               Alex Zuckerman (*pro hac vice*)
                                               alexzuckerman@quinnemanuel.com
                                               295 5th Avenue, 9th Floor
                                               New York, NY 10016
                                               (212) 849-7000

                                               Jason Sternberg (Fla. Bar. No. 72887)
                                               jasonsternberg@quinnemanuel.com

2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Nithya Pathalam (*pro hac vice*)
nithyapathalam@quinnemanuel.com
1300 I Street NW, Suite 900
Washington D.C. 20005
(202) 538-8000

*Attorneys for Defendant Abacus Global
Management, Inc.*

64

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 31, 2026, I served by email a copy of this document to counsel of record.

By:  */s/ Alex Zuckerman*
Alex Zuckerman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

RITZ INVESTMENT LIMITED,
SEASON LIMITED,

                  Plaintiffs,

    v.

ABACUS    GLOBAL    MANAGEMENT,
INC.,

                  Defendant.

Case No. 6:25-cv-2047-JSS-RMN

**DEFENDANT'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' FIRST SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

In accordance with Federal Rules of Civil Procedure 26 and 34, Defendant Abacus Global Management, Inc. ("Abacus") hereby provides amended responses and objections to Plaintiffs Ritz Investment Limited and Season Limited's ("Plaintiffs") First Set of Requests for Production, dated January 30, 2026 (the "Requests").

**GENERAL OBJECTIONS**

1.      Any indication that Abacus will produce documents or disclose information in response to a Request is not intended as a representation that Abacus agrees to the characterization of facts or events as set forth by Plaintiffs in the Request or that such documents exist or are in Abacus's possession, custody, or control.

2.      Abacus objects to the Requests to the extent that they seek private, business confidential, proprietary, commercially sensitive, or personal information. Any such information disclosed to Plaintiffs shall be pursuant to a confidentiality agreement to be agreed upon by and between Abacus and Plaintiffs.

1

3.      Abacus objects to the Requests insofar as they purport to assume disputed facts or facts that are inaccurate, call for or assume legal conclusions, are argumentative, or are otherwise defective in form.  Abacus hereby denies any such disputed or inaccurate facts or legal conclusions that are or may be assumed by the Interrogatories, Definitions, or Instructions.

4.      Abacus objects to each Request to the extent that it calls for legal conclusions or opinions or makes erroneous statements of law or requires Abacus to perform a legal analysis. Abacus's response herein shall be only as to matters of fact, and shall not be construed as stating or implying any conclusions of law concerning the matters referenced in any Request.

5.      Abacus objects to the Requests to the extent they seek information regarding matters that are neither relevant to the claims or defenses of any party nor proportional to the needs of the action.

6.      Abacus objects to the Requests to the extent they seek information or documents that are a matter of public record equally accessible and/or ascertainable to Plaintiffs or that otherwise can be obtained more readily from a source other than Abacus (including, but not limited to, information that is currently within Plaintiffs' control).

7.      Abacus objects to each Request to the extent it purports to require Abacus to provide information or documents in the possession, custody, or control of persons or entities other than Abacus.

8.      Abacus objects to the Requests to the extent they call for information that is not known or reasonably available to Abacus.

9.      Abacus objects to each Request to the extent that it is duplicative or redundant of other Requests or Interrogatories.

10.     Abacus objects to the Requests, including to the Definitions and Instructions contained therein, to the extent they seek to impose obligations on Abacus beyond those required by the Local

2

Rules of the United States District Court for the Middle District of Florida and the Federal Rules of Civil Procedure. Abacus's responses to the Requests will be made in accordance with those rules, and any Court orders relevant to the proper scope, timing, and extent of discovery in this action.

11. Abacus objects to the Requests to the extent they seek information that is protected from discovery by the attorney-client privilege, work-product doctrine, or any other privilege or immunity recognized in law or equity (collectively, "Privileged Information"). Abacus hereby asserts all applicable privileges and protections and will exclude Privileged Information necessary for any response.

12. Abacus objects to the Requests to the extent that they seek information in Abacus's possession that is the confidential, proprietary, and/or trade secret information of a third party. Abacus will provide such information only to the extent it can do so in a manner consistent with its legal or contractual obligations to any third parties.

13. Abacus objects to each Request to the extent that it presupposes that this Court is the appropriate forum and that U.S. law governs Plaintiffs' claims. LLF-LTGF is a fund domiciled in Luxembourg, governed by Luxembourg law, managed by a Luxembourg AIFM, and subject to oversight by the Commission de Surveillance du Secteur Financier. Plaintiffs are registered Gibraltar entities that invested through intermediaries located outside the United States. Abacus contends that no material events giving rise to Plaintiffs' claims occurred in the United States. The proportionality calculus under Fed. R. Civ. P. 26(b)(1) weighs heavily against imposing the burden of broad U.S.-style discovery in a matter where the governing law, the relevant witnesses, the relevant documents, and the relevant regulators are, upon information and belief, all located outside the United States.

