# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RITZ INVESTMENT LIMITED, et al.,

Plaintiffs,

v.

ABACUS GLOBAL MANAGEMENT, INC.,

Defendant.

Case No. 6:25-cv-2047-JSS-CAB

September 11, 2026

10:33 a.m. - 11:09 a.m.

(Digitally Recorded)

---

**DIGITALLY RECORDED ZOOM MOTION HEARING (DOC. 50)**

BEFORE THE HONORABLE CHAUNCEY A. BRATT
UNITED STATES MAGISTRATE JUDGE

OFFICIAL COURT REPORTER:

Katharine M. Healey, RPR, RMR, CRR, FPR-C
PO Box 56814
Jacksonville, FL 32241
(904) 301-6843
katharinehealey@bellsouth.net

(Proceedings recorded by electronic sound recording; transcript produced by computer.)

A P P E A R A N C E S

COUNSEL FOR PLAINTIFFS:

**SYLMARIE TRUJILLO, ESQUIRE**
**ROBERT KUNTZ, ESQUIRE**
**HUGO MONTERO, ESQUIRE**
Rivero Mestre, LLP
2525 Ponce de Leon Boulevard, Suite 1000
Miami, Florida 33134
(305) 445-2500
strujillo@riveromestre.com
rkuntz@riveromestre.com
hmontero@riveromestre.com

COUNSEL FOR DEFENDANT:

**ALEX S. ZUCKERMAN, ESQUIRE**
Quinn Emanuel
295 Fifth Avenue
New York, New York 10016
(202) 270-3474
alexzuckerman@quinnemanuel.com

- A N D -

**JASON D. STERNBERG, ESQUIRE**
Quinn Emanuel
2601 South Bayshore Drive, Suite 1550
Miami, Florida 33133
(561) 213-5635
jasonsternberg@quinnemanuel.com

**P R O C E E D I N G S**

September 11, 2026 10:33 a.m.

\- - -

COURTROOM DEPUTY: Case No. 6:25-cv-2047, *Ritz Investment Limited, et al., vs. Abacus Global Management, Inc.*

Counsel, please state your appearances for the record.

MS. TRUJILLO: Good morning. My name is Sylmarie Trujillo on behalf of the plaintiffs, Ritz Investment Limited, and Seasons, Limited; also with my colleagues Robert Kuntz and Hugo Montero.

MR. ZUCKERMAN: On behalf of Abacus -- defendant Abacus Global Management, I'm Alex Zuckerman. I'm joined by Jason Sternberg.

THE COURT: Good morning, everybody. We're here on a motion hearing on plaintiffs' motion to compel.

Plaintiff, since you're the movement -- movant, let's go ahead and get started with you.

MS. TRUJILLO: Yes, Your Honor. Good morning.

By way of background, the plaintiffs -- well, referred to as "the investors" -- invested approximately $12 million, just over that, in a fund called the Luxembourg Life Fund back in 2016. And that fund belonged to this entity called Carlisle, which was acquired by the defendant in 2024.

The investors are pursuing claims against Abacus for

breach of fiduciary duty under the Florida Deceptive and Unfair Trade Practices Act and for accounting that stemmed from the liquidation of that fund. The investors have seen less than 4 percent of their investment returned in the liquidation process, despite what we would call conflicting communications that show the fund has been almost 80 percent liquidated and that it's in its final stage of the distribution proffer.

Now to the discovery dispute itself. Plaintiffs served these requests back in January, end of January, January 30th, of this year.

Abacus is calling, on the one hand, the motion moot, but at the same time the opposition confirms that there is a central dispute alive and that the parties have reached an impasse on the objection of GDPR data minimization.

GDPR is European Union law, and it has analogs in different member states of the European Union that protect individuals' data; data privacy law.

Abacus is admitting in its opposition that it's reviewing documents from -- from its subsidiary Carlisle in a European workspace and at the same time requires that the plaintiffs satisfy this heightened GDPR burden before they can produce any documents.

They're saying, "The plaintiffs have refused to justify their expansive requests with a specific theory of liability." That's straight from the opposition.

Well, the specific theory of liability are the allegations contained in the complaint that have proceeded now from a motion to dismiss that was denied in part and they have answered. That's our specific theory of liability.