14. Abacus objects to the Requests to the extent responding would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a

3

Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

15.    Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

16.    GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  To the extent Plaintiffs' Requests seek the identities, nationalities, financial information, transaction histories, or other personal data of non-party investors, service providers, or employees, compliance would be incompatible with this principle and would require Abacus to process and disclose the personal data of individuals who are not parties to this action, without their consent under GDPR Article 6(1)(a) and without a demonstrated lawful basis under Article 6(1).  Abacus reserves its objections on this basis as to each Request to which GDPR restrictions apply.

4

17.     The failure of Abacus to make a specific objection to a Request is not, and shall not be construed as, an admission that responsive information or documents exist.  Likewise, any statement herein that Abacus will provide information or produce documents in response to a Request does not mean that Abacus has such information or documents, or that such information or documents exist. Rather, any such statement reflects Abacus's intentions, subject to its general and specific objections, to conduct a reasonable search for responsive documents and information from the sources within its possession, custody, or control.

18.     To the extent Abacus responds to part or all of a Request, Abacus's response is not intended to and shall not be construed as a waiver by Abacus of any objection to such Request.

19.     These Responses and Objections reflect Abacus's present knowledge, information, and belief, and may be subject to modification based on facts and circumstances that may come to Abacus's attention, further discovery, or subsequent case developments.  Abacus reserves the right to alter, supplement, amend, or otherwise modify its Objections and Responses to the Requests.

## SPECIFIC OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.     Abacus objects to Plaintiffs' definition of "Control" to the extent it purports to impute to Abacus possession, custody, or control over documents held by Carlisle Management Company S.C.A. or its agents, service providers, or contractors.  Carlisle is a distinct legal entity organized under Luxembourg law with its own corporate existence, governance structure, and record-keeping systems. Abacus's acquisition of Carlisle in late 2024 did not collapse Carlisle's separate legal identity into Abacus's, nor did it render Carlisle's pre-acquisition records the property of or subject to the direction of Abacus.  To the extent Plaintiffs' definition of "Control" is intended to reach documents held by Carlisle, its employees, its Luxembourg-based service providers (including CACEIS Bank as depositary and central administration agent), or any other person or entity acting on Carlisle's, rather than Abacus's, behalf, Abacus does not accept that characterization.  Abacus interprets "Control" as

5

limited to documents within the actual possession, custody, or control of Abacus Global Management, Inc., consistent with the requirements of Fed. R. Civ. P. 34(a)(1). Abacus further objects that Plaintiffs' expansive definition of "Control" is inconsistent with the restrictions imposed by the GDPR and Luxembourg professional secrecy law, which independently limit Abacus's ability to direct the production of documents held by Luxembourg-regulated entities regardless of any corporate affiliation.

2. Abacus objects to Plaintiffs' definition of "defendant" as it includes the undefined terms "officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." "defendant" is overly broad, unduly burdensome, vague, and ambiguous, particularly to the extent it purports to require collection and/or production of documents or information from undefined subsidiaries or affiliates of Abacus, Abacus interprets Plaintiffs' definition of "defendant" as referring solely to Abacus Global Management, Inc.

3. Abacus objects to Plaintiffs' definition of "Plaintiffs" as it includes the undefined terms "officers, directors, employees, partners, corporate parent, subsidiaries or affiliates." Abacus interprets Plaintiffs' definition of "Plaintiffs" as referring to Ritz Investment Limited and Season Limited.

4. Abacus objects to Plaintiffs' definition of "Communications" because "without limitation" and "through another medium" render the definition boundless and disproportional to any reasonable burden consistent with FRCP 26(b)(1). To the extent the definition reaches communications involving Carlisle Management Company S.C.A. ("Carlisle") personnel, Carlisle's EU-based business operations, or any natural persons located in the European Union, production of those "Communications" constitutes a transfer of personal data under GDPR Article 4(1) and implicates the transfer restrictions of GDPR Articles 44–49. A definition this broad—covering all exchanges with no geographic, temporal, or subject-matter limitation—makes it impossible for

6

Abacus to evaluate its GDPR compliance obligations before responding, particularly given that Abacus did not acquire Carlisle until late 2024 and has limited visibility into pre-acquisition communications involving EU data subjects.

5.    Abacus objects to Plaintiffs' definition of "Document" to the extent it is functionally boundless and exceeds the proportionality requirement of FRCP 26(b)(1), particularly because examining "erased but recoverable" data, if deleted pursuant to GDPR Article 17's Right to be Forgotten, would directly violate foreign law.  More generally, to the extent the definition includes information relating to an identified or identifiable EU person, the definition's overbreadth affords Abacus no mechanism by which to segregate or otherwise distinguish protected from non-protected material before production.

6.    Abacus objects to Plaintiff's definition of "LLF-LTGF" as an oversimplification inconsistent with its characterization in the Private Placement Memorandum.  Abacus interprets LLF-LTGF as a specialized "alternative investment fund" created, organized, and governed by the laws of Luxembourg, including associated rules and regulations, that is managed by Carlisle, the AIFM.

7.    Abacus objects to Defendants' Instructions 1-3, 5-6, and 8 on the grounds that "you" and "your" are undefined, and the terms are therefore vague and ambiguous, particularly to the extent it purports to require collection and/or production of documents or information from undefined subsidiaries or affiliates of Abacus.  Abacus with interpret "you" and "your" as referring solely to Abacus only.