Although the opposition says "Abacus does not withhold responsive documents," the responses to -- the objections and responses to the first request for production actually state that they are withholding documents based on the GDPR.

The defendant is trying to shift the burden to the plaintiff to meet the standard, when, in reality, the standard lies with the defendant to show why any type of foreign law blocks production. The rule that governs here are the Federal Rules of Civil Procedure, Rule 26, relevance and proportionality, not a narrower GDPR standard that the parties don't practice in. It's not part of our body of law.

Every U.S. -- every decision that you have in front of you, Your Honor, are the cases cited to by the investors which discuss the GDPR. The defendants have not cited to in their opposition and have never provided the investors with any case law that holds that any kind of heightened standard needs to be met, any kind of GDPR data minimization needs to be met.

And what the case law --

THE COURT: I'll interject for just one moment, because I do want Mr. Zuckerman to address that.

I've reviewed the cases that you've provided, and it does seem to me like courts have taken a pretty uniform approach to this in the United States, especially when there's a protective order, or a confidentiality agreement, which I understand is in place here.

But I will want to hear from you on that, Mr. Zuckerman.

Sorry to interrupt you, Ms. Trujillo, but while you were on the topic.

MS. TRUJILLO: Okay. I'm concluding, Your Honor.

And to that point, these U.S. decision -- the decisions recognize three things:

One, that the GDPR has a litigation exception, and that exception allows for the transfer of data, for the transfer of information, to pursue a legal claim or a legal defense. So we have provided documents, despite being under a similar type of data privacy regime, under this GDPR exception.

Number, two, the cases, as you've seen, are consistent. They compel the production of documents and they find that a protective order suffices, like the ones that -- the one that the party has in place. We have provided a copy of our confidentiality agreement with our notice of conferral two days ago, Your Honor.

And the cases reject any kind of categorical redaction of documents. I mean, data minimization would

require every single name, business title, business email, any kind of identifying information, to be redacted. We couldn't -- we couldn't take discovery in the United States and follow U.S. rules if all that information were to be minimized or redacted.

The defendant has not met its burden in proving that the GDPR applies here. And we would ask for a court order that overrules the general objection that GDPR and data minimization is required in this case.

THE COURT: Just one follow-up for you, Ms. Trujillo. And thank you for your argument.

When you talk about the exception that allows the disclosure of the documents under the GDPR, are you talking about Article 49(1)(e), that the transfer is necessary for the establishment, exercise, or defense of legal claims?

MS. TRUJILLO: That's correct, Your Honor.

THE COURT: Okay. All right. Thank you.

Mr. Zuckerman.

MR. ZUCKERMAN: Thank you, Your Honor.

Let me just maybe start with our view of the background of the case, which is -- so this case was originally filed naming both Carlisle Management and Abacus as defendants.

Carlisle is an alternative investment fund manager registered in Luxembourg. It operates out of Luxembourg. All its employees and operations are in Luxembourg.

Judge Sneed sua sponte dismissed the complaint without prejudice saying that there was no subject matter jurisdiction because you couldn't have foreign parties on both sides in an Article III court. And Ritz and Seasons, the plaintiffs here, are both Gibraltar-based entities.

So plaintiffs refiled their case only naming Abacus as a defendant. And now they've gone to seek a bunch of discovery from both Abacus and Carlisle.

Now, I think it's interesting that Ms. Trujillo references the allegations in the complaint because half of the claims in the complaint were dismissed in the motion to dismiss ruling. It's been unfair to us. And we've been trying to get a clear answer on what allegations, precisely, remain in the case, as is relevant to this case. And we think that whether you think about this under Rule 26 or the GDPR, we need to have an understanding of the claims to understand what is relevant and what is proportional. And we just haven't gotten a straight answer on that.

Now, having said that, Abacus does have many documents in the United States related to Carlisle. It went through a long diligence process. It has had oversight over Carlisle since the end of 2024. And it's been producing. It's collected thousands of documents. It's producing documents from Abacus.

That said, Abacus and Carlisle remain separate legal

entities. Carlisle has Luxembourg attorneys. I've been advised, and I have advised counsel over and over again, those attorneys have told us that they cannot simply release documents from Carlisle's files.