8.    Abacus objects to Defendants' Instructions 1-8 to the extent they impose greater burdens on Abacus than what is required by the Federal Rules of Civil Procedure.  Abacus will produce non-privileged documents within Abacus's custody and control and responsive to Plaintiffs' Requests for Production, subject to and without waiver of objections.

9.    Subject to the aforementioned General Objections, Specific Objections to Definitions

and Instructions, Specific Objection to the Relevant Time Frame, and the Specific Objections below, Abacus will produce non-privileged, relevant documents within Abacus's custody and control and responsive to Plaintiffs' Requests for Production, subject to the negotiation of reasonable search terms and subject to and without waiver of objections.

## SPECIFIC OBJECTION TO RELEVANT TIME FRAME

1.    Abacus objects to Plaintiffs' identified time "period" under "II. Definitions" to the extent Plaintiffs seek information from "the period from 2016 to the present," on the grounds that such a time period that is overbroad, unduly burdensome, and disproportionate to the needs of the case. Abacus acquired Carlisle in 2024 and so Plaintiffs' "period" extends beyond the time period covered by Abacus's acquisition of Carlisle.  Abacus interprets the relevant time "period" to include the period from December 2024 to January 30, 2026 (the date Plaintiffs served their Interrogatories on Abacus).

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:**

All documents evidencing the acquisition of Carlisle Management Company ("Carlisle") by Abacus, including pre-acquisition due diligence into the LLF-LTGF, agreements, and closing documents.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 1:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents."

Abacus objects that this Request, as framed, is calculated to capture materials prepared by or at the direction of counsel in connection with the evaluation, negotiation, and closing of the acquisition, including legal memoranda, attorney-client communications, risk assessments, and deal analyses, that are protected by the attorney-client privilege and/or the work-product doctrine.  The phrase "pre-acquisition due diligence" encompasses the core of the legal advice Abacus sought and received in connection with the transaction.  Abacus objects to this Request to the extent that it seeks

8

materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection and will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined terms and phrase "Abacus," "Carlisle," "acquisition," and "pre-acquisition due diligence."

Abacus objects that pre-acquisition due diligence materials, to the extent they exist, would likely contain personal data of employees, officers, and key personnel of Carlisle and its service providers, including names, roles, compensation information, and employment terms, as well as potentially personal data of investors and counterparties embedded in data room materials. These individuals are predominantly EU/EEA residents whose personal data is protected by the GDPR. Production of unredacted due diligence materials to Plaintiffs in U.S. litigation would constitute a transfer to a third country under GDPR Chapter V (Articles 44–49) without a demonstrated lawful basis, and would be incompatible with the data minimization principle of GDPR Article 5(1)(c) given that the personal data of these individuals bears no demonstrated connection to Plaintiffs' claims regarding their own alleged redemption requests.

The fact that due diligence materials may reside in Abacus's possession does not relieve Abacus of its ongoing obligations under the GDPR. Disclosure of personal data contained in such materials to Plaintiffs in U.S. litigation would constitute a new act of processing under GDPR Article 4(2) and a transfer to a third country under Chapter V, each requiring an independent lawful basis that has not been established. The original purpose for which such personal data was collected—evaluation of a corporate acquisition—does not encompass onward disclosure to adverse parties in foreign litigation, and such disclosure would be incompatible with the purpose limitation principle of GDPR

9

Article 5(1)(b).

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 2:**

All documents and internal communications reassigning Abacus employees to Carlisle and vice-versa.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 2:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents and internal communications."

The Request for Documents and Communications "reassigning Abacus employees to Carlisle and vice-versa" is vague, ambiguous, and not reasonably tethered to any asserted claims or defenses in this litigation.  The Documents and Communications between Abacus and Carlisle have no bearing upon Plaintiffs' claims.  Abacus further objects to this Request to the extent it uses the undefined terms "Abacus," "Carlisle," and "reassigning."  Specifically, Abacus objects that this Request assumes as established fact that employees were "reassigned" between Abacus and Carlisle.  Abacus does not concede that any such reassignment occurred or that the term "reassigning" accurately characterizes any personnel decisions made in connection with or following the acquisition.  The Request as framed

10

embeds a disputed factual premise and would require Abacus to adopt Plaintiffs' characterization of internal personnel matters as a condition of responding. Abacus further objects that the term "reassigning" is vague and ambiguous as applied to the facts of this case—it could encompass new hires, secondments, changes in reporting structure, assumption of additional duties, or any number of personnel actions that are legally and factually distinct from one another. The Request fails to specify which category of personnel action is sought, rendering it impossible to determine the scope of a responsive search.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects that this Request, to the extent responsive documents exist, would require the disclosure of personal data of employees and officers of Abacus and Carlisle, including names, job titles, reporting structures, employment terms, and the timing and nature of any personnel changes, protected by the GDPR. These individuals are predominantly EU/EEA residents who have not consented to disclosure of their employment information to Plaintiffs or to transfer of that data to the United States for purposes of civil litigation. Disclosure would constitute a new act of processing under GDPR Article 4(2) and a transfer to a third country under Chapter V, each requiring an independent lawful basis that has not been established. The request for "all documents and internal communications" concerning personnel matters is incompatible with the data minimisation principle of GDPR Article 5(1)(c), as it would sweep in HR records, internal correspondence, and organizational planning documents containing the personal data of individuals with no demonstrated connection to