Now, we've raised the GDPR. We're not saying we're not going to produce documents from Carlisle, but we need there to be a narrowing of this request.

As far as we're concerned, there was more room to meet and confer before this motion was filed. I don't think it's the case -- I don't think any of the cases that were cited by the plaintiffs stand for the proposition that Carlisle can simply ignore the GDPR in a case to which it's not even a party any longer or that Abacus can be forced to force its subsidiary to break EU law. I just haven't heard a fair argument on that front.

It's worth noting that we did provide a detailed legal response back in April. It was not attached to their motion or our response, but we had presented our position numerous times on why we think the GDPR still governs Carlisle. And Abacus can't be compelled to simply produce those documents without a narrowing of the request in some way because the GDPR also provides that production to a non-GDPR-regulated country is proper if the documents are strictly necessary to the case. Our view is that there hasn't been a record developed or communications exchanged for anybody to determine what is

strictly necessary to the case. And we've just asked them over and over again to give that to us.

You know, for example, whether Abacus is being held directly liable or vicariously liable remains unclear. Whether there's an issue with Abacus's communications or Carlisle's liquidations and distributions, some of which the plaintiffs have already received, again, it's unclear. We've been pointed back to the complaint.

We just want to understand a little bit more detail of what the theory is. And we think there's probably more room to negotiate in that respect.

You know, as for the litigation exception, it only goes so far as they're able to articulate what their claim actually is. You know, we don't even understand what it is they're trying to prove that Abacus did wrong or that Carlisle did wrong at Abacus's direction or that Abacus is responsible for as Carlisle's parent entity. It's just -- it's all a little bit too nebulous.

And they've given us search terms like "investment," for example, or "manage" that are just -- if we run those terms on an investment manager's files, it's going to be disproportionate no matter what legal regime is going to govern this dispute.

So we are -- yeah, so I will just -- the last thing I will say is that, as I said earlier, we have collected

thousands of documents from Abacus in the United States that relate to Carlisle. They are getting them in rolling productions. I think that it would be probably -- we'd have a more crystallized dispute if they would take the time to review those and think about what their theories are than what it is that they haven't gotten from Abacus that they need from Carlisle.

I'll just stop there.

THE COURT: All right. Thank you, Mr. Zuckerman.

I mean, there's some discussion there about relevance. I'm going to put that aside for a moment, and let's talk about the GDPR.

I mean, as far as I'm concerned, and I believe this is consistent with the case law out there that exists so far, which I take it as persuasive, but there's a growing body of this case law, that if you have -- if there's a confidentiality agreement or protective order in place that's going to protect the data and that complies with some of the restrictions in the GDPR, I don't believe it gives you the basis to narrow your definition of "relevance" or impose a new definition of "relevance" in here, such as "strictly necessary."

So insofar as the GDPR objections are that, you know, the relevance definition is narrower or that what's going to be required for you to produce is narrower, the Court's not in agreement with that.

Now, sounds like there may be a separate relevance issue, which I don't believe has been fully teed up for the Court or that I would be ruling on in connection with this.

I will say, you know, there is a complaint; there's counts; there's -- I mean, I would have to know more about all those details. And Ms. Trujillo, I'm ready to hear about you a little bit on that, but, you know, my main concern here has been preparing for and addressing this GDPR concern.

And I am going to side with the plaintiffs on this, that, you know, these are -- given -- well, first, let me ask you one follow-up question, Mr. Zuckerman.

MR. ZUCKERMAN: Sure.

THE COURT: Do you have any concerns with the confidentiality agreement? Is that --

MR. ZUCKERMAN: Well, yeah. We negotiated the confidentiality agreement with explicit sections saying neither party is waiving their international law objections. It's Section 15.3. This is docket entry 57-2.

THE COURT: Yes.

MR. ZUCKERMAN: So we put that language in there clearly indicating to them that we were not conceding on the GDPR point. We agreed to the rest of the confidentiality order.

We entered into the confidentiality order because we wanted that to be in place so that we could produce Abacus

documents; so that we could produce documents from Carlisle's files pursuant to the GDPR.

That paragraph is clearly in there to get in front of this kind of dispute. So this isn't an order of the Court. This is an agreement between the parties that included this carve-out.

THE COURT: Right.