11

Plaintiffs' claims regarding their own alleged redemption requests.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 3:**

All organizational charts and governance documents showing Abacus' and Carlisle's management structures and decision-making authority over LLF-LTGF post-acquisition.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 3:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll organizational charts and governance documents."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects that this Request, to the extent responsive documents exist, would require the disclosure of personal data of employees and officers of Abacus and Carlisle, including names, titles, seniority levels, reporting relationships, and decision-making authority, protected by the GDPR. Organizational charts and governance documents by their nature map individual identities to specific roles, hierarchical positions, and areas of responsibility, creating detailed professional profiles of

12

identifiable natural persons.  These individuals are predominantly EU/EEA residents who have not consented to disclosure of their organizational roles and reporting structures to Plaintiffs or to transfer of that data to the United States for purposes of civil litigation.  Disclosure would constitute a new act of processing under GDPR Article 4(2) and a transfer to a third country under Chapter V, each requiring an independent lawful basis that has not been established.  The request for "all organizational charts and governance documents" is incompatible with the data minimisation principle of GDPR Article 5(1)(c), as it would require production of documents revealing the identities and internal roles of every individual within the management structures of two entities, the vast majority of whom have no demonstrated connection to Plaintiffs' claims regarding their own alleged redemption requests.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrases "Abacus," "Carlisle," "governance documents," "management structures," and "decision-making authority."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 4:**

All internal memoranda or reports discussing the impact of the acquisition on LLF-LTGF obligations.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 4:**

13

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll internal memoranda or reports" and fails to indicate whose internal memoranda—Abacus or Carlisle—should be produced. Abacus interprets this Request to apply only to Abacus's internal memoranda.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "impact of the acquisition on LLF-LTGF obligations."

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45

14

covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Subject to and without waiver of the above objections, Abacus is willing to meet and confer with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E). To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 5:**

All versions of the Placement Memorandum governing LLF-LTGF (including July 2022

15

version).

**<u>RESPONSE TO REQUEST FOR PRODUCTION NO. 5:</u>**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll versions."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll versions of the Placement Memorandum governing LLF-LTGF (including July 2022 version)" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to

16

Plaintiffs.  To the extent a July 2022 Placement Memorandum exists, it would have been issued by Carlisle more than two years before Abacus's acquisition.  Unitholders would have received any such document at the time of their investment, and the document would therefore be at least equally accessible to Plaintiffs as to Abacus if, as Plaintiffs contend, they have legitimately invested.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 6:**

All communications between Abacus (or Carlisle) and LLF-LTGF investors regarding redemption requests since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 6:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll communications."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

17

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll communications between . . . Carlisle[] and LLF-LTGF investors" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and

18

is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that is equally or more readily available to Plaintiffs.  To the extent any investor communications regarding redemption have been issued, they would have been issued by Carlisle before Abacus's acquisition.  Plaintiffs, if investors as claimed, should have received any such document at the time of their investment. The same is not true for Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrases "Abacus," "LLF-LTGF investors," and "redemption requests."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order.  To the extent responsive documents may exist, Abacus will

19

produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 7:**

All communications, internal and with LLF-LTGF investors, discussing LLF-LTGF investors' redemption requests or liquidation status.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 7:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll communications."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll communications, internal and with LLF-LTGF investors" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company

20

S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also*

21

EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs. Indeed, because Plaintiffs are based in EU and given the inevitability that documents responsive to this request will contain personal information protected under GDPR, at present, Plaintiffs have options to seek his information with far less regulatory friction than those Abacus would encounter under any GDPR-compliant data processing effort.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrases "LLF-LTGF investors," "redemption requests," and "liquidation status."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation, in addition to addressing GDPR constraints. To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 8:**

Monthly newsletters or investor updates issued by Abacus or Carlisle since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 8:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks "[m]onthly newsletters or investor updates" from a time

22

frame not relevant to the claims and defenses in this litigation.

Abacus objects to the term "investor updates" and notes that only Unitholders received communication of any such nature.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[m]onthly newsletters or investor updates issued by . . . Carlisle since 2016" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM,

23

and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that, if it exists and based on Plaintiffs' contentions, is equally available to Plaintiffs. To the extent newsletters exist, they would have been issued by Carlisle under one or both of the following conditions: 1) the communications were made before Abacus's acquisition, and 2) the communications contain data subject to GDPR

24

processing and transfer regulations.  Under the former condition, Plaintiffs, if indeed Unitholders as contended, would have received any such newsletters, making them at least equally to Plaintiffs as to Abacus.  Under the latter, heightened protection that applies when data must be transferred outside the European Economic Area would pose a burden only if Abacus is compelled to seek it; Plaintiffs' EU bases afford simpler, less burdensome options to receive responsive information from CACEIS or other Luxembourg- and EU-based service providers, again provided Plaintiffs can establish status as valid Unitholders.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrase "Abacus," "Carlisle," and "investor updates."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation, in addition to addressing GDPR constraints.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 9:**