MR. ZUCKERMAN: Again, we would -- we would encourage them to tell us what it is that they need from Carlisle that they're not getting from Abacus, because Carlisle is a non party. They are in another jurisdiction. We don't -- we don't think we need to get to this question of whether Carlisle can be compelled to violate the GDPR in a case which it's not even a party; to which personal jurisdiction is not even necessarily appropriate.

THE COURT: Well, I certainly don't disagree you may have reserved that right, and you're exercising that now. As far as -- well, you're exercising the right to object, not necessarily the right to uphold -- withhold documents.

But I guess my concern -- my question about the confidentiality agreement is: Do you have any concerns about data not being protected? Like, have we put -- have you included all the necessary protections so that that data is -- cannot be disclosed by the plaintiffs other than in the situations where the parties believe it's appropriate?

MR. ZUCKERMAN: Sure. So this gets to burden. And Article 45 of the GDPR doesn't allow us to produce -- doesn't allow Carlisle to produce documents into a non-GDPR country without getting the consent of every individual whose personal data is involved. So every document, every email with a third party outside of Carlisle, is much more burdensome than it would be to produce an email in U.S. discovery, which is another reason why we'd like to narrow the request that may apply to Carlisle documents.

So there are -- the protective order is some protection, but there are other issues that come up where we need to not -- it needs to not be that the ruling here is the GDPR just doesn't apply if you have a U.S. parent. That's far too broad. Some of the GDPR has to remain here in discovery. And if it does, then some of these requests are incredibly burdensome.

THE COURT: But how doesn't -- so, for example, Article 46, when it provides that information can be -- let me find the right clause here. Well, I'm sorry, Article 49, you know, (1)(e), that transfers of personal data to a third country shall take place only on one of the following conditions. This is one of the following conditions, and it says, you know, where it's necessary for the establishment, exercise, or defense of legal claims, that's permissible. How does that not provide you with the, you know, legal protection

that you need to transfer the data? Especially when there's a confidentiality agreement in place protecting the data --

MR. ZUCKERMAN: So --

THE COURT: -- of those private entities and individuals?

MR. ZUCKERMAN: It may, but I don't think -- I don't think we were presented with the grounds for why it's necessary to establish their legal claims, because I don't have a clear idea of what their legal claims are at this point.

We're talking about Abacus's fiduciary duties to investors in Carlisle's funds. It's our position that they need to articulate in a little bit more detail why Carlisle documents are necessary to suffice and why the documents they're getting from Abacus don't suffice.

You know, the word "necessary" is in that statute. If we're going to say that -- if they're going to use the litigation exception, they need -- they do need to prove a different standard than Article -- than Rule 26 in the federal rules.

THE COURT: Well, and my ruling here, I anticipate, Mr. Zuckerman, is that if it's required for U.S. litigation, if they have a right to it under U.S. law to engage in this litigation, if it's -- you know, I get -- like if it's truly not relevant, then we're talking something different. The EU would be able to make this objection whether the GDPR existed

or not. But if they are entitled to it, to pursue their rights under U.S. law and to prepare their case, then in my mind it is necessary.

MR. ZUCKERMAN: So my understanding is that for us to have essentially sign-off from the Luxembourg courts and from Carlisle's Luxembourg counsel, we're going to need a ruling that this is, in fact, necessary to these claims. So I think we're doing this a bit out of order, which is why I encouraged them on all the meet-and-confers to explain in more detail what their claims are than what's in the complaint because then we can negotiate.

And I think we're putting the cart before the horse here. We signed the confidentiality order so we could start producing documents from Abacus. We've produced many documents; many more documents will be produced.

I think that once we crystalize what the actual dispute is, it may be easier for us to talk about what is actually necessary and what's actually relevant.

THE COURT: Well, Ms. Trujillo, let's turn to you. I mean, Mr. Zuckerman's referenced that a few times, that they're confused about what the dispute is. What can you say about that?

MS. TRUJILLO: There's no confusion over what the dispute is. There's a -- there's a complaint that has survived a motion to dismiss. They were ordered to answer. The

allegations are on record and have been on record for months now.

We have met and conferred on this issue four times over the phone, I believe, like over Zoom. And the first ones were hour-long sessions. As Mr. Zuckerman indicated -- and there was no bar for him to include his April 26th discovery letter, which was discussed afterwards, which was -- which we met and conferred on, as required by the rules, in a Zoom conference. There was no bar in him including it. And those issues were touched on numerous times.