Documents reflecting NAV calculations for LLF-LTGF since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 9:**

Abacus objects to this request on the basis that it fails to specify whose calculations are to be provided.  Abacus interprets "NAV calculations" to reflect that term as defined in the Private Placement Memorandum.  Accordingly, such calculations would be held by Carlisle's central administration agent in Luxembourg, not Abacus, as the agent would have performed any relevant NAV calculations for LLF-LTGF.  To the extent responsive documents reflecting NAV calculations exist, they would be in the custody and control of CACEIS Bank, a third party not subject to this Court's jurisdiction.

25

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[d]ocuments reflecting NAV calculations for LLF-LTGF since 2016" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are

26

predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs. To the extent documents reflecting NAV calculations exist, GDPR imposes substantially fewer restrictions to obtaining those documents when requests are made from within the EU. Plaintiffs are therefore better positioned to seek the relevant documentation, if it exists, directly from its source. Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined

27

phrase "NAV calculations."

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E). To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 10:**

Documents showing all distributions of liquidation proceeds to any investor by LLF-LTGF since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 10:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks "[d]ocuments showing all distributions of liquidation

28

proceeds to any investor by LLF-LTGF" from a time frame not relevant to the claims and defenses in this litigation and without specifying whose documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[d]ocuments showing all distributions of liquidation proceeds to any investor by LLF-LTGF since 2016" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area

29

data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs. Plaintiffs, if Unitholders in LLF-LTGF, would have received redemption-related

30

correspondence directly from Carlisle and/or their intermediary banks. Such documents, to the extent

they exist, would be within Plaintiffs' own possession or obtainable from their own banks and

advisors.   Requiring Abacus to produce what would be Plaintiffs' own investor correspondence

imposes unnecessary burden and expense.   Moreover, to the extent documents reflecting distribution

of liquidation proceeds for this fund exist, GDPR imposes substantially fewer restrictions to obtaining

those documents when requests are made from within the EU.   Plaintiffs, if indeed Unitholders as

contended, are therefore better positioned to seek the relevant documentation, if it exists, directly from

its source.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the

undefined phrase "distributions of liquidation proceeds."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer

with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not

necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or

entry of an appropriate protective order.   To the extent responsive documents may exist, Abacus

withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 11:**

Accounting records showing assets, liabilities, and reserves for LLF-LTGF during liquidation,
including which company paid for such audits, since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 11:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate

to the needs of the case to the extent it seeks "[a]ccounting records showing assets, liabilities, and

reserves" from a time frame not relevant to the claims and defenses in this litigation and without

specifying whose documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by

31

attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ccounting records showing assets, liabilities, and reserves for LLF-LTGF during liquidation, including which company paid for such audits, since 2016" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus

32

cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by

foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer

regarding this Request.  To the extent responsive documents may exist, Abacus withholds production

pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 12:**

Documents, including internal accounting records from Carlisle and Abacus, evidencing
performance fees or management fees charged during liquidation, including all information regarding
who paid the performance and management fees, and to whom they were directed.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 12:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate

to the needs of the case to the extent it seeks without limitation "[d]ocuments, including internal

accounting records" from a time frame not relevant to the claims and defenses in this litigation.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by

attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will

withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that

Abacus has legal or contractual obligations not to disclose or information about third parties whose

privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "internal accounting records from

Carlisle … evidencing performance fees or management fees charged during liquidation, including all

information regarding who paid the performance and management fees, and to whom they were

directed" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent

they exist, would have been generated, maintained, and controlled by Carlisle Management Company

33

S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrases "Abacus," "performance fees," and "management fees."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 13:**

All communications with CACEIS Bank, Union Bancaire Privée S.A. ("UBP"), LGT Bank (Switzerland) Ltd. ("LGT Bank"), or other agents regarding Plaintiffs' redemption requests.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 13:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll communications."

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll communications with CACEIS Bank, Union Bancaire Privée S.A. ("UBP"), LGT Bank (Switzerland) Ltd. ("LGT Bank"), or other agents regarding Plaintiffs' redemption requests" are not within Abacus's possession, custody, or

34

control. CACEIS Bank serves as depositary and central administration agent for LLF-LTGF under Luxembourg law, and UBP and LGT Bank are Swiss financial institutions. To the extent communications between these institutions and Carlisle regarding the subject matter of this Request exist, they would have been generated and maintained by those third-party institutions and/or by Carlisle as a separate Luxembourg entity.  Abacus lacks possession, custody, or control over such communications, if any.  Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "redemption requests" and "other agents."