It just seems like they want us to do more than the law requires. We have a fully-compliant complaint that the Court found was sufficient.

Regarding this "necessary" standard, it's interesting because the *Sowa* case has a direct quote on that, on page 5. It says, "A plain reading of the GDPR does not mandate a strict and narrow interpretation of 'necessary.' That supersedes the relevance and proportionality requirements of the Federal Rules of Civil Procedure."

So that goes straight to the heart of what was being discussed earlier regarding the necessary terms, like what -- what else do I need to show you for them to make a production under these rules, under the relevance and proportionality standard?

And I want to go back to the confidentiality

agreement, the negotiating of that and the history of the production of documents, Your Honor.

So the -- Section 3 of the confidentiality agreement states, "The confidentiality agreement, together with this Court's orders, constitutes an appropriate safeguard for discovery purposes." Period.

The parties agreed in their confidentiality agreement that what they negotiated, over months, Your Honor -- the first time that a draft confidentiality agreement was circulated was by the investors back in February of this year. The defendant categorically rejected it. They said they would produce -- they would provide their own version of it. Took over a month to get their version of the confidentiality agreement. The parties went back and forth.

That prompted the investors to file a nearly 20-page motion to compel back in May. Again, in May, they had all the case law regarding GDPR from us. Not only was it exchanged in emails; they had it in a full brief in front of the Court.

At that time the Court had not entered the short-form discovery order. It was entered subsequently. The motion was denied without prejudice, and the parties took another go at meeting and conferring. And so we did. Took two more months between May and when it was ultimately signed in July.

And what happened in those last couple weeks is important, Your Honor, because continuously, the defendant

tried to put in -- just copy/pasting entire sections of the GDPR into the confidentiality agreement.

And we had provided them the case law that we've cited to today. If they had gone into the dockets in those cases, they could have seen the language in those protective orders. And they had no support for copy/pasting entire sections of the GDPR into the proposed draft.

So that was almost ready to go again in front of the Court, right, the issue of the confidentiality agreement. And I asked the defendants, "Can you please provide U.S. case law that supports your contention that this language should be included in a confidentiality agreement?"

And what happened next I think is very important in this -- in considering the facts of this case. What happened next was that counsel said, "You know what? You, investor, are holding up discovery in this case. You are holding up my production of documents. I'm just going to delete everything you don't like." Everything that I told them, "Hey, I don't see support for this, just copy/pasting the GDPR," they took it out and they said they were willing to enter into the confidentiality agreement. So the parties signed it the first week of July.

And we received 100 documents, Your Honor. And of those 100 documents, the vast majority were publicly filed Abacus documents; meaning SEC 10-K filings and other publicly

available things. Those documents should have been produced back in March, when they provided their responses and objections, because those documents were not objectionable. Those documents did not require a confidentiality agreement.

So I'm a little shocked to hear today that they've collected, as counsel has proffered before the Court, thousands of documents -- thousands; that's more than a thousand -- and we've received only 400, of which there are 20 copies of a 10-K version. And 10-Ks are hundreds of documents. So there may be a lot of pages, but in there, there are just a lot of documents that are nonresponsive and probably could have been produced months ago.

But here we are, standing behind this GDPR wall and this ephemeral objection, and that's why we're asking the Court for a ruling on the GDPR issue itself. There's nothing further to confer on.

The investors have a deadline, Your Honor, next month. The expert disclosures are due October 5th. And discovery closes in three months. Discovery closes December 1st. So we have three months to finish reading potentially thousands of documents, take depositions, inform our experts of whatever responsive documents they are now just going to produce. This is just information that should have been produced much, much earlier.

So the parties entered into this confidentiality

agreement in July. We were -- the plaintiffs, the investors, who needed to have this confidentiality agreement order in place, subsequently did their document review, produced. And, you know, we haven't gotten anything from the -- from the defendants, which caused us to reach out. At which point they state, "No. We still have a data minimization issue. The confidentiality order doesn't suffice," despite the fact that we thought that's what we had been negotiating towards until July.