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also*

35

EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E). To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

36

**REQUEST FOR PRODUCTION NO. 14:**

All communications between Abacus and any regulatory authority regarding LLF-LTGF liquidation or redemption delays.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 14:**

Abacus objects that this Request assumes as established fact that "redemption delays" occurred.  Abacus does not concede that any delays took place or that the term "redemption delays" accurately characterizes the handling of any redemption requests with respect to LLF-LTGF.  The Request as framed embeds a disputed factual premise and would require Abacus to adopt Plaintiffs' characterization of events as a condition of conducting a responsive search.  To the extent Abacus responds, its response should not be construed as an admission that any delays occurred, that redemption requests were untimely processed, or that any communications with any regulatory authority concerning such purported delays exist.

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll communications" as to "any regulatory authority," which could encompass numerous financial regulators globally.  Abacus requests that Plaintiffs identify the specific regulatory authority or authorities at issue.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrases "Abacus," "regulatory authority," and "liquidation or redemption delays."

37

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents.  Violation of these obligations carries criminal penalties under Luxembourg law.  Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 15:**

All audited financial statements for LLF-LTGF from 2016 to present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 15:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks "[a]ll audited financial statements" from a time frame not

38

relevant to the claims and defenses in this litigation and without specifying whose documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll audited financial statements for LLF-LTGF from 2016 to present" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the

39

undefined phrase "audited financial statements."

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents. Violation of these obligations carries criminal penalties under Luxembourg law. Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request. To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 16:**

All documents reflecting any gating or liquidity restrictions imposed on LLF-LTGF investors during liquidation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 16:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents" and fails to specify whose documents are to be produced. Abacus further objects to undefined terms "gating" and "liquidity restrictions."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose

40

privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll documents reflecting any gating or liquidity restrictions imposed on LLF-LTGF investors during liquidation" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "gating or liquidity restrictions."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request. To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 17:**

All internal analyses or reports concerning market conditions cited as reasons for redemption delays.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 17:**

41

Abacus objects that this Request assumes as established fact that "redemption delays" occurred. Abacus does not concede that any delays took place or that the term "redemption delays" accurately characterizes the handling of any redemption requests with respect to LLF-LTGF. The Request as framed embeds a disputed factual premise and would require Abacus to adopt Plaintiffs' characterization of events as a condition of conducting a responsive search. To the extent Abacus responds, its response should not be construed as an admission that any delays occurred, that redemption requests were untimely processed, or that any internal analysis or reporting on market conditions had anything to do with purported delays.

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll internal analyses or reports," fails to specify whose documents are to be produced, and invokes the undefined term "market conditions."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll internal analyses or reports concerning market conditions cited as reasons for redemption delays" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own

42

records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's

acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management

had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive

documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to

the acquisition, those documents remain in the custody and control of Carlisle as a separate

Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the

undefined phrases "market conditions" and "redemption delays."

Abacus further objects to Plaintiffs' assertion that there were "redemption delays."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer

regarding narrowing this Request to specific, non-privileged categories of documents relevant to the

claims and defenses in this litigation.  To the extent responsive documents may exist, Abacus

withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 18:**

All contracts or agreements with third-party service providers engaged in the liquidation process.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 18:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate

to the needs of the case to the extent it seeks without limitation "[a]ll contracts or agreements," fails

to define "third-party service providers" and does not specify whose documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by

attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will

withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that

43

Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll contracts or agreements with third-party service providers engaged in the liquidation process" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrases "third-party service providers" and "liquidation process."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation. To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 19:**

All versions of investor newsletters or updates issued since 2016 regarding LLF-LTGF liquidation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 19:**

44

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks "[a]ll versions of investor newsletters or updates" from a time frame not relevant to the claims and defenses in this litigation and without indication from whom documents are to be produced.

Abacus objects to the term "investor" where no such term is recognized in the Private Placement Memorandum. Abacus understands "investor" to mean "Unitholder" and restates that it does not concede Plaintiffs can so be described. Abacus further notes with respect to the unreasonable timeframe that based upon the Amended Complaint, Plaintiffs are well aware of the impossibility of "liquidation"-related communications having been issued dating back to 2016. Further, to the extent such communications exist, Plaintiffs, if Unitholders as contended, would already possess the requested documents.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll versions of investor newsletters or updates issued since 2016 regarding LLF-LTGF liquidation" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company

45

S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "investor newsletters or updates."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus will produce non-privileged, responsive documents within its possession, custody, or control for the period from December 2024 to present, subject to Plaintiffs' proposal of reasonable search terms and the parties' negotiation of a mutually acceptable search protocol and ESI production format consistent with Fed. R. Civ. P. 26(f) and Middle District Discovery (2021) § VIII(D)–(E).  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections, including those founded in constraints under the GDPR, and agreement on search terms.

**REQUEST FOR PRODUCTION NO. 20:**

All internal emails or correspondence discussing Plaintiffs' redemption requests or related complaints.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 20:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate

46

to the needs of the case to the extent it seeks without limitation "[a]ll internal emails or correspondence" and fails to specify from whom documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll internal emails or correspondence discussing Plaintiffs' redemption requests or related complaints" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM,

47

and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrases "redemption requests" and "related complaints."