And so we cannot wait any further. It's truly urgent at this point in time that we get a ruling on the application of GDPR in our case and whether -- the fact that it's been totally unsupported, the defendant hasn't met their burden in showing that the GDPR applies, Your Honor.

THE COURT: Yeah. Mr. Zuckerman, I'm going to give you, you know, one more opportunity --

MR. ZUCKERMAN: Sure.

THE COURT: -- to speak. I know there's a lot of -- I mean, first off, I do believe both parties are substantively justified in their -- I mean, I'm not going to grant any motion for fees or that sort of thing.

And I understand your obligation -- I mean, GDPR obligations are serious, and you're taking them seriously appropriately.

I am inclined -- you know, I'm going to give you one

more opportunity to address the Court -- but to grant the motion to compel and overrule the GDPR objections; finding, as other courts have, that these are necessary, and defining "necessary" the same way I would define why the rest of discovery is required to be produced.

But I do want to hear from you one more time before I make my final ruling.

MR. ZUCKERMAN: Sure. I mean, I think, just to go back to the beginning here, in 2016 Ritz and Seasons invested in a Luxembourg-managed fund governed by Luxembourg law, managed by a Luxembourg investment manager, Carlisle. For eight years they were invested.

They had issues of some kind. Abacus bought Carlisle at the end of 2024. Ritz and Seasons wrote correspondence to Carlisle's counsel in Luxembourg raising some of these issues. After Abacus bought Carlisle they wrote one letter to Abacus. They sued Abacus and Carlisle. Judge Sneed dismissed Carlisle for the reasons we talked about earlier.

What we have now is essentially a disgruntled investor, wants to sue their investment manager in a case under a placement memorandum where the forum selection clause says you should bring this in the city -- in Luxembourg City, in the Grand Duchy of Luxembourg. And now they're trying to open this mouse hole to all this discovery from Carlisle in a case where Carlisle is not even a party; where a judge has already ruled

this Court has no jurisdiction over Carlisle.

So we would submit this is not a situation where there's an Abacus office in Luxembourg and I'm simply being difficult about not opening filing cabinets. This is a different legal entity with different counsel that I have to interact with at arm's length. There were not -- this is not one entity. It exists as a separate legal entity for Luxembourg legal reasons.

And we just think that there has to be a better articulation than what you just heard. You know, you asked, "What are the claims? What are the relevant pieces of information you're looking for?" And she gave the history of the confidentiality agreement and the back-and-forths about communications between counsel.

I still don't understand what she needs in Luxembourg for a case against Abacus if Abacus is producing what it has on its relationship and acquisition of Carlisle.

I would just, you know, remind Your Honor of what this case is about and what Judge Sneed has already ruled this is not about. And it's not about a dispute between these investors and Carlisle.

So I would just leave Your Honor with that.

THE COURT: Well, I mean, let's talk about that relevance point for a moment. I mean, I know that's not what we're here directly to address, but, Ms. Trujillo, I do think

Mr. Zuckerman's made a good point. Is there any additional clarifi- -- while we're all here, is there any additional clarification you can give about the relevance? I mean, you know, I haven't reviewed all the, you know, back-and-forth about relevance between the parties. I'm not the expert on your claims at this point. But can you provide any additional clarification that will help the Court and Mr. Zuckerman with the relevance point separate and apart from the GDPR issue?

MS. TRUJILLO: Sure, Your Honor. Abacus-owned Carlisle are not saying that they don't have possession, custody, and control over these documents. And we can call it Carlisle; their trade name is now Abacus. And that's part of the discovery that we've requested.

Their former Carlisle employees now represent themselves as Abacus. They go to trade shows and they represent themselves as Abacus employees. There are communications that have both names, Abacus and Carlisle. So there's certainly a role that Abacus is playing in the management of this fund.

Their 10-K shows that they have -- they're very interwoven, Your Honor. Abacus, through another subsidiary, services this fund, regardless of it being -- wherever it is in the world; regardless of it being in Luxembourg.

And so we've requested information regarding the Net

Asset Value, the NAV calculations, which is the value that's given for the redemption. We've gotten policies related to that.

So to the extent that Mr. Zuckerman is saying that the investors need to identify what is in Luxembourg, I wish I had a sufficient production from Abacus to say, "Hey, I'm still missing A, B, C. Like these are the documents I haven't gotten already from Abacus that would be in Luxembourg," regardless of the fact that they've admitted that they have possession; that they've admitted that they're reviewing documents in an EU workspace.