48

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation, in addition to addressing GDPR constraints.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 21:**

All documents evidencing reserves or holdbacks applied to LLF-LTGF assets during liquidation.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 21:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents" and fails to specify from whom documents are to be produced.  Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined terms "reserves" and "holdbacks."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll documents evidencing reserves or holdbacks applied to LLF-LTGF assets during liquidation" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company

49

S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 22:**

All documents evidencing any LLF-LTGF liquidation settlements, including but not limited to correspondence, demand resolution agreements, and party names.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 22:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents" and fails to specify from whom documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that

50

Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll documents evidencing any LLF-LTGF liquidation settlements, including but not limited to correspondence, demand resolution agreements, and party names" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR").  LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil

51

litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49.  No adequacy decision under Article 45 covers transfers for U.S. civil discovery.  No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer.  Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery.  *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed.  Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrases "LLF-LTGF liquidation settlements" and "demand resolution agreements."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation, in addition to addressing GDPR constraints.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 23:**

All documentation and correspondence with consultants, accounting firms, or internal appraisers detailing an appraisal or analysis of LLF-LTGF's value.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 23:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documentation and correspondence" and fails to specify from whom documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll documentation and correspondence with consultants, accounting firms, or internal appraisers detailing an appraisal or analysis of LLF-LTGF's value" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "LLF-LTGF's value."

53

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding narrowing this Request to specific, non-privileged categories of documents relevant to the claims and defenses in this litigation.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 24:**

All audited financial statements for Carlisle, Abacus, and the LLF-LTGF since 2016.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 24:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks "[a]ll audited financial statements" from a time frame not relevant to the claims and defenses in this litigation.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to the time frame of this Request as overbroad and not relevant to the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll audited financial statements for Carlisle . . . and the LLF-LTGF since 2016" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's

54

acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrase "Abacus" and "audited financial statements."

Abacus further objects to this Request as duplicative of Request No. 15, which seeks "[a]ll audited financial statements for LLF-LTGF from 2016 to present."

Abacus further objects that, to the extent responsive documents exist and are held by Luxembourg-regulated entities, their disclosure may be restricted by Luxembourg professional secrecy obligations, including but not limited to Article 41 of the Luxembourg Law of 5 April 1993 on the financial sector, which imposes secrecy obligations on professionals of the financial sector and their agents.  Violation of these obligations carries criminal penalties under Luxembourg law.  Abacus cannot unilaterally waive or override legal restrictions imposed by foreign law on documents held by foreign-regulated entities.

Subject to and without waiver of the above objections, Abacus will not produce documents responsive to this Request.  To the extent responsive documents may exist, Abacus is withholding production on the basis of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 25:**

All documents relating to litigation involving Tim Mol at both Abacus and any prior fund.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 25:**

55

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus objects to this Request as not relevant because any "litigation involving Tim Mol at both Abacus and any prior fund" have no relation or bearing on the claims and defenses in this litigation.

Abacus further objects to this Request to the extent that "[a]ll documents relating to litigation involving Tim Mol at . . . any prior fund" are not within Abacus's possession, custody, or control. To the extent this Request seeks information about litigation at 'any prior fund,' such information, if it exists, would predate and be unrelated to Abacus's acquisition of Carlisle and would not be within Abacus's possession, custody, or control. Moreover, litigation history at unrelated funds, to the extent any exists, has no apparent relevance to Plaintiffs' claims regarding LLF-LTGF and is disproportionate to the needs of this case under Fed. R. Civ. P. 26(b)(1).

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive

56

documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined term and phrase "Abacus" and "any prior fund."

Subject to and without waiver of the above objections, Abacus will not produce documents responsive to this Request. To the extent responsive documents may exist, Abacus is withholding production on the basis of the foregoing objections.

## REQUEST FOR PRODUCTION NO. 26:

All internal communications and documentation concerning marketing efforts, including materials and their placement used to raise money for the LLF-LTGF.

## RESPONSE TO REQUEST FOR PRODUCTION NO. 26:

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll internal communications and documentation" and fails to specify from whom documents are to be produced.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll internal communications and documentation concerning marketing efforts, including materials and their placement used to raise money for the LLF-LTGF" are not within Abacus's possession, custody, or control.

57

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024. Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein. To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus further objects that compliance with this Request, to the extent responsive information exists, would require the disclosure of personal data of European Union and European Economic Area data subjects protected by Regulation (EU) 2016/679, the General Data Protection Regulation ("GDPR"). LLF-LTGF is a Luxembourg-domiciled fund, Carlisle is a Luxembourg-domiciled AIFM, and the investors, service providers, and employees whose information may be sought are predominantly EU/EEA residents whose personal data, including names, contact details, financial account information, investment amounts, and transaction histories, constitutes "personal data" within the meaning of GDPR Article 4(1) and is subject to the processing restrictions of GDPR Articles 5, 6, and 44–49.