Other than those NAV documents, we're asking for fund analyses; for distribution ledgers regarding the liquidations; for communications regarding redemptions and redemption delays.

And they don't like the term "redemption delays." Like, "Why are you calling it a delay?" That's -- they object to that.

"Okay. Fine. The timeline of the redemption. Can we get communications on that?"

We've asked for fund gating; for fund suspension; for liquidity decisions regarding the fund. I mean, we don't understand how the fund is in its final phase of liquidation, Abacus, by its own mission in its 10-K, is charging the fund $6 million a year to service it. Fully liquidated fund, where the investors have seen absolutely nothing, yet they're

charging millions and millions of dollars, which we believe goes to our claims regarding breach of fiduciary duty and FDUTPA, an accounting which relates to the numbers back and forth. They are engaging in non-arm's length transactions with this Carlisle/Abacus entity in the purchase of sales of these life insurance policies.

All of that speaks to the claims in our complaint, Your Honor. And all of this has been discussed multiple times on meet-and-confers. This is not the first time they're hearing this. What I am expressing to Your Honor has been expressed to counsel in our prior meet-and-confers. If that is insufficient, no further meet-and-confer is going to assist the parties. We are truly at an impasse here.

THE COURT: Well, I'm going to go ahead and grant the motion to compel and overrule the GDPR objections in light of the weight of the authority on this issue and in light of the confidentiality agreement in place.

I do, you know, take the point that I think you would be making a very different argument, Mr. Zuckerman, if you weren't in possession and control of these documents; if this wasn't information available to you.

Ms. Trujillo, have I missed any part of your motion? I believe the rest of it was mooted, but is there anything else the parties require the Court to address at this time?

MS. TRUJILLO: No, Your Honor.

THE COURT: Mr. Zuckerman?

MR. ZUCKERMAN: Yeah, I mean, I think the -- maybe we can meet and come back with our own -- we -- my understanding is we need a very particularly worded order to convince the Luxembourg attorneys that they will not be violating professional ethics rules to release these documents. So we will come back to you -- I mean, we may need to negotiate a model order, but my understanding is we need to have something in hand, signed by a judge, that we can show the Luxembourg court to justify this production.

THE COURT: Can the parties confer on that within the -- over the next seven days and get the Court a proposed order?

MR. ZUCKERMAN: We will.

MS. TRUJILLO: Your Honor, absolutely, the parties will confer. Should the parties not reach agreement on what that model order should look like, can the parties submit a joint notice with each of their versions?

THE COURT: If absolutely necessary, but I'd encourage the parties to work together. I think you're both competent, smart attorneys. I'm optimistic you'll be able to make some concessions and work that out, with the end goal being: let's get an order that, you know, satisfies the authorities over there that they can disclose all of these documents that you're wanting.

MS. TRUJILLO: Understood, Your Honor. And regarding the proposed order, can we include a date certain for the bulk of the production to be made? I understand that discovery is still ongoing until December 1st, but we would like to reach a date by which they are going to produce so that we can meet our expert disclosure deadline, et cetera.

THE COURT: It can include a date. I would encourage you, Ms. Trujillo, to be reasonable about that. I anticipate it will take Mr. Zuckerman some time, dealing with entities overseas, to process these documents. So I'm not expecting, for example, a two-week turnaround on this.

MS. TRUJILLO: Understood.

THE COURT: Anything further from the parties?

MR. ZUCKERMAN: No, Your Honor. Thank you.

THE COURT: I will, then, just take under advisement for now -- I'm not going to enter any written order on the docket yet until I get your proposed order, but I'll get something entered after I get that.

MS. TRUJILLO: Thank you for your time, Your Honor.

THE COURT: Thank you all.

MALE VOICE: Thank you, Judge.

(Proceedings concluded at 11:09 a.m.)

\- - -

CERTIFICATE OF OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT)
MIDDLE DISTRICT OF FLORIDA )

I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

DATED this 14th day of September, 2026.

/s/ Katharine M. Healey
Katharine M. Healey, RPR, RMR, CRR, FPR-C
Official Court Reporter