Specifically, any transfer of such personal data to the United States for purposes of U.S. civil litigation would constitute a "transfer to a third country" under GDPR Chapter V (Articles 44–49) and is prohibited absent an adequate legal basis under Article 49. No adequacy decision under Article 45 covers transfers for U.S. civil discovery. No standard contractual clauses or binding corporate rules under Articles 46–47 are in place between the parties that would authorize such transfer. Although Article 49(1)(e) permits transfers "necessary for the establishment, exercise or defence of legal

58

claims," this derogation is interpreted narrowly under European Data Protection Board Guidelines 2/2018 and does not authorize wholesale production of third-party investor data in discovery. *See also* EDPB Guidelines 2/2018 on derogations of Article 49, § 4 (transfers must be "occasional" and limited to data "necessary" for the specific claim, not broadly responsive to an entire category of documents).

GDPR Article 5(1)(c) further requires "data minimisation," i.e., that personal data be "adequate, relevant and limited to what is necessary" in relation to the purposes for which it is processed. Plaintiffs' Request is incompatible with this principle and would require Abacus to process and transfer the personal data of third-party investors who are not parties to this action, without their consent (GDPR Article 6(1)(a)) and without a demonstrated lawful basis under Article 6(1).

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrases "marketing efforts" and "materials and their placement used to raise money."

Subject to and without waiver of the above objections, Abacus is willing to meet and confer with Plaintiffs, including regarding narrowing this Request in a manner that may mitigate, but not necessarily eliminate, these GDPR concerns, including through potential redaction, anonymization, or entry of an appropriate protective order. To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 27:**

All documents relating to cross-border financial investment marketing.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 27:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll documents", the breadth of which conflicts with Fed. R. Civ. P. 26(b)(1)'s requirement that discovery "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  This Request seeks an undefined, limitless category of documents with no temporal or subject-matter boundary tied to Plaintiffs' specific claims. Plaintiffs' claims, as Abacus understands them, relate to a specific sub-fund and specific alleged redemption requests.  Documents concerning "cross-border financial investment marketing" generally, for all of Abacus's or Carlisle's operations, bear no apparent relationship to those claims, and the burden of identifying, reviewing, and producing such documents, to the extent any exist, vastly outweighs any marginal relevance.

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection.  Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll documents relating to cross-border financial investment marketing" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Abacus objects to this Request to the extent it calls for information that is equally available to Plaintiffs.

Abacus further objects to this Request as vague and ambiguous to the extent it uses the undefined phrase "cross-border financial investment marketing."

Subject to and without waiver of the above objections, Abacus will not produce documents responsive to this Request. To the extent responsive documents may exist, Abacus is withholding production on the basis of the foregoing objections.

**REQUEST FOR PRODUCTION NO. 28:**

All minutes of directors', shareholders', or other meetings where discussions regarding the LLF-LTGF were held.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 28:**

Abacus objects to this Request as vague, overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it seeks without limitation "[a]ll minutes."

Abacus objects to this Request to the extent that it seeks materials shielded from disclosure by attorney-client privilege, the work-product doctrine, or any other privilege or protection. Abacus will withhold or redact responsive materials that are privileged or protected.

Abacus objects to this Request to the extent it seeks materials containing information that Abacus has legal or contractual obligations not to disclose or information about third parties whose privacy interests are protected by federal, state, or international law.

Abacus further objects to this Request to the extent that "[a]ll minutes of directors', shareholders', or other meetings where discussions regarding the LLF-LTGF were held" are not within Abacus's possession, custody, or control.

Abacus further objects to this Request on the grounds that it seeks documents that, to the extent they exist, would have been generated, maintained, and controlled by Carlisle Management Company

61

S.C.A. ("Carlisle")—a distinct legal entity organized under Luxembourg law that maintained its own records, systems, and regulatory filings in Luxembourg—during a period that predates Abacus's acquisition of Carlisle in late December 2024.  Prior to that acquisition, Abacus Global Management had no relationship with Carlisle, the LLF-LTGF, or any investors therein.  To the extent responsive documents were created, stored, or maintained by Carlisle, its agents, or its service providers prior to the acquisition, those documents remain in the custody and control of Carlisle as a separate Luxembourg entity and/or its service providers and regulators—not Abacus.

Subject to and without waiver of the above objections, Abacus is willing to meet and confer regarding this Request.  To the extent responsive documents may exist, Abacus withholds production pending resolution of the foregoing objections.

Dated: March 31, 2026

Respectfully Submitted,

*/s/ Alex Zuckerman*

**Quinn Emanuel Urquhart & Sullivan, LLP**
Alex Zuckerman (*pro hac vice*)
alexzuckerman@quinnemanuel.com
295 5th Avenue, 9th Floor
New York, NY 10016
(212) 849-7000

Jason Sternberg (Fla. Bar. No. 72887)
jasonsternberg@quinnemanuel.com
2601 South Bayshore Drive, Suite 1550
Miami, FL 33133
(305) 402-4880

Kathleen S. Messinger (*pro hac vice*)
kathleenmessinger@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

Nithya Pathalam (*pro hac vice*)
nithyapathalam@quinnemanuel.com
1300 I Street NW, Suite 900

62

Washington D.C. 20005
(202) 538-8000

*Attorneys for Defendant Abacus Global
Management, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 31, 2026, I served by email a copy of this document to counsel of record.

By: <u>*/s/ Alex Zuckerman*</u>
Alex Zuckerman